# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § |
| Plaintiff, | § § Case No. 6:20-cv-580-ADA § |
| v. | § JURY TRIAL DEMANDED § |
| GOOGLE LLC, | § § |
| Defendant. | § |

**MOTION TO DISMISS BY DEFENDANT GOOGLE LLC FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6)**

## TABLE OF CONTENTS

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.     The '491 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.     WSOU Alleges Infringement of Claim 1 by a Google API, but Does Not Allege That Anyone or Anything Actually Uses the API in an Infringing Manner—Or, Indeed, That Anyone or Anything Uses the API at All. . . . . . . . . . . . . . . . . 3

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.     To State a Plausible Claim for Relief, WSOU Must Allege Direct Infringement. . . . . . . 4

II.     WSOU Fails to Allege Direct Infringement of Claim 1 by Google's API. . . . . . . . . . . . 6

     A.     WSOU Fails to Allege That Google Infringes Claim 1. . . . . . . . . . . . . . . . . . . . . . 6

     B.     WSOU Fails to Allege That Anyone Infringes Claim 1. . . . . . . . . . . . . . . . . . . . . 7

III.     Because WSOU Failed to Allege Direct Infringement Against Google or Anyone Else, Its Allegations of Indirect Infringement Must Also Fail. . . . . . . . . . . . . . 8

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## **TABLE OF AUTHORITIES**

*Cases* **Pages**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
 797 F.3d 1020 (Fed. Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Artrip v. Ball Corp.*,
 735 Fed. App'x 708 (Fed. Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*BMC Res., Inc. v. Paymentech, L.P.*,
 498 F.3d 1373 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Craigslist Inc. v. 3Taps Inc.*,
 964 F. Supp. 2d 1178 (N.D. Cal. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*Conley v. Gibson*,
 355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*De La Vega v. Microsoft Corp.*,
 No. 19-612, 2020 WL 3528411 (W.D. Tex. Feb. 11, 2020). . . . . . . . . . . . . . . . . 5, 7, 8

*Dippin' Dots, Inc. v. Mosey*,
 476 F.3d 1337 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
 363 F.3d 1263 (Fed. Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Glory Licensing LLC v. United Airlines, Inc.*,
 No. 09-5569, 2011 WL 13295205 (E.D.N.Y. Mar. 15, 2011). . . . . . . . . . . . . . . . . . . 8

*In re Bill of Lading*,
 681 F.3d 1323 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*In re Kollar*,
 286 F.3d 1326 (Fed. Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
 869 F.3d 1372 (Fed. Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# **TABLE OF AUTHORITIES**

*Cases* **Pages**

*Lyda v. CBS Corp.*,
　838 F.3d 1331 (Fed. Cir. 2017)............................................... 5, 7, 8

*Microsoft Corp. v. AT&T Corp.*,
　550 U.S. 437 (2007)............................................................... 6

*Papasan v. Allain*,
　478 U.S. 265 (1986)............................................................... 5

*Ricoh Co. v. Quanta Comput. Inc.*,
　550 F.3d 1325 (Fed. Cir. 2008)............................................... 6, 7

*Wallen v. Teknavo Grp.*,
　No. 12-6196, 2018 WL 1278317 (E.D.N.Y. Feb. 22, 2018)........... 3


*Statutes and Rules* **Pages**

35 U.S.C. § 271............................................................................ 6

Fed. R. Civ. P. 12......................................................................... 1

# INTRODUCTION

In this action for alleged patent infringement, the plaintiff fails to allege infringement. Plaintiff WSOU Investments, LLC claims only that Google provides an application programming interface, or API, identifies "users" of the Google API as application developers, and alleges that Google "allows" those developers to include the accused functionalities "in applications." But WSOU does not specify any allegedly infringing application, or even allege that any such application exists. Instead, WSOU's allegations depend on a double hypothetical: first, that a developer would write an application which would rely in part on Google's API, and, second, that an end user would then use that application in an infringing way. WSOU does not explain how Google would be liable for any infringement caused by the hypothetical end user's hypothetical use of the hypothetical application, or even claim that any actual infringement actually occurs. No plaintiff can sustain allegations of patent infringement without alleging patent infringement, and WSOU is no exception. WSOU's complaint does not properly allege any direct, induced, or contributory infringement, and thus fails to state a claim for which this Court can grant relief. Under Fed. R. Civ. P. 12(b)(6), the Court should dismiss these claims.

# BACKGROUND

**A.     The '491 Patent**

U.S. Patent No. 7,946,491, entitled "Method, Apparatus, and Computer Program Product for Providing a Camera Barcode Reader," explains that "[g]iven the ubiquitous nature of cameras in mobile terminal devices, it may be increasingly advantageous to provide barcode reading capabilities that could be employed on such mobile terminal devices," Docket No. 1-1 at 1:56-60, but that "camera images are often more difficult to accurately recognize than scanner

images." *Id.* at 1:61-62.  To address this difficulty, "it may be desirable to introduce an application for use with camera image based barcode reading, which is capable of overcoming the disadvantages described above." *Id.* at 2:15-17.  In particular, the '491 patent explains that "it may be desirable to introduce an application which overcomes the disadvantages above in a flexible manner which enables utilization of the application under a variety of conditions and for different types of barcodes." *Id.* at 2:18-21.

To address these "disadvantages," the '491 patent describes a "system for providing a camera barcode reader" that is capable of switching between two "barcode reading methods," for example, one which uses "global binarization" and another which employs "adaptive binarization." *Id.* at 14:1-12.  Claim 1 recites:

> A method comprising:
>
> processing an input image for an attempt to decode the input image using a current barcode reading method, the processing including performing a correction on the input image;
>
> determining whether the processing of the input image is successful based on a determination as to whether the correction is completed;
>
> switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful;
>
> attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful; and
>
> performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method.

*Id.* at 20:18-36.  Claim 1 is the only claim WSOU mentions in its complaint.

**B.     WSOU Alleges Infringement of Claim 1 by a Google API, but Does Not Allege That Anyone or Anything Actually Uses the API in an Infringing Manner—Or, Indeed, That Anyone or Anything Uses the API at All**

In its complaint, WSOU asserts infringement by "Google's Mobile Vision API" and claims that "Google provides a Mobile Vision API to its users to allowing (sic) them to include the functionalities of barcode reading, face reading, and text reading in applications." Compl. ¶ 46.  WSOU's Complaint does not explicitly define the meaning of an API, but implicitly adopts the view that "[a]n Application Programming Interface (API) is a set of programming instructions and standards to allow third parties to develop software that draws information from, or otherwise interacts with, a website, program, or database." *Craigslist Inc. v. 3Taps Inc.*, 964 F. Supp. 2d 1178, 1880 n.1 (N.D. Cal. 2013); *see also Wallen v. Teknavo Grp.*, No. 12-6196, 2018 WL 1278317, at *6 n.4 (E.D.N.Y. Feb. 22, 2018) ("An API or application programming interface is a set of functions and procedures allowing the creation of applications that access the features or data of an operating system, application, or other service.") (citing *API*, Oxford Living Dictionaries, available at https://en.oxforddictionaries.com/definition/api).

WSOU admits that Google's Mobile Vision API does not by itself perform the steps of the claimed method, but alleges instead that the API "allows" unidentified "users" to "include the functionalities of barcode reading, face reading, and text reading in applications." Compl. ¶ 46.  In some of its allegations, WSOU appears to define "users" to mean application developers who write applications that use the Mobile Vision API. *See, e.g., id.* ¶¶ 46-47, 54-56, 58.  But WSOU never alleges that any of these "users" have actually used the Mobile Vision API in an infringing way, or that any of these "users" have actually written an application that would itself

– 3 –

use the Mobile Vision API in an infringing way. *See id.* They allege only that it is possible for someone to do so. *See id.*

Elsewhere, however, WSOU alleges potential infringement involving a second "user," this time a (hypothetical) end user of a (hypothetical) application using the Mobile Vision API. *See, e.g.*, *id.* ¶ 53 ("The detector stops upon failure to detect the barcode formats and the user is required to supply another input image."). Although WSOU's allegations are not entirely clear, and it does not provide a step-by-step analysis or chart of the asserted method in its complaint, WSOU appears to contend that, to infringe claim 1 of the '491 patent, an unidentified software application written by an unnamed developer must make various calls to the Mobile Vision API and combine those calls with actions taken by an end-user of the application: "Google provides a Mobile Vision API to its users to **allowing [sic] them to include** the functionalities of barcode reading, face reading, and text reading in applications"; "The Google Mobile Vision API **allows a user** to adjust the corners of the region of interest denoted by the box (i.e. performing correction on the input image)"; "As an example, if the supplied image does not contain any barcode or the image quality is such that the barcode cannot be detected, then **the user** is asked indirectly through the message to supply a new image." *Id.* ¶¶ 46, 48, 52 (emphasis added). WSOU thus does not allege that Google performs the steps of the asserted method, or even that some other party performs those steps.

## ARGUMENT

### I. To State a Plausible Claim for Relief, WSOU Must Allege Direct Infringement

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "[I]n order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (alteration in original)), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Conley*, 355 U.S. at 46-47 (alteration in original) and citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The *Twombly/Iqbal* "plausibility standard applies to direct infringement claims." *Artrip v. Ball Corp.*, 735 Fed. App'x 708, 714 n.4 (Fed. Cir. 2018) (citing *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1376-77 (Fed. Cir. 2017)). As this Court has recently explained, *Twombly* and *Iqbal* require, at minimum, that "the complaint must plead 'facts sufficient to allow a reasonable inference that all steps of the claimed method are performed.'" *De La Vega v. Microsoft Corp.*, No. 19-612, 2020 WL 3528411, at *4 (W.D. Tex. Feb. 11, 2020) (quoting *Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2017)). If a plaintiff's allegations of direct infringement fail, so too must corresponding allegations of indirect infringement: "To support a claim for indirect infringement, a plaintiff must plead 'facts sufficient to allow an inference that at least one direct infringer exists.'" *De La Vega*, 2020 WL 3528411, at *7 (quoting *In re Bill of Lading*, 681 F.3d 1323, 1336 (Fed. Cir. 2012)).

## II. WSOU Fails to Allege Direct Infringement of Claim 1 by Google's API

"Infringement of a method claim 'occurs when a party performs all of the steps of the process.'" *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) (quoting *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007)). The enumerated steps of a method claim must "'all be practiced as recited in the claim for a process to infringe.'" *Ricoh*, 550 F.3d at 1333 (quoting *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1343 (Fed. Cir. 2007)). Because "a process 'consists of doing something, and therefore has to be carried out or performed,'" *Ricoh*, 550 F.3d at 1335 (quoting *In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002)), and "software is not itself a sequence of actions, but rather it is a set of instructions that directs hardware to perform a sequence of actions," *Ricoh*, 550 F.3d at 1335 (citing *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007)), even "a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)." *Ricoh*, 550 F.3d at 1335.

### A. WSOU Fails to Allege That Google Infringes Claim 1

As WSOU acknowledges, Google's Mobile Vision API does not and cannot execute itself, and instead responds only to calls from mobile applications. *See, e.g.*, Compl. ¶ 46 ("Google provides a Mobile Vision API to its users to **allowing [sic] them to include the functionalities** of barcode reading, face reading, and text reading **in applications**.") (emphasis added). Because Google's API merely "allow[s] third parties to develop software that draws information from, or otherwise interacts with" Google's software and information, *Craigslist*, 964 F. Supp. 2d at 1880 n.1, even if software on its own could infringe a method claim—which it cannot—Google's API could not do so, because it is not a "set of instructions that directs

hardware to perform a sequence of actions," *Ricoh*, 550 F.3d at 1335. WSOU's complaint boils down to the assertion that, because unidentified developers could employ Google's API in various ways to build a myriad of applications, and unknown end users could use one of those applications in an allegedly infringing manner, then Google must be responsible for this infringement. WSOU's allegations do not meet the *Twombly/Iqbal* plausibility standard because they do not "plead 'facts sufficient to allow a reasonable inference that all steps of the claimed method are performed,'" *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1339), and the Court should therefore dismiss WSOU's complaint in its entirety.

**B.  WSOU Fails to Allege That Anyone Infringes Claim 1**

WSOU's allegations fail for another reason: not only do they fail to allege infringement by Google through its API, they fail to allege infringement by *anyone*. WSOU specifically asserts only infringement of one method claim, claim 1. *See* Compl. ¶ 59. But direct infringement of a method claim only "occurs where all steps of a claimed method are performed by or attributable to a single entity," *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (citing *BMC*, 498 F.3d at 1379-81), and so, as this Court has recently explained, when alleging "joint infringement by the combined acts of multiple parties," the plaintiff must further plausibly plead that "'either (1) one party exercises the requisite "direction and control" over the other's performance or (2) the actors form a joint enterprise such that performance of every step is attributable to the controlling party.'" *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1339).

WSOU pleads neither. To the contrary, its complaint talks about hypothetical possible actions by "users" (actually software application developers, *e.g.*, Compl. ¶¶ 46-47, 54-56, 58);

or "the user" (hypothetical end users of the hypothetical application written by the hypothetical developer, *e.g.*, *id.* ¶¶ 51-53).  Thus, even if the Court assumed that the hypothetical developer and user were both real—which they are not—and even if the Court further assumed that Google was somehow responsible for alleged infringement by this hypothetical duo—which it is not—then WSOU's allegations would still fail, because the complaint fails to assert how these "'actors form a joint enterprise such that performance of every step is attributable to the controlling party.'" *De La Vega*, 2020 WL 3528411, at *4 (quoting *Lyda*, 838 F.3d at 1339); *see also Glory Licensing LLC v. United Airlines, Inc.*, No. 09-5569, 2011 WL 13295205, at *2 (E.D.N.Y. Mar. 15, 2011) ("Because the only theory of infringement alleged in the complaint requires multiple actors, (*i.e.*, defendant and a United customer to act as a 'user'), in order to adequately plead direct infringement, Glory would have needed to allege that United controlled its customers, a dubious contention.") (footnote omitted).  For this reason as well, WSOU has failed to plead infringement of claim 1, and the Court should dismiss the complaint in full.

### III. Because WSOU Failed to Allege Direct Infringement Against Google or Anyone Else, Its Allegations of Indirect Infringement Must Also Fail

"Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004).  At the pleading stage, to state a claim for indirect infringement, "a plaintiff must plead 'facts sufficient to allow an inference that at least one direct infringer exists.'" *De La Vega*, 2020 WL 3528411, at *7 (quoting *In re Bill of Lading*, 681 F.3d at 1336).  WSOU's complaint pleads no direct infringement, *see supra* §§ I-II, and thus its allegations of indirect infringement also cannot survive, and the Court should dismiss them as well.  *De La Vega*, 2020 WL 3528411, at *7.

## **CONCLUSION**

For the foregoing reasons, Google respectfully requests that the Court dismiss the complaint in this action, Docket No. 1, in its entirety.

Date:  September 11, 2020

Respectfully submitted,

/s/ *Michael E. Jones*
Michael E. Jones (Texas Bar No. 10929400)
Patrick C. Clutter (Texas Bar No. 24036374)
**Potter Minton, P.C.**
110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Matthew S. Warren (*pro hac vice* pending)
Jen Kash (*pro hac vice* pending)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-580@cases.warrenlex.com

Tharan Gregory Lanier (*pro hac vice*)
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

*Attorneys for Defendant Google LLC*

– 10 –

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 11, 2020, I electronically filed this document with the Clerk of Court via the Court's CM/ECF system which will send notification of such filing to all counsel of record, all of whom have consented to electronic service in this action..

/s/ *Michael E. Jones*
Michael E. Jones