# EXHIBIT #5

**Group 2 – Google's Responsive Claim Construction Brief**
**(Civil Case Nos. 6:20-cv-00574-ADA, 6:20-cv-00576-ADA, 6:20-cv-00579-ADA, and 6:20-cv-00580-ADA)**

| PRE-APPEAL BRIEF REQUEST FOR REVIEW<br>(filed with the Notice of Appeal) | Docket Number 042933/313925 |
|---|---|
| Application Number 11/462,152 | Filed August 3, 2006 |
| First Named Inventor Adrian Burian | |
| Art Unit 2887 | Examiner Vo, Tuyen Kim |

Applicant requests review of the final rejection in the above-identified application. No amendments are being filed with this request.

This request is being filed with a notice of appeal.

The review is requested for the reason(s) stated on the attached sheet(s).
    Note: No more than five (5) pages may be provided.

Respectfully submitted,

*[signature]*

Chad L. Thorson
Registration No. 55,675

Date    December 3, 2010

**Customer No. 10949**
**ALSTON & BIRD LLP**
Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000
Tel Charlotte Office (704) 444-1000
Fax Charlotte Office (704) 444-1111

ELECTRONICALLY FILED USING THE EFS-WEB ELECTRONIC FILING SYSTEM OF THE UNITED STATES PATENT & TRADEMARK OFFICE ON DECEMBER 3, 2010.

Attachment
Reasons for Requesting Pre-Appeal Brief Request for Review

Claims 1-6, 8-11, 13-18, 20-23, 25-30, 33-37, 40 and 41 currently stand rejected under 35 U.S.C. §102(b), as being unpatentable over Zhu et al. (U.S. Patent Application Publication No. 2005/0103858, hereinafter "Zhu"). Claims 7, 12, 19, 24, 31, 32, 38 and 39 currently stand rejected under 35 U.S.C. §103(a), as being unpatentable over Zhu in view of Umeda (U.S. Patent Application Publication No. 2006/0280363). Applicants respectfully disagree.

Independent claims 1, 13, 25 and 41 recite, *inter alia*, that the <u>processing includes performing a correction on the input image</u> and that determining whether the processing of the input image is successful is <u>based on a determination as to whether the correction is completed</u>. Notably, according to the claimed invention, <u>switching to a different barcode reading method or processing of a new frame of the input image using the current barcode reading method</u> happens **in response to** <u>the processing of the input image being unsuccessful</u>, while an <u>attempt to decode the input image is conducted</u> **if the processing is successful**. Accordingly, there is not even an attempt to do any decoding according to the claimed invention until it is determined as to whether the correction is completed.

Moreover, according to the claimed invention, another switch to a different barcode reading method or processing of a new frame is done based on whether the processing is successful (e.g., whether the correction is completed) and is not performed based on successful decoding. Thus, the claimed invention describes two different switch triggers between barcode reading methods. The first trigger is based on whether the processing involving performing a correction on the input image is successful. The second trigger is based on whether an attempt to decode the input image is successful.

Meanwhile, quite to the contrary, Zhu discloses that a mode shift is performed based on a successful or unsuccessful read of the image (e.g., see paragraph [0510] of Zhu). In all cases for Zhu, the determining factor for changing modes is the successful or unsuccessful reading of the barcode. Thus, at best, Zhu only provides disclosure relevant to the second trigger that is described in the claimed invention. However, Zhu fails to teach or suggest any correction that is performed as a basis for a barcode reading method switch or processing of a new frame as provided in the claimed invention and therefore necessarily fails to teach or suggest the first trigger that is claimed in independent claims 1, 13, 25 and 41.

-2-

While the claimed invention provides for robust image processing and flexibility for method switching or processing of a new image based on the successful completion of a correction operation before any barcode reading is done (as is clearly indicated by the fact that the first switching operation of the claimed invention is performed in response to the processing of the input image being unsuccessful prior to even attempting to decode the input image), Zhu requires the barcode to be read, or at least the performance of an attempt to read the barcode, before any mode changes are made. Thus, Zhu only describes a single mode switching scenario, namely one involving an unsuccessful attempt to decode. This is further evidenced by the fact that each and every paragraph cited by the Office Action as relating to the claimed feature of <u>switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful</u> (relating to the first claimed switch trigger) is also cited in connection with the claimed feature of <u>performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method</u> (which relates to the second claimed switch trigger). As such, it is clear that the Office Action incorrectly reads the single switch trigger scenario described in Zhu as corresponding to each of the two different switch triggers described in the claimed invention. Accordingly, Zhu fails to teach or suggest <u>switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful</u> as provided in independent claims 1, 13, 25 and 41.

The claimed invention also further describes the processing of the input image. In this regard, the claimed invention indicates that <u>processing includes performing a correction on the input image</u>. Zhu also fails to teach or suggest that the <u>processing includes performing a correction on the input image</u> and that determining whether the processing of the input image is successful is <u>based on a determination as to whether the correction is completed</u> as provided in independent claims 1, 13, 25 and 41. In this regard, it should be noted that the Office Action admits that Zhu does not explicitly teach correcting the input image as it is described in the claimed invention (see page 7 of the final Office Action of September 14, 2010). However, the Office Action alleges that Zhu's disclosure of "searching for regions of interest, partitioning image and marking the four corners of ROI" would inherently include correcting the image in the manner claimed. This statement is clearly erroneous and Zhu does not inherently disclose

that the <u>processing includes performing a correction on the input image</u> and that determining whether the processing of the input image is successful is<u> based on a determination as to whether the correction is completed</u> as provided in independent claims 1, 13, 25 and 41.

As stated at MPEP 2112, section IV, the "fact that a certain result or characteristic <u>may</u> occur or be present in the prior art is not sufficient to establish the inherency of that result or characteristic." *In re Rijckaert*, 9 F.3d 1531, 1534, 28 USPQ2d 1955, 1957 (Fed. Cir. 1993). Additionally, in order to establish inherency, extrinsic evidence "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference". "Inherency, however, may not be established by probabilities or possibilities." *In re Robertson*, 169 F.3d 743, 745, 49 USPQ2d 1949, 1950-1951 (Fed. Cir. 1999).

In the present case, Applicants respectfully submit that no rationale or evidence showing inherency of the assertion set forth in the final Office Action has been provided and, therefore, the rejection of independent claims 1, 13, 25 and 41 based on inherency are improper. Furthermore, Applicants respectfully submit that the activities described by the Examiner and set forth in the final Office Action quite obviously only at best might possibly involve some form of correction, but clearly do not necessarily or certainly involve some form of correction and therefore there is no inherent correction involved in any of the activities described in the Office Action (or in all of Zhu). Specifically, "searching for a region of interest" clearly could (and likely does) only involve examination of content to conduct the search without any correction to the content whatsoever. Similarly, partitioning the image clearly could (and again likely does) only include identifying different portions of the image without any correction to the content whatsoever. Additionally, marking the corners of an ROI also clearly could (and likely does) only involve marking points on the image without any correction to the content whatsoever. Thus, it is abundantly clear that the allegation that searching for regions of interest, partitioning image and marking the four corners of ROI would inherently include correcting the image in the manner claimed is erroneous. Accordingly, the above recited features are not inherent in Zhu. Thus, each and every feature of independent claims 1, 13, 25 and 41 is not taught in Zhu, either expressly or inherently.

Although not cited in connection with the rejection of independent claims 1, 13, 25 and 41, Umeda fails to cure the above noted deficiencies of Zhu. Since both Zhu and Umeda fail to teach or suggest the above noted features of independent claims 1, 13, 25 and 41, any

combination of Zhu and Umeda also fails in this regard. Thus, independent claims 1, 13, 25 and 41 are patentable over Zhu and Umeda, either alone or in combination.

Claims 2-12, 14-24 and 26-40 depend either directly or indirectly from respective ones of independent claims 1, 13 and 25 and thus include all the recitations of their respective independent claims. Therefore, dependent claims 2-12, 14-24 and 26-40 are patentable for at least those reasons given above for independent claims 1, 13 and 25.

Despite being patentable due to their dependence from patentable independent claims, yet further reasons exist for the patentability of at least some of the dependent claims. For example, claims 4, 16 and 28 each describe a correction to a region of interest (ROI) by correcting corner positions of the ROI based on a degree of overlap between the barcode and segments of a border of the ROI which are adjacent to each respective corner. The Office Action cites various paragraphs of Zhu as relating to this feature. However, the cited paragraphs of Zhu merely relate to marking the four corners of the ROI. None of the cited passages, nor any part of Zhu, provides any disclosure regarding correcting corner positions, much less making such a correction based on a degree of overlap between a barcode and segments of a border of the ROI which are adjacent to each respective corner as provided in claims 4, 16 and 28. Accordingly, Zhu fails to teach or suggest the additional features as provided by corresponding ones of claims 4, 16 and 28.

Accordingly, for all the reasons provided above, Applicants respectfully submit that the rejections of claims 1-41 should be reversed.