# EXHIBIT #11

**Group 2 – Google's Responsive Claim Construction Brief**
**(Civil Case Nos. 6:20-cv-00574-ADA, 6:20-cv-00576-ADA, 6:20-cv-00579-ADA, and 6:20-cv-00580-ADA)**

IN THE U.S. PATENT AND TRADEMARK OFFICE

In re U.S. Patent Application of:

APPLICANTS: Inkinen et al.

SERIAL NO.: 10/770,868   FILING DATE: February 3, 2004

EXAMINER: Barqadle, Yasin M.   ART UNIT: 2456

ATTORNEY'S DOCKET NO.: 886A.0006.U1(US)

TITLE: CONTENT DELIVERY ACCORDING TO DEVICE ACTIVITY

Mail Stop AF
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### PRE-APPEAL BRIEF REQUEST FOR REVIEW ATTACHMENT

The following is a concise recitation of a clear error in the Examiner's rejections in this application.

Claims 1, 8-10, 16, 18, 19 and 24-36 are currently pending, with claims 15, 24, 27 and 36 being independent claims. The Examiner rejected claims 1, 9, 15, 16, 18, 19, 24-31 and 33-36 under 35 U.S.C. §102(e) as being anticipated by *Horvitz* (U.S. Patent No. 6,182,133). *See pp. 6-11 of the Office Action*. The Examiner rejected claims 1, 9, 15, 16, 18, 19, 24-31 and 33-36 under 35 U.S.C. §102(e) as being anticipated by *Roberts et al.* (U.S. Patent No. 6,920,110, referred to below as "*Roberts*"). *See pp. 11-12 of the Office Action*. The Examiner also rejected claims 8, 10, 32 and 35 under 35 U.S.C. §103(a) as being unpatentable in view of further references. *See pp. 13-14 of the Office Action*.

Claim 15 recites:

> A device comprising:
>    a user interface configured to ***allow a user to select an item of content***,
>    one or more components, and
>    a content transfer controller configured to determine an acceptable activity period by monitoring usage of the one or more components over a particular time duration, and wherein the content transfer controller is configured to determine that an acceptable activity period is present when the

WSOU_576_8595283-0000256

> usage of the one or more components is determined to have been below a particular threshold level over the particular time duration, the content transfer controller being arranged:
>
> > to initiate transfer of *the selected item of content* from a content provider device according to the determination of an acceptable activity period,
> >
> > to receive the selected item of content, and
> >
> > to store the received item of content on memory.

The device recited in claim 15 includes a user interface allowing a user to select an item of content. The device also includes a content transfer controller that is configured to determine an acceptable activity period. The content transfer controller is further arranged to initiate transfer of the item of content (i.e., <u>the item of content selected by the user via the user interface</u>) according to the determination of an acceptable activity period. As non-limiting examples, such a device enables the effective use of resources and/or minimizes inconvenience for the user (e.g., by delaying transfer of the selected item of content so as to avoid interrupting the user's usage of the device). *See the specification at p. 2, lines 2-5 and 28-31.*

The operations recited in claim 15 may be contrasted with the technique of pre-fetching. In pre-fetching, a user requests access to a web page, for example, through a uniform resource locator (URL). The requested web page is accessed immediately because it is of immediate interest. Related content, such as web pages linked to by the requested web page, can be pre-fetched. That is, the related content can be accessed (e.g., downloaded) in advance of any request from the user. In such a manner, should the user desire to access the related content (e.g., by clicking on a link and requesting the related content), it is immediately available without delay (i.e., avoiding delays incurred by accessing/downloading the requested related content).

Note that the pre-fetched content is *not* initially selected or requested by the user prior to retrieval. Instead, the pre-fetched content is automatically obtained prior to any such selection or request so that, should a request for the pre-fetched content be made, the content is immediately available. Thus, a delay between the later request for the pre-fetched content and presentation of

2

WSOU_576_8595283-0000257

S.N.: 10/770,868  
Art Unit: 2456

Pre-Appeal Brief Request For Review Submission  
Final Office Action dated March 6, 2009

the pre-fetched content is minimized since, for example, the pre-fetched content has already been downloaded. Clearly, pre-fetching is a different technique from that recited in claim 15 since pre-fetching accesses the related content *without an initial user request or selection*.

The disclosure of *Horvitz*, titled "Method And Apparatus For Display Of Information Prefetching And Cache Status Having Variable Visual Indication Based On A Period Of Time Since Prefetching," is explicitly related to pre-fetching. This is evident from the title, Abstract, and figures (see, e.g., FIGS. 6 and 17), as well as from numerous other portions of the specification, including the claims (see, e.g., claim 1).

For example, at col. 3, lines 42-53 (in the Summary of the Invention section), *Horvitz* states:

> My inventive technique satisfies this need for prefetching and caching web pages (or, generally speaking, information), as determined by a user model, that may be selected in the future by the user or that contain content that may be of interest to the user based upon content and/or, e.g., prior interaction of the user with, e.g., his(her) client computer.
>
> Broadly speaking and in accordance with my invention, a client computer prefetches such web pages of interest (of other information) for subsequent access, potentially while a current web page is being rendered for, e.g., for user review, on a local display.

It is further noted that the portion of *Horvitz* cited by the Examiner, col. 4, lines 20-36, is in accordance with the above description of pre-fetching. Therein, *Horvitz* states:

> Specifically, once a user, at a client computer, enters an address (e.g., a URL) of a desired web page, a set containing web addresses of pages, that based on the user model are each likely to be accessed next, in the same session, or within a given time horizon thereof by that user, are determined, with corresponding filed for those files prefetched by the client computer during intervals of low processing activity and/or low network activity, or when an incremental rate of

3

WSOU_576_8595283-0000258

change in utility, of continuing current activity is determined to be lower than an expected value of the utility of fetching potential future content. Once prefetched, the file for each page is stored in local cache at the client computer for ready access should the user next select that particular page. As successive web pages are selected by the user and displayed, the immediately prior set of files for prefetched pages can be over-written by files for a current set of prefetched pages.

Since *Horvitz* is only concerned with pre-fetching, it is respectfully submitted that *Horvitz* cannot be seen to disclose or suggest: "A device comprising: a user interface configured to ***allow a user to select an item of content***, …and …[a] content transfer controller being arranged: to initiate transfer of ***the selected item of content*** from a content provider device according to the determination of an acceptable activity period," as recited in claim 15, for example.

Similar to *Horvitz*, *Roberts* is also concerned with techniques similar to pre-fetching. For example, from the Background and Detailed Description, it is clear that *Roberts* is primarily concerned with the background downloading of software updates. At col. 8, lines 1-5, *Roberts* states:

> Thus, the present invention is directed to the transfer of a set of data, such as a software update, over a network at a time when the network utilization is relatively low. This transfer of data is intended to be transparent to the user, and the user's machine need not be idle during the transfer.

It should further be noted that at col. 1, line 51-col. 2, line 6, *Roberts* discusses some of the issues with prior art techniques for downloading software updates. More specifically, *Roberts* notes that "it is likely that many users will not take the initiative to navigate to the 'WINDOWS UPDATE' website and download operating system updates for their PCs." *See col. 1, lines 64-67*. *Roberts* also states "The data blocks represent a segment of a set of data, such as a software update that may be transferred or downloaded over the network without interfering with other

4

S.N.: 10/770,868  
Art Unit: 2456

Pre-Appeal Brief Request For Review Submission  
Final Office Action dated March 6, 2009

network activity at the network interface." *See Abstract*.

*Roberts* does not disclose or suggest "A device comprising: a user interface configured to ***allow a user to select an item of content***, …and …[a] content transfer controller being arranged: to initiate transfer of ***the selected item of content*** from a content provider device according to the determination of an acceptable activity period," as recited in claim 15, for example. At col. 1, lines 54-67, *Roberts* merely discloses prior art functionality, and problems. *Roberts* seeks to address the identified problems and, further, does not disclose or suggest any operations in relation to ***a selected item of content***.

*Roberts* also does not disclose or suggest "A device comprising: …a content transfer controller configured to determine an acceptable activity period by monitoring usage of the one or more components ***over a particular time duration***." *Roberts* monitors a level of actual bandwidth utilization and compares it to a threshold, but only at instances of time and not "***over a particular time duration***." *See Roberts at col. 8, lines 30-37 and col. 10, lines 54-59*.

For at least the above reasons, independent claim 15 is patentable over the cited references. Independent claims 24, 27 and 36 are directed to substantially similar subject matter and are therefore also patentable. Consequently, dependent claims 1, 8-10, 16, 18, 19, 25, 26 and 28-35 are patentable based at least on their dependency from allowable independent claims. The Applicants respectfully request that the rejections of claims 1, 8-10, 16, 18, 19 and 24-36 be withdrawn.

Respectfully submitted:

*/Alan L. Stern/*  
Alan L. Stern  
Reg. No.: 59,071

May 11, 2009  
Date

Customer No.: 29683

HARRINGTON & SMITH, PC  
4 Research Drive  
Shelton, CT 06484-6212

Telephone: (203) 925-9400  
Facsimile: (203) 944-0245  
E-mail: astern@hspatent.com

5