# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A** | § | **CIVIL ACTION 6:20-cv-00574-ADA** |
| **BRAZOS LICENSING AND** | § | **CIVIL ACTION 6:20-cv-00576-ADA** |
| **DEVELOPMENT,** | § | **CIVIL ACTION 6:20-cv-00579-ADA** |
| *Plaintiff,* | § | **CIVIL ACTION 6:20-cv-00580-ADA** |
| | § | |
| **v.** | § | |
| | § | |
| **GOOGLE LLC,** | § | |
| *Defendant.* | § | |
| | § | |

## PLAINTIFF'S REPLY IN SUPPORT OF
## OPENING CLAIM CONSTRUCTION BRIEF

# Table of Contents

I.      U.S. Patent No. 7,946,491 (Case No. 6:20-cv-00580-ADA)................................1

        A.      Disputed terms of the '491 patent which only Google seeks to construe...............1

                1.      "the input image" .........................................................................1

                2.      "performing a correction on the input image" .............................2

                3.      "new frame" .................................................................................4

        B.      Google errs in raising conclusory objections to certain terms, which do not
                recite the word "means," and therefore presumptive do not invoke 35
                U.S.C. 112 ¶ 6, as allegedly being indefinite under a means-plus-function
                construction.........................................................................................6

                4.      "computer program product comprising at least one computer-
                        readable storage medium having computer-readable program code
                        portions stored therein, the computer-readable program code
                        portions comprising …" (claim 13) ...........................................6

                5.      "apparatus comprising a processor and memory including
                        computer program code, the memory and the computer program
                        code configured to, with the processor, cause the apparatus at least
                        to . . ." (claim 25) .......................................................................6

                6.      "means for processing an input image for an attempt to decode the
                        input image using a current barcode reading method, the
                        processing including performing a correction on the input image"
                        (claim 41) ..................................................................................10

        C.      Google failed to meet its burden to overcome the presumption of
                definiteness for the "means for" terms recited only in claim 41 of the '491
                patent..................................................................................................11

                7.      "means for determining …" (claim 41) ....................................12

                8.      "means for switching …" (claim 41) ........................................12

                9.      "means for attempting …" (claim 41) .......................................12

                10.     "means for performing …" (claim 41)......................................12

II.     U.S. Patent No. 8,595,283 (Case No. 6:20-cv-00576-ADA).............................12

1. "a content transfer controller … configured to …" ...................................12

2. "the content transfer controller being arranged: to initiate transfer …" ...........................................................................................................14

3. "the selected item of content" ...................................................................15

4. "an acceptable level of device activity" ..................................................15

5. "monitoring usage of one or more components …" ...............................16

III. U.S. Patent No. 8,640,180 (Case No. 6:20-cv-00579-ADA) .............................17

1. "client-side compositing of media streams" ..........................................17

2. "wherein the compositing-instruction substream indicating the area of the display screen to display the at least one media substream is an area to display one of the on screen display and a picture-in-picture" ...................................................................................................18

IV. U.S. Patent No. 8,965,045 (Case No. 6:20-cv-00574-ADA) .............................19

1. "a pre-emptive user output" ....................................................................19

2. "said processor configured to provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels" .........................................................................................21

## Table of Authorities

**Cases**

*3M Innovative Properties Co. v. Tredegar Corp.*,
   725 F.3d 1315 (Fed. Cir. 2013) .............................................................................. 17

*Advanced Ground Info. Sys., Inc. v. Life360, Inc.*,
   830 F.3d 1341 (Fed. Cir. 2016) .............................................................................. 13

*Ancora Techs., Inc. v. LG Elecs. Inc.*,
   Case No. 1-20-CV-00034-ADA, 2020 WL 4825716 (W.D. Tex. Aug. 19, 2020) .................. 18

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ................................................................................ 7

*Augme Techs., Inc. v. Yahoo! Inc.*,
   755 F.3d 1326 (Fed. Cir. 2014) ................................................................................ 5

*Barkan Wireless IP Holdings, L.P. v. Samsung Electronics Co., Ltd.*,
   2019 Markman 497902, 2019 WL 497902 (E.D. Tex. 2019) ...................................... 13

*Baxalta Inc. v. Genentech, Inc.*,
   972 F.3d 1341 (Fed. Cir. 2020) ................................................................................ 2

*Collaborative Agreements, LLC v. Adobe Systems Inc.*,
   Case No. A–14–CV–356–LY, 2015 WL 2250391 (W.D. Tex. 2015) .......................... 10

*Computer Docking Station Corp. v. Dell*, Inc.,
   519 F.3d 1366 (Fed. Cir. 2008) .............................................................................. 17

*Cont'l Circuits LLC v. Intel Corp.*,
   915 F.3d 788 (Fed. Cir.) .............................................................................. 2, 3, 21

*Crossroads Sys. (Texas), Inc. v. Chaparral Network Storage, Inc.*,
   No. 00-217, 2000 WL 35731852 (W.D. Tex. July 27, 2000) ...................................... 9

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ................................................................................ 8

*Dyfan, LLC v. Target Corp.*,
   6:19-cv-179-ADA, Dkt. 57 (W.D. Tex. Nov. 24, 2020) ............................... 7, 8, 9, 21

*Eli Lilly and Co. v. Teva Pharmaceuticals USA, Inc.*,
   557 F.3d 1346 (Fed. Cir. 2009) ................................................................................ 7

*In re Beauregard*,
   53 F.3d 1583 (Fed. Cir. 1995) ................................................................................ 8

*Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*,
869 F.3d 1336 (Fed. Cir. 2017)..................................................................................... 7

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
351 F. Supp. 3d 1100 (N.D. Ill. 2018) .................................................................. 4, 11

*Leviton Mfg. Corp. v. Universal Security Instruments, Inc.*,
606 F.3d 1353 (Fed. Cir. 2010)..................................................................................... 7

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)..................................................................................... 21

*Motiva Patents, LLC v. Sony Corp.*,
2019 WL 4737051 (E.D. Tex. Sep, 27, 2019) ............................................................ 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014).................................................................................................. 5, 16

*North American Vaccine, Inc. v. American Cyanamid Co.*,
7 F.3d 1571 (Fed. Cir. 1993)........................................................................................ 5

*Optis Cellular Tech., LLC v. Kyocera Corp.*,
No. 2:16-CV-0059-JRG-RSP, 2017 WL 541298  (E.D. Tex. Feb. 9, 2017) .......................... 22

*Power Mosfet Techs., L.L.C. v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004)................................................................................... 15

*Samsung Elecs. Am. v. Prisua Eng'g Corp.*,
948 F.3d 1342 (Fed. Cir. 2020)................................................................................... 13

*Spansion, Inc. v. Int'l Trade Comm'n*,
629 F.3d 1331 (Fed. Cir. 2010)............................................................................... 4, 11

*St. Isidore Research, LLC v. Comerica Inc.*,
No. 2:15-CV-1390-JRG-RSP, 2016 WL 4988246 (E.D. Tex. Sept. 19, 2016) ........................ 22

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)............................................................................. 16, 17

*TQ Delta, LLC v. 2Wire, Inc.*,
373 F. Supp. 3d 509 (D. Del. April 10, 2019) ............................................................ 5

*Uniloc 2017 LLC v. Google LLC*,
No. 218CV00492JRGRSP, 2020 WL 569858 (E.D. Tex. Feb. 5, 2020) ................... 8

*Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*,
Case No. 4:18-cv-475, 2019 WL 4259020 (E.D. Tex. Sept. 9, 2019).................... 13

*Whirlpool Corp. v. Ozcan*,
    No. 2:15-CV-2103-JRG, 2016 WL 7474517 (E.D. Tex. Dec. 29, 2016) ............................ 4, 11

*Zeroclick, LLC v. Apple Inc.*,
    891 F.3d 1003 (Fed. Cir. 2018) ................................................................................................ 9

I.      **U.S. Patent No. 7,946,491 (Case No. 6:20-cv-00580-ADA)**

   A.   **Disputed terms of the '491 patent which only Google seeks to construe.**

      1.   **"the input image"**

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "the original input image" |

As explained in WSOU's opening brief, "[t]he phrase 'the input image' requires no construction, particularly in view of the contexts in which it is recited in the independent claims (1, 13, 25, and 41) of the '491 patent." Dkt. 33, 2.[1] Google offers no construction for either "input" or "image" and, instead, seeks to add the extraneous qualifier "original" as an additional limitation. *Id*. Google now mischaracterizes the dispute, however, as whether "'the input image' refer[s] to the antecedent 'an input image' (as Google contends), or do they refer (as WSOU contends) to some other image not previously seen in the claim?" Dkt. 34, 1.

The dispute is more accurately characterized as whether Google has established that adding its extraneous "original" qualifier would not depart from the plain and ordinary meaning, in view of the surrounding context. Dkt. 33, 2. Google has not. Claim 1, for example, recites certain relevant limitations as follows: "processing an input image . . . , the processing including performing *a correction on the input image*" (20:19-22), "a determination as to whether the correction *is completed*" (20:24-25), and "attempting a decode . . . in response to *the processing of the input image being successful*" (20:30-32). Claim 1 thus recites the phrase "the input image" in the context of successful completion of a "processing" step involving at least "a correction on the input image." Google errs in seeking to qualify "the input image" as the "original" image, *prior to* any processing involving successful completion of a *correction* on that input image, such that "the input image" recited in the "attempting a decode" step is *not* the one having a correction. This would impermissibly depart from a plain reading of the claim language.

---

[1] WSOU cites to its opening brief as "Dkt. 33" and Google's response brief as "Dkt. 34," as filed in Case No. 6:20-cv-574-ADA (which is the same for all the above-captioned cases). WSOU cites to the pagination at the bottom of the page.

Google falsely asserts that WSOU's plain reading of the claim language "would . . . deprive 'the input image' of antecedent basis." Dkt. 34, 2. On the contrary, WSOU has correctly recognized that "*the* input image" makes antecedent reference to the "processing" step involving at least "a correction on the input image" and "a determination as to whether the correction is completed." It follows that the step "attempting a decode of the input image . . . in response to the processing of the input image being successful" makes explicit reference to "the input image" *resulting from* the "processing" involving successful completion of a correction. It is Google, not WSOU, who seeks to divorce the term "the input image" from its antecedent context.

**2. "performing a correction on the input image"**

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "correcting the content of the original input image" |

In advancing a prosecution history disclaimer argument, Google fails to meet the "exacting standard" of identifying a "clear and unmistakable" disclaimer of claim scope. *Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1348 (Fed. Cir. 2020) ("'[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable.'") (quoting *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013)); *see also Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir.), *cert. denied*, 140 S. Ct. 648 (2019) (referring to the "clear and unmistakable" burden of proof as an "exacting standard"). The cited passages of the prosecution history Google identifies contain no such "clear and unmistakable" disclaimer. Dkt. 34 (citing Dkt. 34-5, Pre-Appeal Brief Request for Review dated Dec. 3, 2010, at 4).

Google points to a passage of the prosecution in which the applicant addressed the examiner's position that the cited Zhu reference inherently disclosed "performing a correction on the input image." *Id*. There, the applicant persuasively argued that "there is no inherent correction involved in any of the activities described in the Office Action (or in all of Zhu)." Dkt. 34-5, 5. The identified "activities" of Zhu were "searching for a region of interest," "portioning the image," and "marking the corners of an ROI." *Id*.

At most, the cited prosecution history reveals that those three identified activities (as disclosed in the Zhu reference) do not expressly or inherently disclose "correcting the content of the original input image." Dkt. 34-5, 5. To emphasize the point that those three cited activities of Zhu do not expressly or inherently disclose "***some form*** of correction," the applicant noted that none of the activities necessarily involved "any correction to the content" of the input image. *Id*. (emphasis added). That statement cannot reasonably be interpreted as meeting the exacting standard of clear and unmistakable disavowal that ***all forms*** of correction necessarily require "correction to the content" of the input image. *See Cont'l Circuits*, 915 F.3d at 799 ("[T]he statements in the [prosecution history] merely explain ***one technique*** for forming teeth and do not amount to clear statements of disavowal.") (emphasis added). Indeed, Google concedes this very point by characterizing the cited prosecution history as simply expressing "the applicants' view that 'any correction to the content whatsoever' is sufficient to meet the claim." Dkt. 34, 5. That a correction to content is an *example* sufficient to meet the claim cannot reasonably be interpreted as unambiguously disclaiming any other possibility.

Google also opted to not address the previously raised point that "because Google's contrived couplet 'the content' has no antecedent basis in the claims, it is unclear as to whether Google had intended, by its impermissible rewrite of the claims, to require that a correction must be performed on the entirety of 'the content' of the input image." Dkt. 33, 4. Google does not dispute, for example, that its impermissible rewrite would risk excluding at least a preferred embodiment in which "corrections" are "performed only on the previously detected ROI and not on the entire captured image[.]" *Id*. (citing '491 patent, 11:20-22). Google should not be allowed to lie behind the log and wait until its sur-reply brief to take a position on this unnecessary ambiguity injected only by Google's proposed construction.

Google's construction should also be rejected as doubling down on its error of adding an extraneous "original" qualifier to the term "the input image." *See supra*, § I.A.1; Dkt. 33, 2-3. Google does not attempt to defend against this additional, previously identified error (Dkt. 33, 3) when addressing the disputed phrase "performing a correction on the input image."

3

### 3. "new frame"

| WSOU's Position | Google's Position |
| --- | --- |
| Plain and ordinary meaning; definite. | Indefinite. |

Google has not met its burden to prove indefiniteness *by clear and convincing evidence* merely by offering the attorney argument, without the support of any expert testimony, that "the 'input image' described by the patent is static, and thus cannot have a 'new frame.'" Dkt. 34, 6. Because Google's "garden-variety theory of indefiniteness 'requires a determination whether those skilled in the art would understand what is claimed,' *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1344 (Fed. Cir. 2010) (citation omitted), the Court [should] conclude[] that expert testimony is necessary" here to meet the exacting burden of proof. *Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1114 (N.D. Ill. 2018); *see also Whirlpool Corp. v. Ozcan*, No. 2:15-CV-2103-JRG, 2016 WL 7474517, at *3 (E.D. Tex. Dec. 29, 2016) (rejecting indefiniteness contention and noting that the accused infringer only provided attorney arguments to support its position, and no expert testimony). Not only did Google fail to support its indefiniteness theory with expert testimony, it also failed to explain why the Court should find Google preserved its indefiniteness contention by timely disclosing *the alleged basis* prior to the opening brief. Dkt. 33, 4 ("Google has prejudiced WSOU's present ability to address this dispute because Google has failed to timely disclose the basis for its indefiniteness contention.").

Improperly keeping the alleged basis for its indefiniteness contention secret until *after* WSOU filed its opening brief, Google newly asserts "the 'input image' described by the patent is static, and thus cannot have a 'new frame.'" Dkt. 34, 6.[2] Google relies on the conclusory attorney argument that certain example processes described in the '491 patent "work[] only on a static image." *Id*. Google's belated objection that the disclosed images are allegedly "static" and thus cannot possibly have a "new image" as claimed appears to go to alleged inoperativeness under 35 U.S.C.A. § 101 or lack of enablement under 35 U.S.C.A. § 112, ¶ 1, neither of which is a challenge

---

[2] The word "static" does not appear anywhere in Google's Invalidity Contentions dated Dec. 4, 2020, much less in the context of a timely disclosed objection to the "new frame" term.

based on the distinct definiteness requirement. *See North American Vaccine, Inc. v. American Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993) (distinguishing objections of "inoperativeness under 35 U.S.C.A. § 101 or lack of enablement under 35 U.S.C.A. § 112, ¶ 1" from that of indefiniteness); *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1340 (Fed. Cir. 2014) (same); *TQ Delta, LLC v. 2Wire, Inc.*, 373 F. Supp. 3d 509, 523 (D. Del. April 10, 2019) (granting patentee summary judgment that a challenged claim was not invalid for indefiniteness, the court finding that the accused infringer's technical expert's opinion conflated lack of written description or enablement with indefiniteness since the claim term and its scope was understandable, and the technical expert's opinion only went to whether it could be performed).  Moreover, Google's misplaced objection is factually baseless because the word "static" appears nowhere in the '491 patent, much less as an unambiguous requirement that should be imported as a claim limitation.

Google also defeats its own attorney argument by acknowledging the specification of the '491 patent describes certain example operations in the context of a "new frame." *Id*.  Google points to a description of example operations involving a "new frame," followed by the statement that certain methods "provide[] a capability for sequential frame processing in which, ***as described above***, a next sequential frame may be utilized in connection with the performance of a method if the current frame is not successful in providing a decode of the barcode." '491 patent, 19:46-51 (emphasis added); *see also* Dkt. 34, 7 (quoting the same).  At least in view of this exemplary disclosure, which expressly differentiates a "next sequential frame" from a "current frame," a person of ordinary skill in the art would be able to understand with "reasonable certainty" the recited "new frame" term.  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  Google's attorney argument fails to prove otherwise by clear and convincing evidence.

Google also raises the conclusory attorney argument that the specification allegedly does not describe *how* a "new frame" may be selected.  Dkt. 34, 7.  Here again, Google impermissibly conflates alleged inoperativeness or lack of enablement with the distinct inquiry of indefiniteness.

For the foregoing reasons, Google exclusive reliance on misplaced attorney argument, without any expert testimony, fails to prove indefiniteness by clear and convincing evidence.

**B.  Google errs in raising conclusory objections to certain terms, which do not recite the word "means," and therefore presumptive do not invoke 35 U.S.C. 112 ¶ 6, as allegedly being indefinite under a means-plus-function construction.**

    4.  **"computer program product comprising at least one computer-readable storage medium having computer-readable program code portions stored therein, the computer-readable program code portions comprising …" (claim 13)**

    5.  **"apparatus comprising a processor and memory including computer program code, the memory and the computer program code configured to, with the processor, cause the apparatus at least to . . ." (claim 25)**

| WSOU's Position | Google's Position |
|---|---|
| For both term nos. 4 and 5: plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite. | For both term nos. 4 and 5: the recited functions are identical to the means-plus-function terms in claim 41, thus the only issue is whether this term invokes Section 112, ¶ 6. |

It is telling Google failed, in addressing the above terms, to acknowledge *its* burden to overcome the presumption against application of a means-plus-function construction under 35 U.S.C. § 112, ¶ 6, because the terms do not recite the word "means."  Dkt. 33, 6 ("[L]ack of the word 'means' in claims 13 and 25 raises a rebuttable presumption against applying Section 112, ¶ 6.") (citing *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (*en banc*)).  It is Google, not WSOU, who "attempts to avoid the *Williamson* analysis."  Dkt. 34, 18.

Google mischaracterizes WSOU's opening brief as arguing that the "inventor's intent" controls.  Dkt. 34, 16.  WSOU had cited authority for the proposition that the presumption arising here from the lack of the word "means" is further underscored by an *additional* and *equally significant* presumption arising from claim differentiation.  Dkt. 33, 11 (citing *Al-Site Corp. v. VSI Intern., Inc.*, 174 F.3d 1308, 1318–19 (Fed. Cir. 1999)).  In *Al-Site*, the Circuit held the claim term "eyeglass hanger member for mounting a pair of eyeglasses" with its absence of "means for" was not a means-plus-function limitation, while the claim term "means for securing a portion of said frame of said eyeglasses to said hanger member" was a means-plus-function limitation.  *Id*. at 1318–19.  Thus, *Al-site* has been correctly cited for the proposition that "if one claim element in a patent expressly recites a means-plus-function element by using the terms 'means for' and another claim element does not, this indicates that the applicant knew how to claim a means-plus-function

element when it wanted to *and further supports not construing the limitation that does not recite 'means for' as a means-plus-function limitation*."  Robert A. Matthews, Jr., Annot. Patent Digest (Matthews) § 8:12 (2021) (emphasis added);[3] *cf.* Dkt. 34, 16 (arguing, without explanation, that *Al-site* does not support the above proposition).

*Al-site* contains a straightforward application of the doctrine of claim differentiation.  Dkt. 33, 6-7 (citing, *inter alia*, *Comark Comm'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed.Cir.1998) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims.  To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.")).  Here, Google argues that independent claims 13, 25, and 41 each recite "identical" functional language and are all allegedly indefinite for lacking corresponding structure. Dkt. 34, 15.  Google's erroneous and indiscriminate means-plus-function construction of claims 13, 25 and 41 run afoul of the "significant" presumption against interpreting these claims as having no difference in meaning and scope, notwithstanding the distinguishing structural contexts recited in their respective preambles, and the claim differentiation expressed in that *only* claim 41 recites "means for" terms. Dkt. 33, 6-7.

Google has not rebutted each of the above presumptions merely by pointing to the unpublished opinion of *Dyfan, LLC v. Target Corp.*, 6:19-cv-179-ADA, Dkt. 57 (W.D. Tex. Nov. 24, 2020).  There, the Court was not presented with, nor did the Court expressly consider, any argument or presumption arising under the doctrine of claim differentiation.  Google misses the point by alleging *Dyfan* allegedly "found claims using different nonce words fell under § 112, ¶ 6."

---

[3] Judges from the Federal Circuit and the federal district courts have quoted from and relied on the Annotated Patent Digest in rendering rulings on dozens of patent matters.  *See*, *e.g.*, *Intercontinental Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1358 (Fed. Cir. 2017) (Reyna, *dissenting-in-part*); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1318, 1321−22, 1327, 1330 (Fed. Cir. 2014); *Leviton Mfg. Corp. v. Universal Security Instruments, Inc.*, 606 F.3d 1353, 1373 (Fed. Cir. 2010) (Prost, J., *dissenting*); *Eli Lilly and Co. v. Teva Pharmaceuticals USA, Inc.*, 557 F.3d 1346, 1351 n.* (Fed. Cir. 2009); *Motiva Patents, LLC v. Sony Corp.*, 2019 WL 4737051, *5 (E.D. Tex. Sep, 27, 2019).

Dkt. 34, 17 (citing *Dyfan*, slip op. at 19-21).  The relevant claim differentiation here is not between the structure recited in respective preambles of claims 13 and 25, but rather it is a differentiation arising from the fact that claims 13 and 25 do not recite "means for" terms while claim 41 does. No such claim differentiation was at issue in *Dyfan* because no claim recited a "means for" term.

Google also mischaracterizes *Dyfan*, and Google betrays a fundamental misunderstanding of what constitutes a *Beauregard* claim, in falsely asserting that "this Court in *Dyfan* gave means-plus-function treatment to *Beauregard* claims."  Dkt. 34, 17.  The Federal Circuit has instructed that "[a] *Beauregard* claim—named after *In re Beauregard*, 53 F.3d 1583 (Fed. Cir. 1995)—is a claim to a computer readable medium (*e.g.*, a disk, hard drive, or other data storage device) containing program instructions for a computer to perform a particular process." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011).  Each one of the claim preambles at issue in *Dyfan* recited the same three words—"[a] system, comprising[.]" None of those generic "system" claims at issue in *Dyfan* are reasonably characterized as being a *Beauregard* claim; and, not surprisingly, the *Dyfan* opinion itself does not expressly refer to any of the claims as being a *Beauregard* claim.[4]

Google also neglects to inform the Court that Google failed in raising a similar means-plus-function argument, coupled with an indefiniteness objection, in *Uniloc 2017 LLC v. Google LLC*, No. 218CV00492JRGRSP, 2020 WL 569858, at *14-*15 (E.D. Tex. Feb. 5, 2020).  After the Court there found analogous claim language was directed to "computer-readable medium (or *Beauregard*) claims," the Court rejected Google's means-plus-function construction with reasoning (equally applicable here) that included the following:

> Here, the term "computer-readable medium," … connotes sufficiently definite structure to avoid invoking § 112, ¶ 6. The phrase "computer-readable medium" is

---

[4] Another significant point of distinction over *Dyfan* is that the defendant raising an indefiniteness challenge there advanced expert testimony to support its position that certain terms were subject to means-plus-function treatment under § 112, ¶ 6 and were indefinite as allegedly lacking any corresponding structure.  Here, Google relies exclusively on conclusory attorney argument and, in doing so, it grossly mischaracterizes the intrinsic evidence.

introduced in the respective claim preamble (of claims 22-24) and further structurally defined by the following requirements:"... having stored thereon, computer executable process steps operative to control computer to document source files, the steps comprising: ...." [¶] Moreover, in contrast to the claims in *Williamson*, claims 22, 23, and 24 themselves recite the objectives and operations of the "computer-readable medium" limitations.  In other words, the claim language provides a description of how the computer-readable medium is specifically programmed to operate. … [¶] Thus, a person of ordinary skill in the art would understand that the claim language recites sufficient structure and that the term "computer-readable medium" is not used as a generic term or black box recitation of structure or abstractions. *Zeroclick*, 891 F.3d at 1007–09 ("[A] person of ordinary skill in the art could reasonably discern *from the claim language* that the words '*program*,' ... and '*user interface code*,' ... are used not as generic terms or black box recitations of structure or abstractions, but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the inventions.") (emphasis added).

*Id*.  Google's argument that *Zeroclick*[5] "cannot help WSOU avoid means-plus-function treatment here" (Dkt. 34, 18) ignores both (1) that the burden lies *with Google* to overcome the applicable presumptions here and (2) that the *Uniloc* opinion, which *ruled against Google*, found *Zeroclick supported* construing analogous claim language as *not* invoking means-plus-function treatment.

*Dyfan* is also distinguishable in that the Court there considered whether *claim limitations recited in the body of the claim* should be interpreted as means-plus-function limitations.  Here, the disputes over claims 13 and 25 concern whether Google has rebutted multiple presumptions against means-plus-function construction for phrases *recited in the respective claim preamble*.  Indeed, in raising this dispute, Google ignores that the respective preambles (of claims 13 and 25) it seeks to construe *are presumptively not even limiting*.  Because the *preamble claim language* at issue here is analogous to what was considered in *Uniloc*, analogous reasoning applies.

Further compounding its errors, Google attempts to trivialize *Crossroads Sys. (Texas), Inc. v. Chaparral Network Storage, Inc.*, No. 00-217, 2000 WL 35731852, at *4 (W.D. Tex. July 27, 2000).  According to Google, the '491 patent "specification confirms that the preambles contain

5 *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018).

merely black-box recitations couched in baroque language." Dkt. 34, 19.  Google failed in raising an analogous argument in *Uniloc*. *Uniloc*, slip. op. *14 ("a person of ordinary skill in the art would understand that the claim language recites sufficient structure and that the term 'computer-readable medium' is not used as a generic term or black box recitation of structure or abstractions).

Google also attempts to trivialize *Collaborative Agreements, LLC v. Adobe Systems Inc.*, Case No. A–14–CV–356–LY, 2015 WL 2250391 (W.D. Tex. 2015), ostensibly because the terms at issue there "refer[red] to a portion of a larger program that, similar to a module, has a specific purpose or performs a specific class of operations." Dkt. 34, 19 (quoting slip op. at *14).  Google's conclusory attorney argument falls flat.  It fails to explain why the claim preambles at issue do not invoke analogous reasoning (*e.g.*, "[a] computer program product comprising at least one computer-readable storage medium having computer-readable program code portions stored therein, the computer-readable program code portions comprising[,]" as recited in claim 13).

For the foregoing reasons, and for those reasons set forth in WSOU's opening brief (Dkt. 33, 5-9), Google's exclusive reliance on attorney argument has failed to overcome the *multiple* applicable presumptions against application of means-plus-function construction for the disputed phrases of claims 13 and 25.

> **6.   "means for processing an input image for an attempt to decode the input image using a current barcode reading method, the processing including performing a correction on the input image" (claim 41)**

| WSOU's Position | Google's Position |
|---|---|
| **Function**: "processing an input image for an attempt to decode the input image using a current barcode reading method." <br><br> **Structure**: barcode reading element 70, processing element 72, operation 200. | **Function**: "processing an input image for an attempt to decode the input image using a current barcode reading method, the processing including performing a correction on the input image" <br><br> **Structure**: 9:58 to 11:23, 15:25 to 16:52. |

In disputing the identification of functional language, Google argues that the language highlighted above recites a "separate" function that necessitates its own structure.  Dkt. 34, 9.  Google overlooks that the clause "*the processing including* performing a correction on the input

image" expressly limits the "processing" itself in terms of *how* it must be effected.  In other words, the modifying clause does not recite a *separate function*, as Google argues, but rather it recites an algorithmic (and hence structural) requirement for the "processing" *itself*.  Dkt. 33, 10-11.

Google also fails to offer a viable alternative construction for the corresponding structure. All Google offers is unexplained citations, without specifying what exactly within those citations should be considered corresponding structure.  Indeed, in arguing that "separate functions" are recited, Google fails to parse its unexplained citations in terms of *which* disclosure contained therein allegedly pertains to *which* one of the allegedly "separate functions."  Dkt. 34, 9.  Google's unexplained citations are accurately characterized by its own self-indictment: they should be rejected as needlessly requiring "the Court [to] search for needles in a haystack." *Id*., 8 n.3.

Because Google appears to take umbrage with the listing of citations identified in WSOU's opening brief, WSOU has simplified its construction of corresponding structure, as set forth in the table above.  The following citations to the '491 patent, previously provided in WSOU's opening brief, identify certain exemplary descriptions pertaining to this corresponding structure: Fig. 7-8; 2:25-3:34; 5:35-57; 8:26-16:52; 17:8-53; 19:31-60; 20:37-52; 21:38-42; 24:13-14; etc.

### C.   Google failed to meet its burden to overcome the presumption of definiteness for the "means for" terms recited only in claim 41 of the '491 patent.

For the "means for" terms of the '491 patent which Google alleges are indefinite, Google has not met the exacting burden of clear and convincing evidence merely be offering the conclusory attorney argument that WSOU allegedly had failed, in estimation of Google's counsel only, to identify any corresponding structure.  *See* Dkt. 34, 7-15; *cf*., *e.g.*, *Spansion,* 629 F.3d at 1344; *Lecat's Ventriloscope*, 351 F. Supp. 3d at 1114; *Whirlpool* , No. 2:15-CV-2103-JRG, 2016 WL 7474517, at *3.  Google's curt approach would impermissibly flip the burden.  *Id*.

Because Googles takes umbrage with the format WSOU used in its opening brief in identifying corresponding structure, WSOU simplifies its positions, as set forth in the tables below. The citations to the '491 patent, previously provided in WSOU's opening brief, serve as a guide in identifying certain exemplary descriptions pertaining to the identified structure.

### 7.  "means for determining …" (claim 41)

| WSOU's Position | Google's Position |
|---|---|
| **Function**: "determining whether the processing of the input image is successful based on a determination as to whether the correction is completed" | |
| **Structure**: processing element 72, operations 210-230 | **Structure**: None |

### 8.  "means for switching …" (claim 41)

| WSOU's Position | Google's Position |
|---|---|
| **Function**: "switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful" | |
| **Structure**: processing element 72, operations 260-270 | **Structure**: None |

### 9.  "means for attempting …" (claim 41)

| WSOU's Position | Google's Position |
|---|---|
| **Function**: "attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful" | |
| **Structure**: barcode reading element 70, processing element 72, operations 220, 270 | **Structure**: None |

### 10. "means for performing …" (claim 41)

| WSOU's Position | Google's Position |
|---|---|
| **Function**: "performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method" | |
| **Structure**: barcode reading element 70, processing element 72, operations 230, 270 | **Structure**: None |

## II.   U.S. Patent No. 8,595,283 (Case No. 6:20-cv-00576-ADA)

### 1.  "a content transfer controller … configured to …"

The disputed phrase introduced (in claim 1 only) as "a content transfer …" requires no construction and should be afforded its plain and ordinary meaning.  Because the phrase does not recite the words "means," mean-plus-function construction under Section 112, ¶ 6, presumptively does not apply. *Williamson,* 792 F.3d at 1348.  That presumption can only be overcome "if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id*. at 1349.  Resolving whether the term "a content transfer controller" invokes Section 112, ¶ 6, depends on

whether persons skilled in the art would understand the claim language to refer to structure, assessed in light of the presumption that flows from the drafter's choice not to use the word "means." *Samsung Elecs. Am. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1354 (Fed. Cir. 2020).  "In determining whether this presumption has been rebutted, the challenger must establish by a preponderance of the evidence that the claims are to be governed by § 112, ¶ 6." *Advanced Ground Info. Sys., Inc. v. Life360, Inc.*, 830 F.3d 1341, 1347 (Fed. Cir. 2016).  The presumption stands unrebutted here.  A person of skill in the art would understand the claim language to refer to structure, particularly by its recitation of "a content transfer controller configured to …" perform certain tasks.  As discussed below, the specification itself shows that the structure for "content transfer controller" is the "CPU" of "controller 21."

The Eastern District of Texas, when considering claim language also directed to "controller" structure, correctly found the word "controller" itself connotes structure in the computing arts and thus is not subject to means-plus-function construction under Section 112, ¶ 6. *See*, *e.g.*, *Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, Case No. 4:18-cv-475, 2019 WL 4259020, *14 (E.D. Tex. Sept. 9, 2019) (term "central controller" was not a nonce word but connoted specific structure to avoid means-plus-function treatment <u>since the modifier "central"</u> <u>did not</u> **alter the well-known meaning of "controller"**) (emphasis added); *Barkan Wireless IP Holdings, L.P. v. Samsung Electronics Co., Ltd.*, 2019 Markman 497902, 2019 WL 497902, *22- *23 (E.D. Tex. 2019) ("Here, Defendants have identified no authority for the proposition that 'controller' is a 'nonce' term under Williamson, and Defendants have submitted no persuasive evidence that the term 'controller' fails to connote structure in the relevant art."); *see also id. quoting IBM Dictionary of Computing*, at 145 (1994) for the term "controller" ("A device that coordinates and controls the operation of one or more input/output devices, such as workstations, and synchronizes the operation of such devices with the operation of the system as a whole.").

While the presumption stands unrebutted that Section 112, ¶ 6 does not apply to the claim language in question, Google is also wrong in arguing the specification lacks written description of corresponding structure.   For example, the specification provides certain exemplary

embodiments where the content transfer controller may be "controller 21 of the content receptor device" ('283 patent, 9:50-52), and controller 21 is labeled "CPU" in Figure 1 (*Id.*, Fig. 1). *See also id.* 6:12-24 ("the content receptor device 20 includes controller 21 which co-ordinates and controls the operation of the other elements of the content receptor device 20…"); *id.*, 10:10-11 ("The content control means, such as processor 21").  The specification further discloses, for example, various embodiments in which "controller 21" is the content transfer controller and determines an acceptable activity period by monitoring usage of the one or more components over a particular time duration, and wherein the content transfer controller is configured to determine that an acceptable activity period is present when the usage of the one or more components is determined to have been below a particular threshold level over the particular time duration. *See, e.g.*, *id.*, 7:48-8:17, 9:24-10:56. While Google complains that the term "content transfer controller" does not appear verbatim in the specification (Dkt. 34, 31), Google has not shown that the phrase "content transfer" alters the specific disclosure of "controller 21" as a "CPU". **Accordingly, the specification itself shows that the structure for "content transfer controller" is the "CPU" of "controller 21."** Google's exclusive reliance on attorney argument fails to establish persons of ordinary skill in the art would *not* understand the claim language to refer to structure, nor does Google's attorney argument prove by clear and convincing evidence that this term is indefinite.

### 2.   "the content transfer controller being arranged: to initiate transfer …"

Because the phrase introduced (only in claim 1) as "the content transfer …" does not contain the words "means," mean-plus-function construction under Section 112, ¶ 6, presumptively does not apply.  *Williamson*, 792 F.3d at 1348.  The disputed phrase requires no construction and should be afforded its plain and ordinary meaning, for the same reasons as the other "content transfer controller" term, discussed above. Google not only errs in interpreting the claim language as invoking means-plus-function construction, Google also is wrong in asserting that the specification lacks any written description of corresponding structure.  For example, the specification provides certain exemplary embodiments where the content transfer controller may

be "controller 21 of the content receptor device" ('283 patent, 9:50-52), and controller 21 is labeled "CPU" in Figure 1 (*id.*, Fig. 1). *See also id.* 6:12-24 ("the content receptor device 20 includes controller 21 which co-ordinates and controls the operation of the other elements of the content receptor device 20…"); *id.*, 10:10-11 ("The content control means, such as processor 21").  The specification further discloses, for example, various embodiments in which "controller 21" is the content transfer controller which initiates transfer of the selected item of content from a content provider device according to the determination of an acceptable activity period, to receive the selected item of content, and to store the received item of content on memory. '283 patent, 8:13-28, 10:10-11:11. While Google complains that the term "content transfer controller" does not appear verbatim in the specification (Dkt. 34, 31), Google has not shown that the phrase "content transfer" alters the specific disclosure of "controller 21" as a "CPU". **Accordingly, the specification itself shows that the structure for "content transfer controller" is the "CPU" of "controller 21".** Google's exclusive reliance on attorney argument fails to establish persons of ordinary skill in the art would *not* understand the claim language to refer to structure, nor does Google's attorney argument prove by clear and convincing evidence that this term is indefinite.

### 3. "the selected item of content"

The phrase "the selected item of content" (recited in all independent claims 1, 10, 11, and 21) requires no construction.  As recited in claim 1, the phrase derives its antecedent basis from the recitation, "allow[ing] a user to select an item of content." *See* '283 patent, 15:59-60 (claim 1); *see also* 16:45-46 (claim 10), 18:16-17 (claim 21).  At best, Google's proposed construction would render superfluous already existing claim language.  This is disfavored.  *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("interpretations that render some portion of the claim language superfluous are disfavored.").

### 4. "an acceptable level of device activity"

The phrase "an acceptable level of activity" (recited in claims 7-10, 14-16, and 21) requires no construction.  Google's response fails to establish indefiniteness. The term is not subjective or a term of degree. As the specification discloses, and as Google acknowledges, "[a] measure of the

usage of the or each component is then compared to a threshold, and a low level of device usage is determined when the threshold is not exceeded." '283 patent, 10:14-17. Google complains that the specification does not disclose a specific "threshold" or criteria for determining a "threshold" (Resp. Br. at 25), however, the point is any "threshold" is acceptable. The point is determining if the level of activity *is below* the threshold. And Google's argument that the term includes the "nature" of the usage is also incorrect, the specification merely suggests that a threshold for "low" could be an "idle" or "maintenance" network activity. '283 patent, 10:17-21. Unlike in the cases cited by Google, there is nothing subjective nor is this a term of degree. All that is required is that for any particular threshold, determining if the level of activity is below that threshold. For example, Claim 10 recites:

> "**determining an acceptable level of device activity** by a content transfer controller by monitoring usage of one or more components of a content receptor device over a particular time duration and **by determining that an acceptable activity period has occurred when component usage is determined to have been <u>below a particular threshold level</u> over the particular time duration**".

*Id.*, 16:47-53 (emphasis added). In other words, this term is not a term of degree, and regardless, Google's attorney arguments have not shown by clear and convincing evidence, that the "claims, read in light of the specification delineating the patent, and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-11 (2014).

### 5.   "monitoring usage of one or more components …"

The disputed "monitoring …" term (recited only in claim 10) requires no construction. Google's proposed construction is vague and unhelpful; and it should be rejected for improperly importing limitations not required in the claims or specification. Google cites to the prosecution history and to *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002) for the proposition that limitations from the specification (or here, prosecution history) should be imported into the claim language. However, *Ficosa* merely recites the doctrine of prosecution history

disclaimer or disavowal. *Id.* ("In particular, "the prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been **disclaimed or disavowed** during prosecution in order to obtain claim allowance.") (emphasis added). Google has made no prosecution history disclaimer or disavowal arguments in the Responsive Brief, nor has Google provided any support for such an argument. *See Computer Docking Station Corp. v. Dell*, Inc., 519 F.3d 1366, 1375 (Fed. Cir. 2008) ("Prosecution disclaimer does not apply to an ambiguous disavowal.). "[I]n order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013). And here, not only does Google fail to make a showing under the exacting standards of disavowal, the prosecution history itself does not support any such disavowal. For example, in each of the prosecution history items cited by Google, not only has Google failed to analyze the entirety of each of the documents, but a quick review shows that in each of the documents there was no clear and unmistakable disclaimer. For example, with regard to Kim, the patentee is merely pointing out that Kim only discusses periods when "the user is not actively using the bandwidth." Dkt. 34-10, 10. And as for Roberts, the patentee only states that "Roberts does not disclose or suggest performing monitoring over any particular time duration." And that "Roberts also does not disclose or suggest monitoring the usage of components." Dkt. 34-12, 31; Dkt. 34-13, 7; Dkt. 34-11, 5. Thus, there is no clear and unmistakable disavowal where the patentee is pointing to Kim only operating when the user is not actively using the bandwidth and Roberts does not disclose any particular time duration. Further, it is unclear the effect of the limitations of "limited" and "non-instantaneous" in Google's proposed construction. The Court should reject Google's attempt to redraft the claim language, particularly in a manner that would only introduce ambiguity.

### III.    U.S. Patent No. 8,640,180 (Case No. 6:20-cv-00579-ADA)

#### 1.  "client-side compositing of media streams"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | The preamble is limiting |

Google overlooks the proposition for which WSOU's opening brief cited *Ancora Techs., Inc. v. LG Elecs. Inc.*, Case No. 1-20-CV-00034-ADA, 2020 WL 4825716, at *6 (W.D. Tex. Aug. 19, 2020)—namely that the disputed preamble phrase is *presumptively* not limiting.  Dkt. 33, 22. Attempting to distinguish *Ancora* on the facts, while ignoring the applicable *presumption* for which it is cited, Google only undermines its position by (1) admitting that "the claims do not rely on 'client-side compositing of media streams' as an antecedent basis" (Dkt. 34, 34); (2) acknowledging, without direct rebuttal, the previously raised point that the '180 patent uses the disputed portion of the preamble "only to state a purpose or intended use for the invention" (*compare* Dkt. 33, 23 *with* Dkt. 34, 34); and (3) ignoring, without disputation, the observation that preamble recitation of "client-side compositing of media streams" cannot be said to provide essential structure or necessary meaning to the claims where the terms "stream" or "substeam" are independently recited in the body of each claim (Dkt. 33, 23).

Google further undermines its position by conceding that independent claim 7 is "directed to operations *of the server*" and that "the 'compositing-instruction substream' [is] *generated by the server*."  Dkt. 34, 35 (emphasis added).  Claim 20 is similarly directed to "*[a] video server* for client-side compositing of media streams."  Google admittedly seeks to depart from this explicit and specific attribution to the "video server" by requiring, instead, that "the claims require client-side as opposed to server-side compositing."  *Id*.  Given that a *purpose* expressed in a claim preamble is not limiting, it is also significant that Google at least tacitly alleges that the *purpose* of the acknowledged compositing *by the server* (as recited in claim 7) "is to enable 'client-side compositing of media streams.'"  *Id*.  Under the present circumstances, and in view of Google's party admissions, the presumption stands unrebutted that the preamble phrase "client-side compositing of media streams" is not limiting.

    **2.**   **"wherein the compositing-instruction substream indicating the area of the display screen to display the at least one media substream is an area to display one of the on screen display and a picture-in-picture"**

| WSOU's Position | Google's Position |
| --- | --- |
| Plain and ordinary meaning; definite. | Indefinite. |

18

Google's exclusive reliance on conclusory attorney argument fails to rebut the presumption of definiteness that attaches to the above disputed phrase (recited in dependent claims 8 and 21 only).  Google's new (and previously undisclosed) argument that "there is no antecedent basis for 'the area of the display screen to display the at least one media substream'" (as recited in dependent claims 8 and 21) ignores that independent claims 7 and 20 both recite "an area of the display stream" and "an aspect ratio of *at least one media substream*."  Dkt. 34, 36.  There is likewise no merit to Google's attorney argument that "[i]nstructions identifying where to place a picture in picture would satisfy dependent claims 8 and 21 **but not** independent claims 7 and 20."  *Id*., 37.  WSOU defers to the relevant portion of its opening brief, reproduced in part below:

> Claim 7 plainly qualifies the "instructions" as "indicating" "one or more" of two recited *options*: (1) "an aspect ratio of at least one media substream" and (2) "an area of a display screen to place an on screen display included in an on screen display substream."  Claim 8 *further limits* the "instructions" of claim 7 as *necessarily* indicating that "the area of the display screen . . . is an area to display one of the on-screen display and a picture-in-picture."

Dkt. 33, 26.  Google's exclusive reliance on conclusory attorney argument fails to meet the exacting standard of proving indefiniteness by clear and convincing evidence.

## IV.   U.S. Patent No. 8,965,045 (Case No. 6:20-cv-00574-ADA)

### 1.   "a pre-emptive user output"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning. | "an output that facilitates a user action to redefine available pixels before the tracked object is lost" |

Google fails to defend its proposed construction of the above term against the *multiple* violations of claim construction doctrine addressed in WSOU's opening brief.  Dkt. 33, 26-29.  WSOU observed, for example, that an "especially strong" presumption applicable here counsels against incorporating limitations from a dependent claim into an independent claim, as Google proposes to do.  *Id*., 27 (citing, *inter alia*, *SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1302–03 (Fed. Cir. 2003)).  Google offers no basis to dispute that its construction risks violating the presumption against such incorporation.  Instead, Google argues its "construction

fully coheres with the applicants' own usage of the term throughout the specification."  Dkt. 34,

40.  Google cites no authority (because there is none) holding that a construction that allegedly

"fully coheres" *with the specification* is somehow sufficient to overcome the "especially strong"

presumption against *incorporating a limitation from a dependent claim into an independent claim*,

as Google proposes.   Under Google's flawed reasoning, virtually any disclosure in the

specification could be imported as a claim limitation, without regard to whether doing so would

violate the doctrine of claim differentiation.  This clearly is not the law.

   Google argues that "at no point does the '045 patent indicate or suggest that the "pre-

emptive user output" is anything other than an output that facilitates a user action to redefine

available pixels before the tracked object is lost."  Dkt. 34, 39-40.  At a minimum, Google ignores

that the *claims themselves* are part of the patent, which is why claim differentiation has long been

established as a doctrine of construction.  As explained in the opening brief, a comparison of claims

18 and 19 readily reveals the error in Google's myopic view of the patent.  Dkt. 33, 27.

   That Google's construction is unduly restrictive is confirmed not only by the claims

themselves, but also in exemplary disclosure.  For example, the specification states, "[i]n FIG. 8B,

a particular type of user output 110 is provided pre-emptively to avoid loss of tracking when the

sub-set of pixels 102 approaches an edge of the set of available pixels 100. ***However, other forms

of pre-emptive user output 110 may be provided***."  11:27-31 (emphasis added).  Elsewhere, in

describing a preferred embodiment, the specification states "[t]he processor 4 is configured to

provide, in response to that detection, a pre-emptive user output 110 that facilitates or instigates

user action that redefines the set of available pixels 100." '045 patent, 10:22-25 (emphasis added).

   Neither example disclosure expresses Google's proposed construction as being

unambiguously required in all instances.  Rather, the specification expressly confirms in these

passages (and elsewhere) that various forms of "pre-emptive user output" may be used.  Even if

the '045 patent specification disclosed only a single embodiment of "pre-emptive user output,"

which clearly is not the case, the Federal Circuit has "expressly rejected the contention that if a

patent describes only a single embodiment, the claims of the patent must be construed as being

limited to that embodiment." *Cont'l Circuits,* 915 F.3d at (quoting *Phillips,* 415 F.3d at 1323 and citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004)).

Google mischaracterizes WSOU's opening brief as "recogniz[ing] that the statement 'before the tracked object is lost' in Google's construction is a 'clarification' of the word 'pre-emptively.'" Dkt. 34, 41. On the contrary, WSOU explained that the one and only instance in which the specification states "is lost" cannot reasonably be interpreted as providing "a lexicographic requirement for all instances of the 'pre-emptive user output' term itself." Dkt. 33, 28-29. WSOU further disputed Google's extraneous temporal requirement ("before") as (1) impermissibly adding an unrecited event ("the tracked object is lost") which may never actually occur; and (2) refuted by explicit claim language. Claim 1, for example, already specifies "when" the "pre-emptive user output" is to be provided by reciting, in part, "a pre-emptive user output ***when*** *the sub-set of pixels approaches an edge of the set of available pixels.*" Dkt. 33, 27-28. Google's response brief offers nothing in rebuttal to these previously raised points.

### 2. "said processor configured to provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels"

| WSOU's Position | Google's Position |
|---|---|
| Plain and ordinary meaning; does not invoke 35 U.S.C. § 112, ¶ 6; definite. | This term is subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6. |
| If construed as invoking § 112, ¶ 6, however, then the function is "provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels" and the corresponding structure is processor 4. | **Function**: provide a pre-emptive user output when the sub-set of pixels approaches an edge of the set of available pixels. <br> **Structure**: none (indefinite). |

Google's exclusive reliance on conclusory attorney argument fails to rebut the presumption of definiteness that attaches to the above disputed phrase (recited in claim 1 only). Google appears to take the position that a footnote in the Court's unpublished *Dyfan* opinion establishes a *per se* rule that "processor configured to" necessarily overcomes the presumption that § 112, ¶ 6 does not apply to a term that does not recite the word "means." Dkt. 34, 42 (citing *Dyfan*, 6 at slip Op. 20 n.4); *cf.* n.4, *supra*. Such a sweeping view of *Dyfan* would impermissibly flip the applicable

presumption on its head and, not surprisingly, cannot be squared with a legion of decisions of other districts, including the Eastern and Southern Districts of Texas.  Dkt. 33, 30-31 (collecting cases).

Google also cites the unpublished opinion, *St. Isidore Research, LLC v. Comerica Inc.*, No. 2:15-CV-1390-JRG-RSP, 2016 WL 4988246, at *14 (E.D. Tex. Sept. 19, 2016), which is helpful only to WSOU.  *St. Isadore* expressly recognized that "in many instances, the term 'processor' itself connotes sufficient structure and is not a 'nonce' or 'functional' word that is subject to the limitations of § 112, ¶ 6."  *Id*.  *St. Isadore* identified one non-dipositive, example factor courts have considered is whether "the claims and specification describe how the data processor accomplishes the claimed functions."  *Id*. *15.  Here, the disputed phrase of claim 1 is expressly limiting at least in terms of both *how* and *when* the "processor" performs the operation in question—i.e., "when the sub-set of pixels approaches an edge of the set of available pixels."

The Eastern District of Texas has since distinguished the holding in *St. Isadore* as limited to the particular facts at issue there.  *See Optis Cellular Tech., LLC v. Kyocera Corp.*, No. 2:16-CV-0059-JRG-RSP, 2017 WL 541298, at *26 (E.D. Tex. Feb. 9, 2017).  In *Optis*, the Court found the presumption against means-plus-function construction is underscored where, for example, "Defendants have not pointed to an intrinsic record that establishes that 'processors' is meant here to generically be anything that manipulates data as opposed to connoting structure representing what is generally known as a processor."  *Id*., slip. op. *26.

Here, in relying exclusively on attorney argument, Google likewise overlooks that the specification describes, for example, preferred embodiments in which the processor is a "central processing unit" (5:59-60; 6:16-17) that may comprise, for example, "processing circuitry 80 that is configured to read from and write to a memory 82" and that "may also comprise an output interface via which data and/or commands are output by the processor 4 and an input interface via which data and/or commands are input to the processor 4 (13:16-21).  These exemplary disclosures reveal that the "processor" term "connot[es] structure representing what is generally known as a processor."  *Optis*, slip. op. *26.  Google also overlooks the disclosed interactions of the processor with various other structural components of the systems described—*e.g.*, interaction of the

processor with a camera sensor, user input/output, and memory, as disclosed in Figs. 1-3, and 15A, and the respective corresponding descriptions.  Such component interaction is consistent, for example, with the recitation in claim 1 of interrelated limitations directed to "a first and second picture" for both the "viewfinder display" and the claimed "processor" and by the requirement that the "processor" provide "a pre-emptive user *output*."  *Id*., slip. op. *26 ("the claims and specification provide specific connection and interaction with other structural components.").

Under the circumstances, and in the absence of any expert testimony supporting a contrary conclusion,[6] Google failed to rebut the presumption against application of Section 112, ¶ 6 to this term.  And Google's exclusive reliance on attorney argument also fails to prove indefiniteness of this term, by clear and convincing evidence, as allegedly lacking *any* corresponding structure.

---

[6] *See* n.4, *supra*.

Dated: February 26, 2021               Respectfully submitted,

By:    */s/ Ryan S. Loveless*
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeff Huang
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jeff@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## **CERTIFICATE OF SERVICE**

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on February 26, 2021.

*/s/ Ryan S. Loveless*
Ryan S. Loveless