```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                       WACO DIVISION

 3  WSOU INVESTMENTS, LLC,       )(
         PLAINTIFF,              )(    CIVIL ACTION NO.
 4                               )(    6:20-CV-571-ADA
                                 )(    6:20-CV-572-ADA
 5                               )(    6:20-CV-573-ADA
                                 )(    6:20-CV-575-ADA
 6                               )(    6:20-CV-576-ADA
                                 )(    6:20-CV-579-ADA
 7  VS.                          )(    6:20-CV-580-ADA
                                 )(    6:20-CV-583-ADA
 8                               )(    6:20-CV-584-ADA
                                 )(    6:20-CV-585-ADA
 9                               )(
                                 )(    WACO, TEXAS
10                               )(
    GOOGLE LLC,                  )(    SEPTEMBER 16, 2021
11       DEFENDANT.              )(    2:02 P.M.

12                       DISCOVERY HEARING

13         BEFORE THE HONORABLE JUDGE ALAN D ALBRIGHT

14              UNITED STATES DISTRICT JUDGE

15  FOR THE PLAINTIFF:       Mr. James L. Etheridge
                             Mr. Ryan S. Loveless
16                           Etheridge Law Group, PLLC
                             2600 E. Southlake Blvd.
17                           Suite 120-324
                             Southlake, TX 76092
18
                             Mr. Mark D. Siegmund
19                           Law Firm of Walt Fair, PLLC
                             1508 North Valley Mills Drive
20                           Waco, TX 76710

21  COURT REPORTER:          Ms. Shelly Holmes, CSR, TCRR
                             Certified Shorthand Reporter
22                           2593 Myrtle Road
                             Diana, TX 75640
23                           (903) 720-6009
                             shellyholmes@hotmail.com
24

25  (Proceedings recorded by mechanical stenography, transcript
    produced on a CAT system.)
```

```
 1  FOR THE DEFENDANT:        Ms. Tracy A. Stitt
                              Jones Day
 2                            51 Louisiana Avenue NW
                              Washington, DC 20001
 3
                              Mr. T. Gregory Lanier
 4                            Jones Day
                              1755 Embarcadero Road
 5                            Palo Alto, CA 94303

 6                            Ms. Jennifer A. Kash
                              Warren Lex, LLP
 7                            2261 Market Street
                              No. 606
 8                            San Francisco, CA 94114

 9                            Mr. Michael E. Jones
                              Potter Minton, PC
10                            110 N College
                              Suite 500
11                            Tyler, TX 75702

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           THE COURT: Suzanne, if you would call the case.
2           COURTROOM DEPUTY: Sure.
3           Discovery Hearing in Civil Action W:20-CV-571,
4   572, 573, 575, 576, 579, 580, 583, 584, and 585 styled WSOU
5   Investments, LLC, versus Google LLC.
6           THE COURT: If I could have announcements starting
7   with Plaintiffs.
8           MR. SIEGMUND: Good afternoon, Your Honor. This
9   is Mark Siegmund for Plaintiff, WSOU Investments, LLC.
10  With me today is Mr. Jim Etheridge and Ryan Loveless, and
11  today Mr. Loveless will be the main speaker.
12          THE COURT: Very good. Old friends of the Court.
13          And I see Mr. Jones, another old friend of the
14  Court.
15          A lot older actually than you are, Mr. Siegmund.
16  He and I go a lot further back.
17          Mr. Jones, if you want to announce.
18          MR. JONES: Certainly. I think I'm probably older
19  than everybody.
20          But on behalf of Google, I would say we're ready
21  for this hearing, Your Honor. And on the phone with me is
22  Ms. Tracy Stitt, Mr. Greg Lanier, and Ms. Jennifer Kash,
23  and if it please the Court, Ms. Stitt will be making our
24  arguments. Thank you, sir.
25          THE COURT: That will be fine.

1         And I believe it's Google who asked us to have
2    this hearing, so I'm happy to hear from Mr. Stitt.
3         MS. STITT: Thank you, Your Honor. And may it
4    please the Court.
5         THE COURT: Ms. Stitt, have I had you in my
6    court -- have you argued before?
7         MS. STITT: I was at the Markman hearing, so I
8    have met you before but am pleased to be here again.
9         THE COURT: Well, I appreciate you being here. I
10   look forward to -- I look forward to hearing your argument.
11        MS. STITT: Thank you.
12             The fundamental problem here, Your Honor, is that
13   Dr. Jonyer is a former Google employee who was exposed to
14   confidential information during his employment that is
15   relevant to these cases.
16             There's no dispute that he received confidential
17   information or that he has ongoing confidentiality
18   obligations to Google. The only real dispute here is the
19   relevance of the information that he received.
20             Dr. Jonyer managed Device Partnerships for Google
21   TV, which is an Android-based smart TV platform and allowed
22   customers to access content over the Internet their TVs.
23   As of 2011, Google TV devices shipped with the Android
24   Market application on them.
25             The Android Market application is essentially

1  Google Play, which is an accused product here, before it
2  was called Google Play.  It's a place where users can find
3  applications, music, books, and other content, and it came
4  with Google TV.
5         There was and is a great deal of cross
6  collaboration across teams at Google, and in his role,
7  Dr. Jonyer would have had broad access to confidential
8  business information regarding other devices and
9  applications that use the Android platform, and in
10 particular Android Market, including strategic product,
11 roadmaps, and other strategic planning documents.
12        And we know this because in his role, Dr. Jonyer
13 attended all-hands meetings where confidential business
14 information, such as strategic focus points, growth
15 opportunities, features, and key metrics for products using
16 the Android platform, including Android Market, were
17 discussed.
18        That's relevant, Your Honor, and for that reason,
19 we think he should be disqualified from being an expert in
20 these cases.  There are plenty of other experts available
21 for Plaintiff to identify, and we believe that the conflict
22 of interest presented here creates too great of a risk for
23 him to violate his ongoing obligations to Google.
24        THE COURT:  Well, let me ask you about that.  It
25 seems to me he has those obligations.  He's obviously a

1  bright guy.  And if -- if he -- if he is faithful to those
2  obligations, I could order him, you got to be faithful to
3  those obligations, but it's contractual anyway, and he is
4  able to be an expert on behalf of the Plaintiff without
5  violating those -- those obligations, then why do I have an
6  interest in this?
7          I mean, I'm going to assume he -- unless you have
8  some reason to think that -- that he won't be able
9  to fulfill his obligation to stay within the parameters
10 that this agreement requires, what -- I don't understand
11 what interest I have in it.
12         MS. STITT:  We think it's an unrealistic thought
13 for him to be able to empty his head of all the
14 confidential business information related to these products
15 that he had acquired during his employment with Google.
16         And if I may give you a few examples.  We believe
17 that he needs to be an engineer on any of these accused
18 products to have detailed -- or have detailed technical
19 information in order to acquire confidential business
20 information that's relevant to this case and that will be
21 difficult for him to divorce from the work that he's going
22 to do in this case.
23         THE COURT:  Well, I think you're ducking my
24 question.  I don't mean that -- I don't think you answered
25 my question.  Let me put it more politely.

1            It seems to me that the Plaintiffs are at this
2   peril -- the Plaintiff is at this peril.  They've hired
3   this gentleman.  They know he worked for Google.  They know
4   he has this obligation.  I assure -- I'm going to guess,
5   when I hear from counsel for Plaintiff, they're going to
6   stress to me that they have told him in no uncertain terms
7   they want him to stay within the bounds of his agreement,
8   and if at some point in this litigation he realizes, I can
9   no longer do that, I would have to -- I would have to
10  invoke something that's inappropriate under my agreement,
11  then he would have to withdraw.
12           And so, I mean, really what you're saying to me --
13  and I get what I -- I think I made this argument to three
14  or four judges.  I'm not -- I get it.  I get it, especially
15  I -- you know, I worked on a bunch of trade secret cases.
16  I might have worked on one or two with your firm and
17  Ms. Kash.  I don't remember what all we did together.
18           But, again, assuming that this gentleman is
19  capable of fulfilling his obligations under the agreement
20  to stay within -- or not go beyond what he can't go beyond,
21  what interest do I have?  You're saying I can't trust him
22  to do that, I think is in essence -- either that I can't
23  trust him or that it would be impossible, and yet he seems
24  to think it would be possible.
25           MS. STITT:  We think that it would be impossible

1  because of the type of information that he received during
2  this -- during his employment with Google.
3         If I may give an example with regard --
4         THE COURT: Sure.
5         MS. STITT: -- to the Android Market product that
6  shipped on Google TV, which was, again, the product that he
7  was responsible for, and it's re-branded as Google Play in
8  2012. That re-branding happened in March of 2012, and so
9  that was right after he left Google.
10        That means that during his time at Google, he was
11 there while the strategic planning discussions regarding
12 the re-branding and the features and upgrades that were
13 going to be a part of the revised Google Play application
14 was happening and while he was participating, all-hands
15 meeting where such information was discussed.
16        And he would have known about it to inform the
17 partners before it rolled out the Google TV devices, and
18 the timing of this is important because March of 2012 is
19 not just a time 10 years ago that may not be relevant.
20 It's a potential hypothetical negotiation date in that
21 case.
22        And so Dr. Jonyer had strategy knowledge regarding
23 the accused product at that time, and he also on his resume
24 touts himself as a sought-after expert within Google for
25 structuring external software licensing agreements. And we

1  believe that's relevant, and we don't see how he would be
2  able to divorce himself of all of that knowledge in order
3  to participate in this case.
4          THE COURT:  If y'all would give me just one
5  second, I'll be right back.
6          (Pause in proceedings.)
7          THE COURT:  Just so there's no major mystery, I
8  have a six-month old puppy, and when he needs to go out, he
9  needs to go out.  So I apologize for taking a break in the
10 middle of this, but it was easier to do that than -- than
11 pay the price for not doing it.
12         Were you -- were you done, ma'am, with everything
13 you wanted to say?
14         MS. STITT:  Yes, sir.
15         THE COURT:  A response?
16         MR. LOVELESS:  Your Honor, Ryan Loveless for the
17 Plaintiff, WSOU.
18         I think you asked a very pertinent question,
19 whether or not Dr. Jonyer can maintain his confidentiality
20 obligations that he had with them for his employment a
21 decade ago and -- and not reveal or use any information for
22 his proposed testimony in this case, and we've had those
23 conversations with him, and the answer to that question is
24 yes.
25         That's principally because the work that he did

1   while he was at Google did not involve any of the accused
2   products.  And for the products that he was working on, he
3   was using his business degree, not working as an engineer,
4   wasn't involved with coding, wasn't doing any programming,
5   and the product that he -- that he actually did work on
6   was -- was discontinued in 2012.
7         The three products that he is proposed to testify
8   or provide an infringement report, two of the three didn't
9   even exist.  The first one, YouTube TV, was launched in
10  February of 2017, five years after Dr. Jonyer left.  He had
11  no knowledge to gain from -- from Google pertaining to the
12  accused instrumentality for that one.  Again, it wasn't
13  released until five years after he left.
14        The second one, YouTube Music, it was launched in
15  June of 2018, six years after Dr. Jonyer left.  For the
16  same reason, YouTube TV, certainly, you know, knowledge
17  concerning the accused features just simply did not exist
18  when he was there.
19        The final one is Google Play, and it is listed --
20  recognized as formerly known as Android Marketplace.  That
21  particular product was principally a mobile phone App
22  Store, and Dr. Jonyer did not work on Android Marketplace.
23  It was a feature that ultimately did get into one of the
24  products that he worked on, but he gained no knowledge.  He
25  was not working in the coding or development of Android

1  Marketplace, and he right now is serving as an expert in
2  the case of Uzair versus Google.  It's a class action
3  lawsuit involving the specific operation of Google Play.
4          Certainly, you know, if there was conflicts,
5  business strategic reason conflicts that -- that Google
6  had, certainly we would think that they would have objected
7  to and excluded him from his ability to testify in that
8  ongoing class action lawsuit.
9          If -- if Dr. Jonyer were here today, he would tell
10 you Android operating system, it's a -- it's a publicly
11 open source available operating system.  The way people
12 learn about it, its functionality, largely is left to
13 people studying the publicly-available code.
14         That's exactly how Dr. Jonyer learned about the
15 Android operating system, not during his time at Google but
16 when he left Google and had an opportunity to -- to have
17 things done with it was to study that.  And he had no
18 working knowledge programming-wise as far as how the
19 Android operating system functioned and didn't get into any
20 of that.
21         So, in short, Dr. Jonyer does believe he can
22 fulfill any confidentiality obligations, again, principally
23 because all the products he worked on had nothing to do
24 with the -- the accused instrumentalities, and the
25 particular product that he did work on ceased to exist and

1  was discontinued in 2012.  That's when he left, and that's
2  when the majority of his team left Google.
3         THE COURT:  Any response from counsel for Google?
4         MS. STITT:  Yes, Your Honor, if I may respond
5  briefly to a few of Mr. Loveless's points.
6         With respect to the YouTube TV and YouTube Music
7  products not being available at the time that Dr. Jonyer
8  was employed at Google, again, we don't believe that he
9  needed to be an engineer on an accused product in order to
10 acquire confidential business information that's relevant.
11        Google TV, the product that he worked on, is a
12 smart TV platform, which is essentially a bridge between
13 the TV and the Internet.  It allowed you to access content
14 through your tele -- or through the Internet via your
15 television.
16        The confidential strategy information that he
17 acquired through the planning and launch of that product is
18 relevant to a case involving a content delivery product or
19 streaming service, such as YouTube TV or YouTube Music,
20 even though those products may have came later.
21        For example, he was a part of confidential
22 strategy discussions regarding goals and features of Google
23 TV, which included the delivery of personalized content
24 with relevant recommendations to users, and that is exactly
25 what the YouTube TV case is about.

1          And the accused patent in the YouTube TV case
2   issued in 2011, during Dr. Jonyer's tenure at Google.  So
3   he had access to confidential information and strategy that
4   Google was using at the time that that patent issued.  We
5   think that's relevant.
6          With respect to the other case that Dr. Jonyer is
7   currently serving as an expert adverse to Google, that is
8   simply a case that's different.  Google -- we evaluate this
9   and whether he can be an expert -- whether there's going to
10  be a confidential --
11         THE COURT:  And for what it's worth --
12         MS. STITT:  Sorry.
13         THE COURT:  For what it's worth --
14         MS. STITT:  Thank you.
15         THE COURT:  -- that's not going to play a role.
16  You're welcome to keep going on that point, but I'm not
17  going to consider that as an issue.  But you're -- I just
18  want you to know that if you want to keep going, you're
19  welcome to.
20         MS. STITT:  No, Your Honor.  That's it.
21         Thank you very much.
22         THE COURT:  Anything else, Mr. Loveless?
23         MR. LOVELESS:  Nothing else for the -- for the
24  Plaintiff.
25         THE COURT:  I'll be back in a few seconds.

1        (Pause in proceedings.)
2        THE COURT: Oh, I'm sorry, give me one more
3 second.
4        (Pause in proceedings.)
5        THE COURT: Okay. If we can go back on the
6 record.
7        The Court is going to deny Google's request for
8 relief.
9        I'll start with you, Ms. Stitt, because you're on
10 my screen. Is there anything else that Google wanted to
11 take up today?
12       MS. STITT: Nothing from me. I will defer to
13 Mr. Lanier if he had anything else to bring up.
14       MR. LANIER: Your Honor, first, with the apology
15 for my informal attire, I got the notice of this hearing
16 after I had left home for a few days. So I apologize for
17 how I look.
18       THE COURT: That's okay.
19       MR. LANIER: Thank you.
20       There is a pending motion for protective order in
21 front of Your Honor. The parties have agreed on most
22 everything. There's a few disputed points. It's been
23 submitted to Your Honor. If chambers has a chance to look
24 at that, that will be helpful, I think, to the parties.
25 But other than that, I'm not aware of anything else.

```
 1              THE COURT:  Okay.  And thank you.  And let me go
 2   ahead and tell you all, and please spread this around to
 3   everyone.  We are -- I try -- I swore I'd never say this.
 4   We are pretty busy, and the reason I say that is in
 5   situations like this, if you all are -- I don't ever want
 6   you all waiting on something just because we have a lot to
 7   do.
 8              So in the future, if -- it takes very long at all
 9   to get something like this resolved, please contact -- I
10   think this is Jeffrey's case.  Just reach out and politely
11   say, hey, we're waiting on this, and I -- and we usually
12   move -- get it done that day, if we can.
13              So, yes, we'll take a look at that, and you should
14   expect a ruling on that before the end of the week.
15              MR. LANIER:  Thank you, Your Honor.
16              THE COURT:  But always -- you're always --
17   everyone on the call, and you can certainly, if asked about
18   my practice, if there's something pending, just call the
19   clerk and let -- give us a heads up, and we'll jump on it.
20              Any -- anything else, Mr. Loveless or
21   Mr. Siegmund?
22              MR. SIEGMUND:  Nothing from the Plaintiff, Your
23   Honor.
24              THE COURT:  Okay.  We will get to work on that
25   protective order, and then we will -- I hope to see at
```

```
 1  least some of you in person in the near future.
 2          Take care.
 3          (Hearing concluded at 2:22 p.m.)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## CERTIFICATION

I HEREBY CERTIFY that the foregoing is a true and correct transcript from the stenographic notes of the proceedings in the above-entitled matter to the best of my ability.

/S/ Shelly Holmes                    10/8/21
SHELLY HOLMES, CSR, TCRR             Date
CERTIFIED SHORTHAND REPORTER
State of Texas No.: 7804
Expiration Date: 10/31/2021