# EXHIBIT 11

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT, | § | |
| | § | |
| Plaintiff, | § | Case No. 6:20-cv-585-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**RULE 30(b)(6) NOTICE OF DEFENDANT GOOGLE LLC**

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Defendant Google LLC ("Google") shall take the oral deposition of Plaintiff WSOU

Investments, LLC ("WSOU") at the offices of Naman Howell Smith & Lee, PLLC, located at

400 Austin Avenue, Suite 800, Waco, TX 76701, (254) 755-4100.  The deposition will take place

on September 28, 2021, beginning at 9:00 a.m. CT, or at such other time and place as the parties

mutually agree.  The deposition shall be recorded by videotape and stenographic means, and a

real-time transcription service such as LiveNote may be used.  The deposition will be conducted

before an officer authorized to administer oaths and will continue from day-to-day, weekends

and legal holidays excluded, until completed, or according to a schedule mutually agreed upon

by the parties in advance of the appearance date.  The deposition will be taken for the purposes

of discovery and all other purposes permitted by the Federal Rules of Civil Procedure.

The deposition will be taken by or through one or more of WSOU's officers, directors,

managing agents, employees, and/or other such persons as are most qualified, knowledgeable,

and competent to testify on WSOU's behalf as to all matters known or reasonably available to it

regarding the topics set forth in Exhibit A attached hereto.  At least two weeks prior to the

deposition, Google requests that WSOU designate in writing to Google the name(s) of the

person(s) who will testify on its behalf concerning the subject matter set forth in Exhibit A, and

for each such written designation, the deposition topic(s) on which each person will testify.

Date:   September 3, 2021                    Respectfully submitted,

                                             _____
                                             Michael E. Jones (Texas Bar No. 10929400)
                                             Patrick C. Clutter (Texas Bar No. 24036374)
                                             **Potter Minton, P.C.**
                                             110 North College, Suite 500
                                             Tyler, Texas, 75702
                                             +1 (903) 597-8311
                                             +1 (903) 593-0846 facsimile
                                             mikejones@potterminton.com
                                             patrickclutter@potterminton.com

                                             Matthew S. Warren (California Bar No. 230565)
                                             Jennifer A. Kash (California Bar No. 203679)
                                             *(pro hac vice)*
                                             Erika Warren (California Bar No. 295570)
                                             **Warren Lex LLP**
                                             2261 Market Street, No. 606
                                             San Francisco, California, 94114
                                             +1 (415) 895-2940
                                             +1 (415) 895-2964 facsimile
                                             20-580@cases.warrenlex.com

                                             Tharan Gregory Lanier
                                             (California Bar No. 138784) *(pro hac vice)*
                                             **Jones Day**
                                             1755 Embarcadero Road
                                             Palo Alto, California, 94303
                                             +1 (650) 739-3939
                                             +1 (650) 739-3900 facsimile
                                             tglanier@jonesday.com

                                             *Attorneys for Defendant Google LLC*

**EXHIBIT A**

**DEFINITIONS**

1.       The term "WSOU v. Google Litigations" means 6:20-cv-00571, 6:20-cv-00572, 6:20-cv-00573, 6:20-cv-00575, 6:20-cv-00576, 6:20-cv-00579, 6:20-cv-00580, 6:20-cv-00583, 6:20-cv-00584, 6:20-cv-00585 in the United States District Court for the Western District of Texas.

2.       The term "WSOU," "plaintiff," "You," and "Your" means plaintiff WSOU Investments, LLC, WSOU Holdings, LLC, WSOU Investments II, LLC, WSOU Capital Partners, LLC, and their officers, directors, principals, current and former employees, counsel, agents, consultants, representatives, and any other persons acting on behalf of any of the foregoing; as well as its affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, and any other legal entities, whether foreign or domestic, that are owned, controlled by, or under common control with it, and all predecessors and successors in interest to such entities.

3.       The term "Defendant" or "Google" means Google LLC, and shall include, individually or collectively, any and all of its past and present officers, directors, partners, trustees, employees, corporate parents, subsidiaries, predecessors, affiliates, agents, representatives, and attorneys.

4.       The term "Asserted Patent" means any one of U.S. Patent Nos. 7,620,967, 7,777,728, 7,817,858, 7,946,491, 8,041,806, 8,559,928, 8,595,283, 8,640,180, 8,737,961 and 8,803,697.

5.       The term "Wade and Company" means Wade and Company, Wade + Co., Wade & Company (USA), Inc., its current and former officers, directors, employees, counsel, agents,

consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

6.     The term "Orange Holdings" means Orange Holdings, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

7.     The term "WCFT Cayman" means WCFT Cayman, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

8.     The term  "BP Funding Trust" means Basepoint Administrative LLC and BP Funding Trust, a Delaware statutory trust; BP Funding Trust, Series SPL-VI, a statutory series of BP Funding Trust; and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them including but not limited to Basepoint Capital LLC, Basepoint Tax Funding Trust, Venture 4th Basepoint 1, LLC,

Basepoint Administrative LLC, Basepoint Asset Recovery LLC, or any other "Basepoint" entity or related entity thereto.

9.      The term "Omega Credit Opportunities Master Fund" means Omega Advisors, Inc.; Omega Credit Opportunities Master Fund, LP; OCO Opportunities Master Fund, L.P. (f/k/a Credit Opportunities Master Fund, LP), and their trustees, managers, agents, representatives, employees, attorneys, or entities acting in conjunction, joint venture, or partnership with any of them.

10.     The term "Nokia" means Nokia of America Corporation, Nokia Corporation, Nokia Networks, Nokia Abp, Nokia Solutions and Networks Holdings USA Inc., Nokia USA Inc., Nokia Oyj, Nokia Technologies Oyj, Nokia Solutions and Networks B.V., Nokia Solutions and Networks Oyj, their current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing (including Alcatel Lucent and Alcatel Lucent Enterprises), as well as predecessors and successors in interest to such entities.

11.     The term "AQUA" shall mean Aqua Licensing, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

12.     The term "Houlihan" shall mean Houlihan Lokey, Inc., its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

13.     The term "Terrier" shall mean Terrier SSC, LLC, OT WSOU Terrier Holdings, LLC; its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

14.     The term "Credit Suisse" means Credit Suisse AG, Credit Suisse Group AG, its current and former officers, directors, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

15.     The term "Juniper Capital Partners" shall mean Juniper Capital Partners, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the

foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

16.     The term "Coast Asset Management" shall mean Coast Asset Management, LLC, its current and former officers, directors, principals, employees, counsel, agents, consultants, representatives, affiliates, parents, divisions, joint ventures, licensees, franchisees, assigns, predecessors and successors in interest, any other persons acting on behalf of any of the foregoing, and any other entities that own or control or are owned or controlled by or share common ownership or control with any of the foregoing, as well as predecessors and successors in interest to such entities.

17.     The term "affiliates" means any entity, including parent companies and majority-owned subsidiaries, now or hereafter acquired or formed that is directly or indirectly controlled by a party, or is under common control with a party, or is an entity that controls a party, as well as all predecessors and successors of such entities.  For this purpose "control" means direct or indirect ownership of, or the right to exercise, at least 50% of the voting power, or at least 50% of the ownership interest representing either the irrevocable right to name a majority of the members of the governing body of such entity, or the right to make binding decisions for the entity.

18.     The term "related application" means any patent or application related to a patent, including any application or other filing from which the patent claims priority, any foreign counterpart patents or applications, whether by continuation, continuation-in-part, division, reexamination, correction or re-issue, and whether issued, pending, or abandoned.

19.     The term "Related Patent" means any patent, including any foreign counterpart patent and any patent which may have been opposed, contested or subjected to any nullity proceedings, that is based in whole or in part on any related application.

20.     The term "named inventor" means any person or persons named as an inventor on the face of an Asserted Patent or Related Patent.

21.     The term "accused product" means any item, device, or product that WSOU contends infringes one or more claims of an Asserted Patent.

22.     The term "asserted claim" means any claim of an Asserted Patent that WSOU contends has been infringed by Google.

23.     The terms "including" or "that includes" mean including without limitation.

24.     The term "person" includes any individual, corporation, proprietorship, association, joint venture, company, partnership or other business or legal entity, including governmental bodies and agencies.

25.     The term "prior patent owner" means any person that owned any interest in the patent-in-suit or any application leading to the patent-in-suit.

26.     The terms "concerning," "regarding," "relating to," or "related to" in regard to a particular subject means, without limitation, concerning, constituting, contradicting, comprising, commenting on, containing, describing, discussing, embodying, evidencing, identifying, involving, mentioning, pertaining to, referring to, reflecting, regarding, relating to, responding to, stating, supporting, tending to support or refute, relating or referring (directly or indirectly) to or in any way, the particular subject matter identified, in whole or in part.

27.     The term "document," as used herein, has the same meaning it has under Rule 34 of the Federal Rule of Civil Procedure and includes all written, graphic or otherwise recorded

material, including microfilms or other film records or impressions, electronically stored information regardless of the form of storage medium, tape recordings or computer cards, floppy disks or printouts, papers, photographs, films, recordings, memoranda, books, records, accounts, communications, letters, telegrams, correspondence, notes of meetings, notes of conversations, notes of telephone calls, inter-office memoranda or written communications, recordings of conversations either in writing on any mechanical or electronic recording device, including email, notes, papers, reports, analyses, invoices, canceled checks or check stubs, receipts, minutes of meetings, time sheets, diaries, desk calendars, ledgers, schedules, licenses, financial statements, telephone bills, logs, and any differing versions of any of the foregoing, whether so denominated, formal, informal or otherwise, as well as copies of the foregoing which differ in any way, including by the addition of handwritten notations or other written or printed matter, from the original, and further includes information stored in a computer database and capable of being generated in documentary form, such as electronic mail.

28.     "Communications" includes any transmission, conveyance or exchange of a word, statement, fact, thing, idea, document, instruction, information, demand or question by any medium, whether by written, oral or other means, including electronic communications and electronic mail.

29.     Use of the singular includes the plural and vice versa.

30.     The terms "or" and "and" shall be both conjunctive and disjunctive wherever they appear, and neither of these words shall be interpreted to limit the scope of these discovery requests.

31.     The words "any" and "each" shall be construed to encompass the word "all."

32.     A verb in any tense means the verb in all tenses.

33.     "Other WSOU Defendants" means any and all companies that WSOU has sued in patent litigation matters, including ZTE Corporation, ZTE (USA), Inc., ZTE (TX), Inc.; Microsoft Corporation; Dell Technologies, Inc., Dell Inc., EMC Corporation, VMWare, Inc.; Huawei Technologies Co., Ltd., Huawei Technologies USA Inc., Huawei Device (Shenzen) Co., Ltd. (f/k/a Huawei Device Co., Ltd.), Huawei Device USA, Inc., Huawei Investment & Holding Co., Ltd.; Hewlett Packard Enterprise Company; Juniper Enterprise Networks, Inc.; Xilinx, Inc.; NEC Corporation; OnePlus Technology (Shenzen) Co., Ltd.; Canon, Inc.; TP-Link Technology Co., Ltd.; F5 Networks, Inc.; Arista Networks, Inc.; Salesforce.com; Cisco Systems, Inc.; Netgear, Inc.; and their affiliates.

## INSTRUCTIONS

1.     The singular form of a word should be interpreted in the plural as well.  Any pronoun shall be construed to refer to the masculine, feminine or neutral gender as in such case is most appropriate.  The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request most inclusive.  The words "any" and "each" shall be construed to encompass the word "all."  The past tense shall be interpreted to include the present tense where the meaning is not distorted and the verb form of a noun or pronoun may be used, as appropriate in a particular context.

2.     In the event that you object to any document request on the ground that it is overbroad and/or unduly burdensome for any reason, respond to that document request as narrowed to the least extent necessary, in your judgment, to render it not overbroad/unduly burdensome and state specifically the extent to which you have narrowed that document request for purposes of your response.

3.      In the event that you object to any document request on the ground that it is vague and/or ambiguous, identify the particular words, terms or phrases that are asserted to make such request vague and/or ambiguous and specify the meaning actually attributed to you by such words for purposes of your response thereto.

4.      If possible, supply all annual data requested on a calendar basis.  However, if fiscal year data is provided, please specify the month in which the fiscal year begins and terminates.  Where information is requested "for each year," include the requested information for all prior years and also the requested information available for the current year and specify what portion of the current year is covered by such information.

5.      If information requested is not readily available from your records in exactly the form requested, furnish the information in the form maintained by you or carefully prepared estimates, designated as such and attach explanations of any estimate used and how the estimate was prepared.

6.      If you do not answer any request, or part thereof, because of a claim of privilege or any other claim, set forth the privilege claimed, the facts upon which you rely to support the claim or privilege and furnish a list identifying each item of information for which privilege is claimed, containing at least the following information:

   a.   The date the document was created;

   b.   The names of the owner or author(s)/sender(s) of the document;

   c.   If the document is an email, the name of the recipient(s), including copy and blind copy recipients;

   d.   A brief description of the document and type of legal advice; and

e.   The grounds for the claim or privilege (e.g., attorney work product,

attorney-client communication).

The sender(s) and recipient(s) shall be identified by position and entity (corporation or

firm, etc.) with which they are employed or associated. If the sender or recipient is an attorney or

foreign patent agent, he or she should be so identified.  In the case of a foreign patent agent, there

should be a statement of whether the laws of the agent's country grant privileged status to a

patent agent's communication.  The type of privilege claimed must also be stated, together with

certification that all elements of the claimed privilege have been met and not waived with respect

to each document.

7.     Technical terms shall have their normal technical meaning.  If you find the

meaning of any term in these requests to be unclear, you must assume a reasonable meaning,

state what the assumed meaning is, and answer on the basis of that assumed meaning.  If you

wish to clarify your interpretation of any particular term that it relied on in answering a request,

you should do so in its answer.

8.     To the extent that any portion of a request requires the production of documents

that were at one time within your possession, custody, or control, but which are now in the

possession, custody, or control of another, you are directed to identify such documents in a

manner sufficient to describe such documents for the purpose of preparing and serving a proper

subpoena and to give the name, telephone number, address, and e-mail address of the person last

known by you to have been in possession, custody, or control of such documents.

## DEPOSITION TOPICS

**TOPIC NO. 1:**

The formation of WSOU.

**TOPIC NO. 2:**

Your corporate structure and ownership, including WSOU's officers, directors, and executives from WSOU's formation to the present.

**TOPIC NO. 3:**

Each person or entity having an ownership interest in WSOU, direct or indirect, including the amount or percentage of each person's or entity's interest from WSOU's formation to the present.

**TOPIC NO. 4:**

WSOU's corporate structure and business model, including the relationship of WSOU Investments, LLC to WSOU Holdings, LLC, WSOU Investments II, LLC, and WSOU Capital Partners, LLC.

**TOPIC NO. 5:**

Any agreements between WSOU and Allied Security Trust, AQUA Licensing, LLC, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Wade and Company, Orange Holdings, BP Funding Trust, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman, including any amendment, modification, supplementation, abrogation, or termination of any such agreements.

**TOPIC NO. 6:**

All facts supporting WSOU's claim that it has standing to bring the WSOU v. Google Litigations.

**TOPIC NO. 7:**

Communications between WSOU and any other party relating to the possibility of patent litigation, including any actual or potential patent litigation against Google and the WSOU v.

Google Litigations.

**TOPIC NO. 8:**

Communications between WSOU and any other party relating to the WSOU v. Google

Litigations, litigation involving any Asserted Patent or Related Patent, or potential patent

litigation against Google.

**TOPIC NO. 9:**

The individuals and entities involved in the decision to file the WSOU v. Google

Litigations.

**TOPIC NO. 10:**

Any agreements that convey any right to the Asserted Patent or Related Patent, including

to the ownership, assignment, license or conveyance of any interest in the Asserted Patent or any

Related Patent, or in any litigation or enforcement involving such patents.

**TOPIC NO. 11:**

All facts regarding any communications between WSOU and the named inventor of the

Asserted Patent.

**TOPIC NO. 12:**

All facts regarding the design and development of the subject matter and/or technology of

all claims in the Asserted Patent, including the identification of the purported inventors of the

Asserted Patent, and the key dates of events related to the alleged inventions claimed in the

Asserted Patent.

**TOPIC NO. 13:**

Research efforts, whether published or unpublished, authored, co-authored, edited, or

revised by the inventors of the Asserted Patent, that concern or relate in any way to the subject

matter recited in any claim of the Asserted Patent or Related Patents anywhere in the world.

**TOPIC NO. 14:**

All facts relating to the conception, development, and reduction to practice of the

Asserted Patent or Related Patents or relating to any alleged embodiment of any claim of the

Asserted Patent or Related Patents.

**TOPIC NO. 15:**

All facts relating to the ownership, title, transfer, or assignment of the Asserted Patent or

Related Patents, including without limitation any assignment, or any offers of ownership, title,

transfer, or assignment of any of the Asserted Patent or Related Patents.

**TOPIC NO. 16:**

All facts related to the prosecution of the Asserted Patent or Related Patents.

**TOPIC NO. 17:**

Any foreign or U.S. litigation, opposition proceeding, interference, reexamination,

reissue proceeding, nullity proceeding, revocation proceeding, arbitration, conflict, or dispute

involving the Asserted Patent or Related Patents anywhere in the world.

**TOPIC NO. 18:**

The payment of fees to the United States Patent and Trademark Office as required by 35

U.S.C. § 41 for the maintenance of the Asserted Patent.

**TOPIC NO. 19:**

All facts relating to testing, analysis, or research comparing the claims of the Asserted

Patent or Related Patents to Prior Art.

**TOPIC NO. 20:**

All facts relating to Prior Art known to You or the alleged inventors named on the

Asserted Patent, including without limitation all patents, publications, or other materials or events that anyone has suggested or stated are or may be Prior Art.

**TOPIC NO. 21:**

All facts regarding the manners or techniques by which any invention purportedly disclosed by any claim in the Asserted Patent allegedly improved upon Prior Art.

**TOPIC NO. 22:**

All facts and communications relating to any Prior Art disclosed by any potential or actual licensee of the Asserted Patent or Related Patents, including in prior litigations, negotiations, or discussions.

**TOPIC NO. 23:**

For each asserted patent, identification of each secondary consideration of non-obviousness on which you may rely (including but not limited to commercial success, satisfaction of a long-felt commercial need, achievement of any unexpected results, expression of disbelief by experts, copying by others) and all facts relating to each consideration.

**TOPIC NO. 24:**

All facts relating to Your contention, if any, that there is any quantitative benefit from the alleged inventions claimed in the Asserted Patent, including any evidence of any difference in performance or sales of a device or method incorporating these alleged inventions as compared to a device or method that does not incorporate these alleged inventions.

**TOPIC NO. 25:**

All facts relating to statements by any owner of the Asserted Patent or Related Patents that the Asserted Patent or Related Patents would not be enforced.

**TOPIC NO. 26:**

Any investigation, research, or other diligence relating to the licensing, assignment or acquisition of the Asserted Patent or Related Patents.

**TOPIC NO. 27:**

All facts and communications that You have received from third parties that relate to the Asserted Patent or Related Patents or any patent in its chain of priority, including (but not limited) to any valuation of the Asserted Patent or Related Patents.

**TOPIC NO. 28:**

All facts and documents concerning any patentability or state of the art search, literature search, validity search, patentability or state of the art analysis, validity analysis, enforceability analysis, unenforceability analysis, invalidity analysis, or infringement analysis, conducted by You, or by any person on Your behalf, related to the Asserted Patent or any Related Patents.

**TOPIC NO. 29:**

All facts regarding the availability or unavailability of any allegedly non-infringing alternatives to the Asserted Patent or Related Patents.

**TOPIC NO. 30:**

All facts relating to the marking of any products with the number of the Asserted Patent, as the term "marking" is used in 35 U.S.C. § 287.

**TOPIC NO. 31:**

All facts relating to any inspection, testing, evaluation, or analysis conducted by any person of any product or service of Google for any purpose by or on behalf of You, including all documents showing how any product or service of Google compares to one or more claims of the Asserted Patent or Related Patents, including any claim charts regarding the Asserted Patent or

– 15 –

Related Patents.

**TOPIC NO. 32:**

All facts regarding when You first became aware of the existence of each of the Accused Products, including documents regarding Your initial discovery of the alleged infringement by each of the Accused Products.

**TOPIC NO. 33:**

All facts that support or refute any contention by You that any of the Accused Products literally infringe any claim of the Asserted Patent or infringe any claim of the Asserted Patent under the doctrine of equivalents.

**TOPIC NO. 34:**

All facts regarding any damage or harm You allegedly suffered as a result of the sale, offer for sale, or use of any of Google's products, methods, or systems.

**TOPIC NO. 35:**

Any financial analyses, opinions, evaluations, or valuations of the Asserted Patent or Related Patents, anywhere in the world, including but not limited to information for determining a royalty rate for purposes of licensing or tax accounting.

**TOPIC NO. 36:**

All facts relating to any studies, analyses, evaluations, opinions, and communications with third parties concerning the valuation of any Asserted Patent or Related Patents, including without limitation any evaluation of expected return on investment(s) made in the Asserted Patent or Related Patents.

**TOPIC NO. 37:**

Any valuation of any of Your corporate assets, patents, or patent portfolio owned or

controlled by WSOU, or to which WSOU has any rights, including, but not limited to, the

Asserted Patent or Related Patents from 2014 to the present.

**TOPIC NO. 38:**

All facts relating to any proposed or actual settlement of any litigation, prospective

litigation, or disputes involving the Asserted Patent or Related Patents.

**TOPIC NO. 39:**

All facts regarding the value to consumers of any features, functionalities, or other

technical components allegedly covered by the Asserted Patent or Related Patents.

**TOPIC NO. 40:**

All facts reflecting the sales and revenue for Your products, or third party products for

which You provided technology, that allegedly embody any claim of the Asserted Patent or

Related Patents.

**TOPIC NO. 41:**

All facts regarding any sale, offer to sell, use, disclosure, invention, or derivation of the

alleged invention claimed in the Asserted Patent or Related Patents or by any Person.

**TOPIC NO. 42:**

All facts regarding any negotiations regarding the sale, transfer, assignment, or licensing

of any rights to the Asserted Patent or Related Patents, including the identification of all licenses,

licensees, and the terms of such licenses.

**TOPIC NO. 43:**

Your proposals, offers, or other discussions by you or your predecessors in interest,

regarding actual or potential agreements with Allied Security Trust, AQUA, RPX Corporation,

Fortress Credit Co., LLC or Houlihan regarding an Asserted Patent or Related Patents including communications regarding such a proposal, draft agreements, and executed agreements.

**TOPIC NO. 44:**

Communications with AQUA regarding any offers to license or purchase the Asserted Patent or Related Patents, including any communications to license or purchase a portfolio of patents in which the Asserted Patent or any Related Patents were included or encompassed.

**TOPIC NO. 45:**

Your agreements with Wade and Company, Orange Holdings, BP Funding Trust, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management or WCFT Cayman.

**TOPIC NO. 46:**

Your relationship, interactions, and/or communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Wade and Company, Orange Holdings, BP Funding Trust, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding an Asserted Patent or any portfolio including the Asserted Patent.

**TOPIC NO. 47:**

Your relationship, interactions, and/or communications with Nokia, Allied Security Trust, AQUA, RPX Corporation, Fortress Credit Co., LLC, Houlihan, WSOU, Wade and Company, Orange Holdings, BP Funding Trust, Omega Credit Opportunities Master Fund, Terrier, Juniper Capital Partners, Coast Asset Management, or WCFT Cayman regarding the assignment or licensing of the Asserted Patent or any portfolio including the Asserted Patent.

**TOPIC NO. 48:**

All facts regarding the market or demand for the alleged inventions claimed in the

Asserted Patent or the technology of the Asserted Patent including:

> a. market studies, market surveys, competitive analyses, analyst reports, or any other
>
> document prepared by You or relating to market expectations and discussions or
>
> description of the competitive environment;
>
> b. forecasts, sales/market projections, business plans, or other documents reflecting
>
> Your expectations regarding the market potential for any prototypes, devices, or
>
> systems that allegedly embody any claim of the Asserted Patent; and
>
> c. any device, prototype, physical sample, model, or working model that embodies or
>
> otherwise incorporates or uses the subject matter allegedly disclosed or claimed in
>
> the Asserted Patent.

**TOPIC NO. 49:**

All facts relating to Your current and historical licensing practices, efforts to license Your

patents, and licenses to Your patents, including without limitation the Asserted Patent or Related

Patents, and the circumstances under which You will grant or have granted licenses, the identity

of all licenses to the Asserted Patent or Related Patents, the factors that You consider when

deciding what terms to incorporate in such licenses, the structure for such licenses, the amounts

and royalty rates that You have either offered or accepted for such licenses, and any license

agreements, correspondence, or discussions that have resulted from these efforts, or any other

license agreements that concern patents comparable to the Asserted Patent or Related Patents.

**TOPIC NO. 50:**

All facts relating to recoveries from licensing or asserting the Asserted Patent or Related

Patents.

**TOPIC NO. 51:**

Any policy of Yours with respect to taking or granting licenses to the Asserted Patent or Related Patents.

**TOPIC NO. 52:**

All facts regarding any comparable licenses that would assist in determining a reasonable royalty applicable to the Asserted Patent or Related Patents.

**TOPIC NO. 53:**

All facts regarding any royalty rate for the Asserted Patent or Related Patents.

**TOPIC NO. 54:**

All facts relating to Your efforts to enforce or monetize the Asserted Patent or Related Patents anywhere in the world.

**TOPIC NO. 55:**

All facts relating to efforts by any owner or assignee of the Asserted Patent to enforce or monetize the Asserted Patent or Related Patents anywhere in the world.

**TOPIC NO. 56:**

All facts related to any actual or projected royalties for any license or other agreement relating to the Asserted Patent or Related Patents, in whole or in part, alone or in conjunction with any other patents or intellectual property.

**TOPIC NO. 57:**

All facts relating to the identity of all persons or entities with a direct or indirect financial stake in this litigation.

**TOPIC NO. 58:**

All facts relating to any capitalization of WSOU, including any assets, capital, or funds that any entities may provide or has provided to You.

**TOPIC NO. 59:**

All communications between You and Google regarding the Asserted Patent prior to filing suit against Google.

**TOPIC NO. 60:**

Any communications with one or more of the Other WSOU Defendants concerning WSOU, the Asserted Patent, or the Related Patents.

**TOPIC NO. 61:**

Identification of each product that practices the claim(s) of the Asserted Patent that is made, sold, or offered for sale by WSOU.

**TOPIC NO. 62:**

Identification of each product made, sold, or offered for sale by WSOU.

**TOPIC NO. 63:**

Identification of expenditures, including money and hours, that WSOU annually spends on research and development.

**TOPIC NO. 64:**

Identification of all patent applications filed by any WSOU employee or contractor as part of their employment or work with WSOU.

**TOPIC NO. 65:**

Facts and circumstances surrounding WSOU acquisition of patents or patent rights from any third party, including but not limited to the identification of any such third party.

**TOPIC NO. 66:**

WSOU's assessment, valuation, evaluation, analysis, or ranking of each Asserted Patent relative to other asserted patents.

**TOPIC NO. 67:**

All facts relating to when and how WSOU first provided Google with notice of each Asserted Patent.

**TOPIC NO. 68:**

The "Release and Relinquishment of Interest in WSOU Investments, LLC" at USPTO Reel 043953 Frame 0847 on August 21, 2017, the circumstances of this agreement, and any related agreements.

**TOPIC NO. 69:**

"Amended Schedule B3: Assignment of Patent Rights by Nokia Technologies Oy Patent Assignment" recorded at USPTO Reel 043953 Frame 0843, dated August 2, 2017, the circumstances of this agreement, and any related agreements.

**TOPIC NO. 70:**

"Assignment of Patent Purchase Agreement" recorded at USPTO Reel 043953 Frame 0846, dated August 21, 2017, the circumstances of this agreement, and any related agreements.

**TOPIC NO. 71:**

The "Patent Security Agreement" recorded at USPTO Reel 043966 Frame 0574, dated August 22, 2017, the circumstances of this agreement, and any related agreements.

**TOPIC NO. 72:**

The "Release of Patent Security Interest" dated May 16, 2019, and recorded at USPTO Reel 049246 Frame 0405, the circumstances of this agreement, and any related agreements.

**TOPIC NO. 73:**

The "Patent Security Agreement" recorded at USPTO Reel 09235 Frame 0068, signed May 16, 2019, the circumstances of this agreement, and any related agreements.

**TOPIC NO. 74:**

The "Release of Patent Security Interest", recorded at USPTO Reel 056526 Frame 0093 on June 3, 2021, the circumstances of this agreement, and any related agreements.

**TOPIC NO. 75:**

The "Patent Security Agreement" recorded at USPTO Reel 056990 Frame 0187, signed May 28, 2021, the circumstances of this agreement, and any related agreements.

**TOPIC NO. 76:**

Communications with any investors or potential investors, including any communications with investors or potential investors related to WSOU's business model, the Asserted Patent, any portfolio comprising the Asserted Patent, Related Patents, or the WSOU v. Google Litigations.

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served via email on all counsel of record on this 3rd day of September, 2021.

Francesca Germinario