**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT, | § | |
| | § | Case No. 6:20-cv-580-ADA |
| Plaintiff, | § | Case No. 6:20-cv-585-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT GOOGLE LLC'S OPPOSITION TO
<u>PLAINTIFF'S MOTION TO EXTEND PRETRIAL DEADLINES</u>**

## TABLE OF CONTENTS

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.    WSOU's Final Infringement Contentions in Both Cases Require Calls to Specific
Portions of the Accused APIs, and Further Require Applications to Take Additional
Steps, Outside of the Accused API Functionality, to Complete Infringement . . . . . . . . . 2

B.    Google Provides Discovery Matching WSOU's Infringement Contentions . . . . . . . . . . 3

    1.    ████████████████████████████████████ . . . . 3

    2.    Google and WSOU Negotiate the Scope of Depositions Under Rule 30(b)(6) . . . 4

C.    Well Past the Eleventh Hour, WSOU Seeks Discovery Regarding Functionality Not
Accused by Its Infringement Contentions, and More Time to Take That Discovery . . . . . 5

D.    WSOU Unilaterally Cancels At Least One Week of Depositions in All Cases . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    WSOU Seeks Discovery That is Irrelevant to Its Claims, and Thus Improper . . . . . . . . 6

II.    WSOU Has Not Shown the Required Diligence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.    Google Designated Witnesses Who Were Already Knowledgeable on the Accused API
Functionality, and Ensured That They Were Fully Prepared to Testify, But WSOU
Ignored the Accused Functionality in Favor of "Gotcha" Questions . . . . . . . . . . . . . . . 9

    A.    Christiaan Prins . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B.    Reto Meier . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    C.    Payam Pakzad . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.    The Court Should Not Upend the Usual Procedure for 30(b)(6) Depositions,
Which Both WSOU and Google Followed, After Those Depositions Have Begun . . . . 19

    A.    WSOU and Google Confirmed They Would Follow the Usual Procedure . . . . . 19

    B.    This Court Has Not Moved Away From the Usual Procedure, and Should Not. . 19

V.    Modifying the Schedule for Two Actions Would Disrupt the Other Two (or Four) . . . . 20

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**<u>TABLE OF AUTHORITIES</u>**

*Cases* **Pages**

*AstraZeneca AB v. Apotex Corp.,*
  782 F.3d 1324 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Beach Mart, Inc. v. L & L Wings, Inc.,*
  302 F.R.D. 396 (E.D.N.C 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,*
  218 F.R.D. 125 (E.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Hoover Grp., Inc. v. Custom Metalcraft, Inc.,*
  66 F.3d 299 (Fed. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Micro Motion, Inc. v. Kane Steel Co.,*
  894 F.2d 1318 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rivas v. Greyhound Lines, Inc.,*
  No. 14-166, 2015 WL 13710122 (W.D. Tex. Nov. 19, 2015) . . . . . . . . . . . . . . . . . . . . . 14

*Rivera v. County of Willacy,*
  2007 WL 1655303 (S.D. Tex. June 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA,*
  315 F.3d 533 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wallen v. Teknavo Grp.,*
  No. 12-6196, 2018 WL 1278317 (E.D.N.Y. Feb. 22, 2018) . . . . . . . . . . . . . . . . . . . . . . 2

*W.H. Wall Fam. Holdings LLLP v. CeloNova Biosciences, Inc.,*
  No. 18-303, 2020 WL 1644003 (W.D. Tex. Apr. 2, 2020) . . . . . . . . . . . . . . . . . . . . . . . 6

*WSOU Investments LLC v. Oneplus Technology (Shenzhen) Co., Ltd.,*
  No. 20-958 (W.D. Tex. Jan. 18, 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Statutes and Rules*

Fed. R. Civ. P. 30(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## INTRODUCTION

Although WSOU's motion claims to seek only a brief delay, its real intent is to expand the scope of this case.  Although Google is willing to agree to reasonable changes in the schedule, it cannot agree to drastically change the scope of this case at this late date.

To prevail on this motion, WSOU must argue not against Google, but against itself. WSOU's final infringement contentions claim that specific portions of specific Google APIs contribute to alleged infringement, *and* that an application *separate* from the accused API functionality must take *further* actions to complete infringement.  WSOU did not specify which applications it alleged completed infringement, and so Google provided discovery into the accused API functionality, including voluminous production of source code.  For the first year-and-a-half of this case, WSOU accepted that Google's production would follow the scope of its infringement contentions.  In January 2022, however, new counsel for WSOU appeared and newly sought discovery regarding "all applications that call to the accused APIs," on the new theory that "use of the API by the revenue-generating applications that call to them is inherent in Brazos' contention that the Awareness API and Mobile Vision API infringe its patents."

WSOU's new theory contradicts its infringement contentions in two ways:  (1) the contentions confirm that only specific calls to specific portions of the accused APIs can contribute to infringement, while the new theory assumes all API calls infringe; and (2) the contentions confirm that an application must take *additional* steps, *outside* the accused API functionality, to complete WSOU's infringement read.  In pressing its new theory, WSOU simply ignored its own infringement contentions, assuming instead that *any* call by *any* application *must* infringe its patents.  This effort must fail, because WSOU cannot seek discovery into *all* applications when it has not alleged that *any* application actually infringes its patents in this case.

## BACKGROUND

**A.** **WSOU's Final Infringement Contentions in Both Cases Require Calls to Specific Portions of the Accused APIs, and Further Require Applications to Take Additional Steps, Outside of the Accused API Functionality, to Complete Infringement**

On May 21, 2021, WSOU provided final infringement contentions in these actions.  Exs. 1, 2.[1]  WSOU's contentions confirmed that, under WSOU's theory, infringement requires *both* certain specific calls to certain specific portions of an accused API *and additional actions* by an application *separate* from accused API functionality.[2]  In the -580 case, WSOU's contentions allege that "Google Mobile Vision API's barcode reading feature" performs *some* steps of alleged infringement, but then █████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████ *Id.* at 14.  As WSOU's contentions admit, its infringement theory thus requires not only that an application call into "Google Mobile Vision API's barcode reading feature," but also that this application take the information *returned* from this API call and perform *additional steps*, ██████████████████████████████████████████████████████████   *See generally id.*

---

[1] All exhibits are to the concurrently filed Declaration of Francesca Germinario.

[2] "An API or application programming interface is a set of functions and procedures allowing the creation of applications that access the features or data of an operating system, application, or other service."  *Wallen v. Teknavo Grp.*, No. 12-6196, 2018 WL 1278317, at *6 n.4 (E.D.N.Y. Feb. 22, 2018) (citing API, Oxford Living Dictionaries, available at https://en.oxforddictionaries.com/definition/api).

In the -585 case, WSOU's contentions allege that specific calls into "Google Awareness API" perform some steps of alleged infringement, but further require that an ████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████. Ex. 2 at 66.  Thus, as WSOU's contentions again admit, its infringement theory requires not only that an application call into "Google Awareness API," but also that this application take the information *returned* from this API call and perform *additional steps*, including delivery of a service.  *See generally id.*

Thus, in both the -580 and -585 cases, WSOU's contentions require that some alleged infringement must occur *in an application*, separate from the accused API functionality.  *Id.*

**B.    Google Provides Discovery Matching WSOU's Infringement Contentions**

For the first year-and-a-half of this case, Google provided and WSOU accepted discovery matching WSOU's infringement contentions.  Because the only functionality WSOU identified was the accused API functionality, Google provided discovery only regarding that functionality.

**1.    Google Confirms It ████████████ From the Accused Functionality**

Google also provided interrogatory responses relevant to the accused API functionality. On March 29, 2021, WSOU served Interrogatory No. 4, which asked Google to "IDENTIFY all ways in which YOU derived or will derive revenue . . . associated with each ACCUSED INSTRUMENTALITY."  Exs. 3, 4.  On April 28, 2021, Google responded and objected, and stated in these cases that it was ████████████████████████████████████ ████████████ but was willing to meet and confer with WSOU.  Exs. 5 at 31, 6 at 27.  WSOU never sought to meet and confer on Google's responses to Interrogatory No. 4.  On September 15, 2021, WSOU also served Interrogatory No. 13, which asked Google to "IDENTIFY all ways in which YOU derived or will derive monetary and/or non-monetary benefits by including the

ACCUSED INSTRUMENTALITY in YOUR products and/or services."  Ex. 7.  On October 15,

Google responded and objected, stating that ████████████████████████████

████████  to the accused APIs.  Exs. 8 at 12, 9 at 12.

### 2.    Google and WSOU Negotiate the Scope of Depositions Under Rule 30(b)(6)

Finally, Google provided deposition testimony relevant to the accused API functionality.

In preparing for depositions under Fed. R. Civ. P. 30(b)(6), Google and WSOU followed the

procedure well-trod by previous participants in patent litigation.  On September 2 and 3, 2021,

WSOU and Google exchanged lengthy and detailed notices of deposition.  Exs. 10, 11.  On

September 22 and 30, Google and WSOU exchanged lengthy and detailed objections to each

other's notices.  Exs. 12, 13.  Google's objections notified WSOU that, for many topics, it would

prepare a witness only regarding "the accused functionality charted in WSOU's Final

Infringement Contentions."  Ex. 13 at 8,14-19, 25-34, 36-46, and 49-52.  In response to Google's

noticed topics, WSOU responded that it "will not designate a witness" (*e.g.*, Ex. 12 at 3-4, 9-10);

or, in other cases, WSOU limited the scope of its testimony based on its relevance objections.

*E.g.*, *id*. at 6 (limiting testimony to "non-privileged relevant communications with third parties, if

any, concerning the possibility of patent litigation.").

On September 24, 2021, Google designated its 30(b)(6) witnesses, subject to its

objections.  Ex. 14, 15.  On September 27, WSOU wrote to Google regarding its 30(b)(6)

objections; it did not argue with the concept of objections, claiming only that some of Google's

objections limited testimony too much.  Ex. 16.  Google responded on September 30, 2021,

explaining that "WSOU is not, as you contend, entitled to unfettered discovery regarding

Google's products.  The scope of discovery in these cases is bounded by the allegations in

WSOU's infringement contentions, and Google's objections properly reframe the scope of

WSOU's overbroad topics consistent with WSOU's own infringement contentions."  Ex. 17.

WSOU did not respond to this letter.  On September 28, Google wrote WSOU, confirming that

"each witness will only testify once; if WSOU proceeds with a deposition, it cannot seek the

same witness again later.  If any issues prevent WSOU from taking a complete deposition, we

expect that WSOU will raise and resolve them before testimony commences."  Ex. 18.  Again,

WSOU did not respond to this letter.  On October 5, WSOU designated 30(b)(6) witnesses,

"[s]ubject to the limitations and objections in WSOU's objections to Google's Rule 30(b)(6)

topics."  Ex. 19.  WSOU explained that it "did not designate individuals on certain topics based

on its valid objections.  WSOU has also properly limited the scope of certain topics."  Ex. 20.

## C.  Well Past the Eleventh Hour, WSOU Seeks Discovery Regarding Functionality Not Accused by Its Infringement Contentions, and More Time to Take That Discovery

After a year and a half of taking and receiving discovery relevant to the functionality

accused in its infringement contentions, WSOU sought new discovery uncabined by previous

limits.  WSOU demanded sweeping document production regarding *any* calls "to either the

Mobile Vision API or Awareness API," including calls, such as face detection or text

recognition, completely unrelated to WSOU's infringement contentions.  Ex. 21.  WSOU also

sought significant document production regarding "advertisements that are targeted to the

consumer's location or to a radius around a consumer's location," even though its infringement

contentions do not claim this would constitute infringement, and indeed do not even mention

"advertisements" or "advertising."  *Id.*; *see supra* § A.  Contradicting its own contentions,

WSOU claimed that "any application's call to the accused APIs causes a Google apparatus to use

the patented invention, and it is Google who performs the methods disclosed in response to the

app's request."  *Id.*; *see supra* § A.  WSOU's decision to ignore its own infringement theory also

infected its depositions of Google's witnesses. WSOU pushed Google's witnesses to address topics unrelated to its infringement contentions, seeking to manufacture disputes rather than obtain responsive testimony. *See infra* § I.B.

**D.   WSOU Unilaterally Cancels At Least One Week of Depositions in All Cases**

This past Friday afternoon, February 11, 2022, WSOU unilaterally canceled this week's depositions—not just in these two cases, but in all cases between WSOU and Google—without first meeting and conferring with Google. Ex. 22. WSOU's unilateral action disrupted the schedule, and perhaps the trial date, in all pending cases between WSOU and Google.

## ARGUMENT

**I.   WSOU Seeks Discovery That is Irrelevant to Its Claims, and Thus Improper**

WSOU seeks this extension to take additional proposed discovery; if that discovery is improper, WSOU needs no extension. The proposed discovery is improper, because it seeks information regarding functionality WSOU has not accused of infringement. "Information [that] is not relevant to any claim or defense in this lawsuit," including "financial information," is not discoverable for calculation of damages in patent cases. *W.H. Wall Fam. Holdings LLLP v. CeloNova Biosciences, Inc*., No. 18-303, 2020 WL 1644003, at *3 (W.D. Tex. Apr. 2, 2020). That is exactly what WSOU seeks here. WSOU's discovery motions in these actions seek breathtakingly broad and burdensome discovery from Google, including but not limited to:

- "Production of quarterly revenue data for all applications that call to either the Mobile Vision API or Awareness API, such data to identify each application separately and identifying the source of revenue by category (e.g., app purchase, in-app purchase, advertising)";

- "Data disclosing, the fees structure for Google ads, including amounts charged for location-targeted advertising as compared with advertisements that are not targeted to the consumer's location";

- "Data disclosing the proportion of all advertisements that are targeted to the consumer's location or to a radius around a consumer's location"; and

- "Documents disclosing the proportion of ad purchasers who elect ads to be targeted to customer location or radius."

This and other discovery WSOU seeks share a common flaw: *none of it concerns functionality that WSOU has even accused of infringement*.  WSOU admitted as much during a meet-and-confer call—after it filed these motions, not before as the Court requires—but claimed that its requests are nevertheless relevant to damages, specifically "royalty base."  WSOU is wrong.  "The royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'"  *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (citing *Hoover Grp., Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 304 (Fed. Cir. 1995)).  "A litigant may not engage in merely speculative inquiries in the guise of relevant discovery," and is not entitled to discovery "simply because its patent infringement complaint against another seeks damages."  *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1328 (Fed. Cir. 1990).

Seeking to avoid this fatal flaw, WSOU's new counsel simply assume that *all* applications infringe *every* time they call the accused API.  *See, e.g.*, Ex. 21 ("there is direct infringement by Google in each instance that an application calls the Awareness API and the function of that API is performed").  WSOU's new position that *any* call from *any* application infringes directly contradicts WSOU's final infringement contentions, which require a *particular* application to make *specific* calls to accused API functionality, and then to perform *additional steps on its own*, separate from the API.  *See supra* § A.  If WSOU wishes to change its final infringement contentions in this matter, it must seek leave to do so from the Court, in a motion showing the "extraordinary circumstances" this Court requires.  *WSOU Investments LLC v.*

– 7 –

*Oneplus Technology (Shenzhen) Co., Ltd.*, Case No. 20-958, Docket No. 75 (W.D. Tex. Jan. 18, 2022), at 6.  Knowing those "extraordinary circumstances" do not exist, WSOU seeks to grant its own motion for leave to amend, by taking damages discovery regarding its new infringement read, without bothering to request leave from this Court.  The Court should not allow it to do so.

## II.      WSOU Has Not Shown the Required Diligence

As WSOU acknowledges, it must show "good cause" for any modification to the schedule, and "[t]he good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." Mot. at 6. (quoting *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003).  WSOU cannot show that it "has acted diligently, but will still be unable to meet that deadline" despite that diligence.  Mot. at 6 (citing *Rivera v. County of Willacy*, 2007 U.S. Dist. LEXIS 41401, at *2, 2007 WL 1655303, *1 (S.D. Tex. June 6, 2007)).  WSOU has shown the opposite of diligence:  it litigated these cases under its infringement theory for a year and half before WSOU decided to make up a new theory.  WSOU could have made up this new theory at any time—and Google gave it good reason to reconsider its existing theory in April 2021, when it stated that ███████████████████████████████████████ and again in October 2021 when it confirmed that ███████████████████████████████ *See supra* § I.B. Despite these and other warnings, WSOU stuck to its guns until January 2022.  Setting aside the merits of WSOU's motion and related discovery requests—of which there are none—if WSOU had made them in April or even October 2021, the Court could have resolved them without disrupting the schedule.  Instead, WSOU strategically chose to spring this new theory well past the eleventh hour.  The Court should not reward WSOU's tactics by extending the schedule now.

III.     **Google Designated Witnesses Who Were Already Knowledgeable on the Accused API Functionality, and Ensured That They Were Fully Prepared to Testify, But WSOU Ignored the Accused Functionality in Favor of "Gotcha" Questions**

WSOU's complaints about Google's 30(b)(6) deposition testimony are, at best, misleading.  Instead of asking substantive questions, WSOU repeatedly asked "gotcha" questions, seeking to solicit soundbites to use in discovery disputes.  With its motion, WSOU provided the Court with cherry-picked portions of these depositions.  The Court need not waste its time with any review of these depositions, because the discovery WSOU seeks is irrelevant to its claims, *see supra* § I, and WSOU brings this motion far too late.  *See supra* § II.  Should the Court undertake a review, however, it will find that Google provided knowledgeable witnesses, who provided the most helpful answers they could to WSOU's dispute-driven questions.

A.     **Christiaan Prins**

Mr. Prins is a Senior Product Manager at Google who served as Senior Product Manager for Mobile Vision.  During his deposition, Mr. Prins confirmed that he was prepared to testify:

> Q.  So as to this topic for Mobile Vision SDK, what documents did you prepare—did you review in preparation for 42?
> A.  Okay.  So I want to say this is—so a lawyer talked to me.  So I prefer if you ask me specifically dedicated questions.
> Q.  Sure.
> A.  I'm prepared as the product manager for ML Kit for three years, I know the product well, and I'm as good as any person in Google to answer questions about the product.
> Q.  Right.  And you just mentioned ML Kit, but you said you're prepared to testify about Mobile Vision SDK, correct?
> A.  Correct.

Ex. 23 at 59:10-24.  Mr. Prins likewise testified that he reviewed or was familiar with the majority of the documents WSOU presented as exhibits.  *See, e.g.*, *id.* at 120:3-129:8 (discussing Exhibit 9, and its graphs and figures, at length); 39:6 to 40:3 (discussing Exhibit 3 in detail); 93:23-25; 95:3-97:7; 98:25-101:19; 102:5-110:23; 120:1-10; 146:20-21; 161:19-22.  But instead

of examining Mr. Prins about ML Kit or Mobile Vision, WSOU tested him on his understanding

of the term "accused instrumentalities" as used by lawyers in this action—he had none, of course

(54:4 to 55:19)—and the accuracy of statements by parties other than Google, about which he

again could say nothing. *Id.* at 160:25 to 161:1; 164:18 to 165:15. Tellingly, WSOU never asked

Google's counsel to educate Mr. Prins further on any issue and never sought to meet and confer

regarding his deposition. WSOU concluded Mr. Prins' deposition with time to spare. *Id.*

WSOU now accuses Mr. Prins of being unprepared because he did not know information

entirely irrelevant to this case according to WSOU's final infringement contentions. *See supra*

§ I. First, WSOU asked Mr. Prins about mobile apps created by non-parties Target and Adobe;

Mr. Prins testified that these apps ███████████████████████████ but could not answer

whether Google (any part of Google) derives revenue (any kind of revenue) from anything

associated with these apps. Ex. 23 at 168:17 to 169:8. WSOU did not try to connect any

revenue (if it exists) to barcode scanning, and had never disclosed these applications before Mr.

Prins' deposition. Mr. Prins was ready to testify, and did testify, about ██████████████████

████████████████████████████ *See id.* at 61:5-16. WSOU does not like

that answer, but cannot blame Google or Mr. Prins for truthfully providing it.

Second, WSOU argues that Mr. Prins was "unprepared to explain usage data spreadsheets

produced by Google." Mot. at 4. This is incorrect. Mr. Prins answered in detail all of WSOU's

questions regarding numerous exhibits including usage data:

> Q.   What is this column—what does this mean?
>
> ███████████████████████████████
>
> . . . .
>
> Q.   Okay. So as I understand this spreadsheet, this is—██████████████
>
> ████████████████████████████████████████
>
> ████████████████████████████████████████

Ex. 23 at 39:6 to 40:3.  It was not until WSOU turned to matters outside of Mobile Vision—the "purpose of Firebase" and "[w]hat are SDKs used for?" that Mr. Prins could not satisfy WSOU's demands.  *Id.* at 43:3 to 44:10; *see also id.* 173:13-14; 174:10-11; 78:20-21 (this "doesn't relate to barcode scanning nor mobile [vision?], this is just Firebase.").  As Mr. Prins testified, and as Google explained months prior to his deposition, Mr. Prins could testify regarding the accused Mobile Vision API, which he did.  *Id.* at 47:11-17 ("I can speak for ML Kit, that's what I'm the product manager for or used to be the product manager for.").  When Mr. Prins answered that he did not know, his answers were not a failure of preparation but a requirement of his oath.  *See id.*

### B.    Reto Meier

Mr. Meier is currently Head of Online Content and Platforms for the Cloud Development Relations team at Google, and previously served as Android Developer Advocate for Awareness API.  As Mr. Meier explained, █████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████



*Id.* Mr. Meier further testified that he had reviewed the majority of the documents WSOU showed him. *See, e.g., id.* at 14:8-10; 28:19-22; 40:13-41:2; 47:23-48:20; 59:21-60:5; 85:23-86:11.

As with Mr. Prins, WSOU complains that Mr. Meier had no knowledge of topics irrelevant to this case. *See supra* § I. WSOU argues that Mr. Meier should have been prepared to testify about matters wholly outside of the accused functionality, such as "how better apps in the Android ecosystem benefit Google" and ▮▮▮▮▮▮▮▮ Mot. at 3. Mr. Meier testified about Google's knowledge of these topics *regarding the Awareness API*:



Ex. 24 at 54:22-55:12 (objection omitted).



*Id.* at 52:5-20 (objection omitted). WSOU complains that Mr. Meier was "not aware of how better apps in the Android ecosystem benefit Google" but fails to quote from its questions or Mr. Meier's answers, which show that he did his best to answer this broad question, from his perspective as a member of the Awareness API team. *See supra.* Mr. Meier further explained that the concept of ███████████ does not make sense in the context of the accused API (*id.* at 69:12-16), a point which Google had already explained to WSOU in responding to a discovery dispute, which dispute WSOU abandoned prior to Mr. Meier's deposition.

Next, WSOU complains that Mr. Meier was insufficiently prepared to testify about numerous topics based on its belief that those topics cover API usage statistics and "tracking" of applications' usage of the Awareness API. Mot. at 4. *But Google designated Mr. Pakzad, not Mr. Meier,* to testify on topic 59 ("number of (a) downloads and/or uses of the Accused Instrumentalities, and (b) the number of users and accounts serviced") Ex. 26. WSOU cannot complain that Mr. Meier lacks *personal* knowledge here.

Finally, WSOU complains that Mr. Meier lacked knowledge relating to topics where that knowledge does not exist or is not reasonably available to Google. (*E.g.,* Mot. at 4.) Mr. Meier

could not provide, for example, information about "projections for sales or use of the Awareness API" because, as he testified,



*Id.* at 39:16 to 40:5. "Rule 30(b)(6) requires a corporate deponent to testify only about 'information known or reasonably available' to the corporation." *Rivas v. Greyhound Lines, Inc.*, Case No. 14-166, 2015 WL 13710122, at *6 (W.D. Tex. Nov. 19, 2015) (quoting Fed. R. Civ. P. 30(b)(6)).  Google, through Mr. Meier, did so.

### C.    Payam Pakzad

Mr. Pakzad is a software engineer at Google, and ran the Awareness API team during its development and release in 2016.  Ex. 25 at 23:6-8.  Indeed,

███████████████████████████████████████

██████████████   *Id.* at 21:1-5; 63:3-6; 85:1-2.  Unsurprisingly given his qualifications, Mr.

Pakzad was prepared to testify regarding the substance of the Awareness API, and recognized

nearly every document that WSOU presented to him, many of which were dated 2016 or earlier.

*Id.* at 12:5-6; 16:2 to 17:11; 39:11-13; 48:14-15; 73:1-2; 106:21-22; 116:1-5; 123:1-2.  Even

when Mr. Pakzad did not recall a particular document, he testified in detail regarding any

relevant material contained therein.  *See, e.g.*, *id.* at 119:21 to 124:16.

WSOU ignored Mr. Pakzad's qualifications and preparation.  Instead of substantive

questions about its infringement theory, WSOU asked questions about Google's counsel's

selection of source code files for production (Ex. 25 at 43:13-44:12); memory tests about source

code that WSOU asked without showing Mr. Pakzad the source code (*id.* at 126:13 to 128:10); or

about Google's previously disclosed defenses.  *E.g., id.* at 133:15 to 137:25 (demanding witness

"explain Google's basis for its contention that the accused instrumentalities in this lawsuit do not

practice" each step of a claim).  Although Mr. Pakzad was prepared to explain the source code

Google had produced (*e.g., id.* at 43:13 to 44:2), WSOU failed to show him a single page of

source code.  WSOU did not ask Google to further educate Mr. Pakzad or mention concerns over

preparation during the deposition; ended the deposition several hours early.  *See generally id.*

WSOU complains that Mr. Pakzad was insufficiently prepared, but its complaint falls

apart under scrutiny.  WSOU first claims that Mr. Pakzad "could not even say whether Google

had produced source code corresponding to basic functionality within the accused Context

Manager Client" (Mot. at 5)—but, tellingly, does *not* contend that Google has failed to produce

*any specific* source code.  Google's production was fulsome, and Mr. Pakzad could have

explained it if WSOU had shown it to him.  Instead WSOU sought to manufacture a discovery

issue through a memory test.  Even then, he was willing to try:

> Q.  So can you relate the source code produced to the figure on page 1954 of Exhibit 3,
> and tell me specifically for each of the elements within this figure, whether source
> code was produced?
> A.  I could—it could—it would probably take a while for me to go over dozens of
> documents that had to be produced as part of this litigation, so I would have to take
> some time and do that, as required.

Ex. 25 at 44:9-12; *see also id*. 45:1-3 ("I would have to look at the exact set of files produced. I

scanned over, I'm very familiar with the code itself obviously.").  But WSOU did not take Mr.

Pakzad up on this offer, because WSOU knew it would not like the result.

 WSOU complains that Mr. Pakzad could not testify regarding "which and how often

Google applications have used Awareness API or other APIs within Context Manager."  Mot. at

5.  But Mr. Pakzad testified at length regarding these topics; WSOU did not like his answers:

> Q.  So what is your understanding of which Google apps have used or are currently using
> the Awareness API?



> . . . .
> Q.  So can you say today that you are knowledgeable about all of the uses by Google
> apps of the APIs within Context Manager?
> A.  I can probably say that I am the best person to know that information at Google.

Ex. 25 at 77:9-16 (objection omitted); 83:22 to 84:7 (objection omitted).

> Q.  If you wanted to have a comprehensive list of the third-party applications that use or
> have used the Awareness API, how would you create such a list?
> MS. WARREN: Objection, compound, assumes facts not in evidence.
> A.  And answered before, sorry I shouldn't say because I think this exact question was
> posed in the morning, if I'm not mistaken.
> MS. WARREN: Are you objecting for me?
> THE WITNESS: I mean, I'm objecting for myself because—

A.   But happy to repeat that. It's—there were—



*Id.* at 102:12 to 103:9 (emphasis added); *see also id.* at 115:12-14 ("Q. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮   A. No."); 73:23-25 ("Q. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); 44:17-20 ("Q. All right.

And I think I forgot at the top of the page, ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮   A. I don't believe so.").  Mr. Pakzad likewise testified that he had reviewed usage

metrics in preparation for his deposition and was prepared to testify regarding that material:

Q.   In preparing for this deposition, did you take any steps to educate yourself as to the
     various Google apps that currently use or have used the Awareness API?
A.   I reviewed some of the documents in particular, things similar to what we're looking
     at now to refresh my memory, and I reviewed also the document we produced about
     usage back sometime in 2017.
         . . . .
Q.   And in preparing for today's deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
A.   I did. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
     ▮▮▮▮▮▮▮▮▮▮▮

*Id.* at 76:16 to 77:8 (objection omitted); 83:15-21; *see also id.* at 84:17-19.  Although Mr. Pakzad

mentioned several times "the document we produced about usage back sometime in 2017,"

WSOU never showed it to him or asked him about it.

Finally, WSOU complains that Mr. Pakzad "could not say which software modules use

geofencing."  Mot. at 5.  But Mr. Pakzad was prepared to testify about geofencing within the

accused Awareness API, not *all* geofencing of any kind.  Google provided a separate witness,

Wyatt Riley, who works on the Geofencing API and who testified *before* Mr. Pakzad's deposition

about his work.  *E.g.*, Ex. 27 at 37:2 to 37:18; 40:3 to 46:12; 50:24 to 53:22.  As Mr. Riley

explained, ███████████████████████████████████████████████

██████████████████████  *Id.* at 33:12-15; 80:3-8.  When asked about *different* geofencing in a

*different* API, Mr. Pakzad explained to WSOU why its question was improperly if not impossibly

broad:

> Q.  In preparing for today's deposition, did you make any effort to inquire as to which
>     Google software modules within Android use the geofencing API?
> A.  No, the answer is [no] and I'm sorry smiling a little because it's Android code base is
>     huge, it's like literally, you know, 15 years worth of code and so on, it's next to
>     impossible to, you know, to look up things of this sort without knowing more about
>     individual sections.

Ex. 25 at 102:12 to 103:9.  Mr. Pakzad ██████████████████████████████ and had

no reason to educate himself about functionality outside of the Awareness API.

    Finally, WSOU argues that Mr. Pakzad ████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████  Mot. at 5.  But WSOU never accused this

functionality in its final infringement contentions, which do not contain the word "server."

Ex. 2.  And Mr. Pakzad testified that server functionality is unrelated to anything accused:

> Q. ████████████████████████████████████████████████
> ████████████████████████████████████████████████████
> ████████████████████████████████████

Ex. 25 at 21:21 to 22:3; *see also, e.g., id.* at 22:20-23:1.  Having confirmed with Mr. Pakzad that

the ██████████████████████████████████████████████████████

██████ there is no reason for WSOU to inquire further.  *Id.*

– 18 –

IV.    **The Court Should Not Upend the Usual Procedure for 30(b)(6) Depositions, Which Both WSOU and Google Followed, After Those Depositions Have Begun**

A.    **WSOU and Google Confirmed They Would Follow the Usual Procedure**

In a brief footnote, WSOU asks the Court to upend the long-familiar procedure for depositions under Rule 30(b)(6), by setting forth a new rule that parties must litigate the scope of each deposition that might include 30(b)(6) testimony before that deposition occurs.  Mot. at 3 n.2.  This Court has a careful process, including an advisory committee, for addressing broad questions such as this one; it should not make this change on the fly, and should certainly not do so in this action, where both WSOU and Google followed the familiar procedure, and WSOU itself confirmed that its witnesses under Rule 30(b)(6) would testify subject to its own objections.  *See supra* § B.2.  Having litigated these matters under the familiar procedure, including tendering its own objections to 30(b)(6) topics and refusing to provide witnesses on some topics, WSOU cannot now renounce it after depositions have commenced.

B.    **This Court Has Not Moved Away From the Usual Procedure, and Should Not**

This Court has never indicated a desire to move away from the usual procedure, and should not do so.  WSOU cites two cases:  one from the Eastern District of Texas which addresses a situation where the corporation puts forth no witness at all—not at issue on WSOU's current motion, but an issue that could affect WSOU significantly given its failure to designate a witness in response to many topics—and one from North Carolina stating that even narrowing objections are not effective without a protective order.  *See* Mot. at 3 n.2 (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc*., 218 F.R.D. 125 (E.D. Tex. 2003) & *Beach Mart, Inc. v. L & L Wings, Inc.,* 302 F.R.D. 396, 406 (E.D.N.C 2014)).  This Court should not follow the North Carolina case, which would require parties to flood the Court with disputes over the scope of

30(b)(6) testimony in the absence of any testimony at all, requiring the Court to make decisions in a vacuum.  There is no reason to deviate from this Court's current practice, and the Court should not follow WSOU's footnote and do so.

## V.      Modifying the Schedule for Two Actions Would Disrupt the Other Two (or Four)

It is unclear what changes to the schedule WSOU actually seeks, and whether it seeks changes to two, four or six cases.  Although this motion overtly seeks an extension only in the -580 and -585 cases, on the same day it filed this motion, WSOU unilaterally canceled several depositions in the -572 and -579 cases that have no connection to any issues WSOU asserts here. Finally, WSOU proposed to dismiss its remaining two cases against Google, the -575 and -584 cases, and WSOU and Google agreed on forms of dismissal—but WSOU has not filed them.

Since WSOU originally commenced its cases against Google, WSOU, Google, and the Court have given all of WSOU's cases a coordinated schedule, even as the number of those cases dwindled from 15 to its present six (or four).  Moving the schedule for only two of the four (or six) cases would disrupt the other two (or four), by imposing separate dates for expert reports (including damages) and dispositive motions.  Accordingly, should the Court wish to make any modification to the schedule governing these actions, it should do so in coordination with the other two (or four) actions between WSOU and Google, maintaining a common schedule across all four (or six) actions, thus minimizing disruption and keeping the cases on track for trial.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny WSOU's motion in its entirety.

Date:   February 16, 2022                               Respectfully submitted,

                                                                        */s/ Michael E. Jones*
                                                                    _____
                                                                    Michael E. Jones (Texas Bar No. 10929400)
                                                                    Patrick C. Clutter (Texas Bar No. 24036374)
                                                                    **Potter Minton, P.C.**

110 North College, Suite 500
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile
mikejones@potterminton.com
patrickclutter@potterminton.com

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
*(pro hac vice)*
Erika Warren (California Bar No. 295570)
Francesca Miki Shima Germinario
(California Bar No. 326208) (*pro hac vice*)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-580@cases.warrenlex.com
20-585@cases.warrenlex.com

Tharan Gregory Lanier
(California Bar No. 138784)
*(pro hac vice)*
**Jones Day**
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile
tglanier@jonesday.com

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I certify that on February 16, 2022, I served the foregoing DEFENDANT GOOGLE

LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO EXTEND PRETRIAL DEADLINES by

notice of electronic filing on counsel of record registered as CM/ECF users.

*/s/ Michael E. Jones*