# EXHIBIT 37

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF TEXAS
 2                          WACO DIVISION

 3   WSOU INVESTMENTS, LLC,        )(
         PLAINTIFF,                )(    CIVIL ACTION NO.
 4                                 )(    6:20-CV-571-ADA
                                   )(    6:20-CV-572-ADA
 5                                 )(    6:20-CV-573-ADA
                                   )(    6:20-CV-575-ADA
 6                                 )(    6:20-CV-576-ADA
                                   )(    6:20-CV-579-ADA
 7   VS.                           )(    6:20-CV-580-ADA
                                   )(    6:20-CV-583-ADA
 8                                 )(    6:20-CV-584-ADA
                                   )(    6:20-CV-585-ADA
 9                                 )(
                                   )(    WACO, TEXAS
10                                 )(
     GOOGLE LLC,                   )(    SEPTEMBER 16, 2021
11       DEFENDANT.                )(    2:02 P.M.

12                          DISCOVERY HEARING

13          BEFORE THE HONORABLE JUDGE ALAN D ALBRIGHT

14                  UNITED STATES DISTRICT JUDGE

15   FOR THE PLAINTIFF:        Mr. James L. Etheridge
                               Mr. Ryan S. Loveless
16                             Etheridge Law Group, PLLC
                               2600 E. Southlake Blvd.
17                             Suite 120-324
                               Southlake, TX 76092
18
                               Mr. Mark D. Siegmund
19                             Law Firm of Walt Fair, PLLC
                               1508 North Valley Mills Drive
20                             Waco, TX 76710

21   COURT REPORTER:           Ms. Shelly Holmes, CSR, TCRR
                               Certified Shorthand Reporter
22                             2593 Myrtle Road
                               Diana, TX 75640
23                             (903) 720-6009
                               shellyholmes@hotmail.com
24

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)
```

```
 1 │ FOR THE DEFENDANT:        Ms. Tracy A. Stitt
   │                           Jones Day
 2 │                           51 Louisiana Avenue NW
   │                           Washington, DC 20001
 3 │
   │                           Mr. T. Gregory Lanier
 4 │                           Jones Day
   │                           1755 Embarcadero Road
 5 │                           Palo Alto, CA 94303
   │
 6 │                           Ms. Jennifer A. Kash
   │                           Warren Lex, LLP
 7 │                           2261 Market Street
   │                           No. 606
 8 │                           San Francisco, CA 94114
   │
 9 │                           Mr. Michael E. Jones
   │                           Potter Minton, PC
10 │                           110 N College
   │                           Suite 500
11 │                           Tyler, TX 75702

12 │

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │
```

1           THE COURT:  Suzanne, if you would call the case.

2           COURTROOM DEPUTY:  Sure.

3           Discovery Hearing in Civil Action W:20-CV-571,

4  572, 573, 575, 576, 579, 580, 583, 584, and 585 styled WSOU

5  Investments, LLC, versus Google LLC.

6           THE COURT:  If I could have announcements starting

7  with Plaintiffs.

8           MR. SIEGMUND:  Good afternoon, Your Honor.  This

9  is Mark Siegmund for Plaintiff, WSOU Investments, LLC.

10  With me today is Mr. Jim Etheridge and Ryan Loveless, and

11  today Mr. Loveless will be the main speaker.

12           THE COURT:  Very good.  Old friends of the Court.

13           And I see Mr. Jones, another old friend of the

14  Court.

15           A lot older actually than you are, Mr. Siegmund.

16  He and I go a lot further back.

17           Mr. Jones, if you want to announce.

18           MR. JONES:  Certainly.  I think I'm probably older

19  than everybody.

20           But on behalf of Google, I would say we're ready

21  for this hearing, Your Honor.  And on the phone with me is

22  Ms. Tracy Stitt, Mr. Greg Lanier, and Ms. Jennifer Kash,

23  and if it please the Court, Ms. Stitt will be making our

24  arguments.  Thank you, sir.

25           THE COURT:  That will be fine.

1          And I believe it's Google who asked us to have

2     this hearing, so I'm happy to hear from Mr. Stitt.

3          MS. STITT:  Thank you, Your Honor.  And may it

4     please the Court.

5          THE COURT:  Ms. Stitt, have I had you in my

6     court -- have you argued before?

7          MS. STITT:  I was at the Markman hearing, so I

8     have met you before but am pleased to be here again.

9          THE COURT:  Well, I appreciate you being here.  I

10    look forward to -- I look forward to hearing your argument.

11         MS. STITT:  Thank you.

12         The fundamental problem here, Your Honor, is that

13    Dr. Jonyer is a former Google employee who was exposed to

14    confidential information during his employment that is

15    relevant to these cases.

16         There's no dispute that he received confidential

17    information or that he has ongoing confidentiality

18    obligations to Google.  The only real dispute here is the

19    relevance of the information that he received.

20         Dr. Jonyer managed Device Partnerships for Google

21    TV, which is an Android-based smart TV platform and allowed

22    customers to access content over the Internet their TVs.

23    As of 2011, Google TV devices shipped with the Android

24    Market application on them.

25         The Android Market application is essentially

1  Google Play, which is an accused product here, before it

2  was called Google Play.  It's a place where users can find

3  applications, music, books, and other content, and it came

4  with Google TV.

5       There was and is a great deal of cross

6  collaboration across teams at Google, and in his role,

7  Dr. Jonyer would have had broad access to confidential

8  business information regarding other devices and

9  applications that use the Android platform, and in

10 particular Android Market, including strategic product,

11 roadmaps, and other strategic planning documents.

12      And we know this because in his role, Dr. Jonyer

13 attended all-hands meetings where confidential business

14 information, such as strategic focus points, growth

15 opportunities, features, and key metrics for products using

16 the Android platform, including Android Market, were

17 discussed.

18      That's relevant, Your Honor, and for that reason,

19 we think he should be disqualified from being an expert in

20 these cases.  There are plenty of other experts available

21 for Plaintiff to identify, and we believe that the conflict

22 of interest presented here creates too great of a risk for

23 him to violate his ongoing obligations to Google.

24      THE COURT:  Well, let me ask you about that.  It

25 seems to me he has those obligations.  He's obviously a

1  bright guy.  And if -- if he -- if he is faithful to those

2  obligations, I could order him, you got to be faithful to

3  those obligations, but it's contractual anyway, and he is

4  able to be an expert on behalf of the Plaintiff without

5  violating those -- those obligations, then why do I have an

6  interest in this?

7          I mean, I'm going to assume he -- unless you have

8  some reason to think that -- that he won't be able

9  to fulfill his obligation to stay within the parameters

10  that this agreement requires, what -- I don't understand

11  what interest I have in it.

12          MS. STITT:  We think it's an unrealistic thought

13  for him to be able to empty his head of all the

14  confidential business information related to these products

15  that he had acquired during his employment with Google.

16          And if I may give you a few examples.  We believe

17  that he needs to be an engineer on any of these accused

18  products to have detailed -- or have detailed technical

19  information in order to acquire confidential business

20  information that's relevant to this case and that will be

21  difficult for him to divorce from the work that he's going

22  to do in this case.

23          THE COURT:  Well, I think you're ducking my

24  question.  I don't mean that -- I don't think you answered

25  my question.  Let me put it more politely.

1          It seems to me that the Plaintiffs are at this

2   peril -- the Plaintiff is at this peril.  They've hired

3   this gentleman.  They know he worked for Google.  They know

4   he has this obligation.  I assure -- I'm going to guess,

5   when I hear from counsel for Plaintiff, they're going to

6   stress to me that they have told him in no uncertain terms

7   they want him to stay within the bounds of his agreement,

8   and if at some point in this litigation he realizes, I can

9   no longer do that, I would have to -- I would have to

10  invoke something that's inappropriate under my agreement,

11  then he would have to withdraw.

12          And so, I mean, really what you're saying to me --

13  and I get what I -- I think I made this argument to three

14  or four judges.  I'm not -- I get it.  I get it, especially

15  I -- you know, I worked on a bunch of trade secret cases.

16  I might have worked on one or two with your firm and

17  Ms. Kash.  I don't remember what all we did together.

18          But, again, assuming that this gentleman is

19  capable of fulfilling his obligations under the agreement

20  to stay within -- or not go beyond what he can't go beyond,

21  what interest do I have?  You're saying I can't trust him

22  to do that, I think is in essence -- either that I can't

23  trust him or that it would be impossible, and yet he seems

24  to think it would be possible.

25          MS. STITT:  We think that it would be impossible

1  because of the type of information that he received during

2  this -- during his employment with Google.

3          If I may give an example with regard --

4          THE COURT:   Sure.

5          MS. STITT:   -- to the Android Market product that

6  shipped on Google TV, which was, again, the product that he

7  was responsible for, and it's re-branded as Google Play in

8  2012.   That re-branding happened in March of 2012, and so

9  that was right after he left Google.

10         That means that during his time at Google, he was

11 there while the strategic planning discussions regarding

12 the re-branding and the features and upgrades that were

13 going to be a part of the revised Google Play application

14 was happening and while he was participating, all-hands

15 meeting where such information was discussed.

16         And he would have known about it to inform the

17 partners before it rolled out the Google TV devices, and

18 the timing of this is important because March of 2012 is

19 not just a time 10 years ago that may not be relevant.

20 It's a potential hypothetical negotiation date in that

21 case.

22         And so Dr. Jonyer had strategy knowledge regarding

23 the accused product at that time, and he also on his resume

24 touts himself as a sought-after expert within Google for

25 structuring external software licensing agreements.   And we

1  believe that's relevant, and we don't see how he would be

2  able to divorce himself of all of that knowledge in order

3  to participate in this case.

4           THE COURT:  If y'all would give me just one

5  second, I'll be right back.

6           (Pause in proceedings.)

7           THE COURT:  Just so there's no major mystery, I

8  have a six-month old puppy, and when he needs to go out, he

9  needs to go out.  So I apologize for taking a break in the

10  middle of this, but it was easier to do that than -- than

11  pay the price for not doing it.

12           Were you -- were you done, ma'am, with everything

13  you wanted to say?

14           MS. STITT:  Yes, sir.

15           THE COURT:  A response?

16           MR. LOVELESS:  Your Honor, Ryan Loveless for the

17  Plaintiff, WSOU.

18           I think you asked a very pertinent question,

19  whether or not Dr. Jonyer can maintain his confidentiality

20  obligations that he had with them for his employment a

21  decade ago and -- and not reveal or use any information for

22  his proposed testimony in this case, and we've had those

23  conversations with him, and the answer to that question is

24  yes.

25           That's principally because the work that he did

1  while he was at Google did not involve any of the accused

2  products.  And for the products that he was working on, he

3  was using his business degree, not working as an engineer,

4  wasn't involved with coding, wasn't doing any programming,

5  and the product that he -- that he actually did work on

6  was -- was discontinued in 2012.

7        The three products that he is proposed to testify

8  or provide an infringement report, two of the three didn't

9  even exist.  The first one, YouTube TV, was launched in

10 February of 2017, five years after Dr. Jonyer left.  He had

11 no knowledge to gain from -- from Google pertaining to the

12 accused instrumentality for that one.  Again, it wasn't

13 released until five years after he left.

14        The second one, YouTube Music, it was launched in

15 June of 2018, six years after Dr. Jonyer left.  For the

16 same reason, YouTube TV, certainly, you know, knowledge

17 concerning the accused features just simply did not exist

18 when he was there.

19        The final one is Google Play, and it is listed --

20 recognized as formerly known as Android Marketplace.  That

21 particular product was principally a mobile phone App

22 Store, and Dr. Jonyer did not work on Android Marketplace.

23 It was a feature that ultimately did get into one of the

24 products that he worked on, but he gained no knowledge.  He

25 was not working in the coding or development of Android

1   Marketplace, and he right now is serving as an expert in

2   the case of Uzair versus Google.  It's a class action

3   lawsuit involving the specific operation of Google Play.

4            Certainly, you know, if there was conflicts,

5   business strategic reason conflicts that -- that Google

6   had, certainly we would think that they would have objected

7   to and excluded him from his ability to testify in that

8   ongoing class action lawsuit.

9            If -- if Dr. Jonyer were here today, he would tell

10  you Android operating system, it's a -- it's a publicly

11  open source available operating system.  The way people

12  learn about it, its functionality, largely is left to

13  people studying the publicly-available code.

14            That's exactly how Dr. Jonyer learned about the

15  Android operating system, not during his time at Google but

16  when he left Google and had an opportunity to -- to have

17  things done with it was to study that.  And he had no

18  working knowledge programming-wise as far as how the

19  Android operating system functioned and didn't get into any

20  of that.

21            So, in short, Dr. Jonyer does believe he can

22  fulfill any confidentiality obligations, again, principally

23  because all the products he worked on had nothing to do

24  with the -- the accused instrumentalities, and the

25  particular product that he did work on ceased to exist and

 1  was discontinued in 2012.  That's when he left, and that's

 2  when the majority of his team left Google.

 3          THE COURT:  Any response from counsel for Google?

 4          MS. STITT:  Yes, Your Honor, if I may respond

 5  briefly to a few of Mr. Loveless's points.

 6          With respect to the YouTube TV and YouTube Music

 7  products not being available at the time that Dr. Jonyer

 8  was employed at Google, again, we don't believe that he

 9  needed to be an engineer on an accused product in order to

10  acquire confidential business information that's relevant.

11          Google TV, the product that he worked on, is a

12  smart TV platform, which is essentially a bridge between

13  the TV and the Internet.  It allowed you to access content

14  through your tele -- or through the Internet via your

15  television.

16          The confidential strategy information that he

17  acquired through the planning and launch of that product is

18  relevant to a case involving a content delivery product or

19  streaming service, such as YouTube TV or YouTube Music,

20  even though those products may have came later.

21          For example, he was a part of confidential

22  strategy discussions regarding goals and features of Google

23  TV, which included the delivery of personalized content

24  with relevant recommendations to users, and that is exactly

25  what the YouTube TV case is about.

1              And the accused patent in the YouTube TV case

2    issued in 2011, during Dr. Jonyer's tenure at Google.  So

3    he had access to confidential information and strategy that

4    Google was using at the time that that patent issued.  We

5    think that's relevant.

6              With respect to the other case that Dr. Jonyer is

7    currently serving as an expert adverse to Google, that is

8    simply a case that's different.  Google -- we evaluate this

9    and whether he can be an expert -- whether there's going to

10   be a confidential --

11             THE COURT:  And for what it's worth --

12             MS. STITT:  Sorry.

13             THE COURT:  For what it's worth --

14             MS. STITT:  Thank you.

15             THE COURT:  -- that's not going to play a role.

16   You're welcome to keep going on that point, but I'm not

17   going to consider that as an issue.  But you're -- I just

18   want you to know that if you want to keep going, you're

19   welcome to.

20             MS. STITT:  No, Your Honor.  That's it.

21             Thank you very much.

22             THE COURT:  Anything else, Mr. Loveless?

23             MR. LOVELESS:  Nothing else for the -- for the

24   Plaintiff.

25             THE COURT:  I'll be back in a few seconds.

```
 1                (Pause in proceedings.)

 2                THE COURT:  Oh, I'm sorry, give me one more

 3   second.

 4                (Pause in proceedings.)

 5                THE COURT:  Okay.  If we can go back on the

 6   record.

 7                The Court is going to deny Google's request for

 8   relief.

 9                I'll start with you, Ms. Stitt, because you're on

10   my screen.  Is there anything else that Google wanted to

11   take up today?

12                MS. STITT:  Nothing from me.  I will defer to

13   Mr. Lanier if he had anything else to bring up.

14                MR. LANIER:  Your Honor, first, with the apology

15   for my informal attire, I got the notice of this hearing

16   after I had left home for a few days.  So I apologize for

17   how I look.

18                THE COURT:  That's okay.

19                MR. LANIER:  Thank you.

20                There is a pending motion for protective order in

21   front of Your Honor.  The parties have agreed on most

22   everything.  There's a few disputed points.  It's been

23   submitted to Your Honor.  If chambers has a chance to look

24   at that, that will be helpful, I think, to the parties.

25   But other than that, I'm not aware of anything else.
```

 1          THE COURT:  Okay.  And thank you.  And let me go

 2   ahead and tell you all, and please spread this around to

 3   everyone.  We are -- I try -- I swore I'd never say this.

 4   We are pretty busy, and the reason I say that is in

 5   situations like this, if you all are -- I don't ever want

 6   you all waiting on something just because we have a lot to

 7   do.

 8          So in the future, if -- it takes very long at all

 9   to get something like this resolved, please contact -- I

10   think this is Jeffrey's case.  Just reach out and politely

11   say, hey, we're waiting on this, and I -- and we usually

12   move -- get it done that day, if we can.

13          So, yes, we'll take a look at that, and you should

14   expect a ruling on that before the end of the week.

15          MR. LANIER:  Thank you, Your Honor.

16          THE COURT:  But always -- you're always --

17   everyone on the call, and you can certainly, if asked about

18   my practice, if there's something pending, just call the

19   clerk and let -- give us a heads up, and we'll jump on it.

20          Any -- anything else, Mr. Loveless or

21   Mr. Siegmund?

22          MR. SIEGMUND:  Nothing from the Plaintiff, Your

23   Honor.

24          THE COURT:  Okay.  We will get to work on that

25   protective order, and then we will -- I hope to see at

1  least some of you in person in the near future.

2          Take care.

3          (Hearing concluded at 2:22 p.m.)

1                         CERTIFICATION

2

3          I HEREBY CERTIFY that the foregoing is a true and

4    correct transcript from the stenographic notes of the

5    proceedings in the above-entitled matter to the best of my

6    ability.

7

8

9    _/S/ Shelly Holmes_____            10/8/21___
     SHELLY HOLMES, CSR, TCRR              Date
10   CERTIFIED SHORTHAND REPORTER
     State of Texas No.: 7804
11   Expiration Date: 10/31/2021

12

13

14

15

16

17

18

19

20

21

22

23

24

25