IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a<br>BRAZOS LICENSING AND<br>DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **PUBLIC VERSION**<br><br>Case No. 6:20-cv-580-ADA<br><br>JURY TRIAL DEMANDED |

**MOTION FOR SUMMARY JUDGMENT OF
<u>INDEFINITENESS BY DEFENDANT GOOGLE LLC</u>**

## **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    A.    The Patent Claims a Mechanism for Switching Between Barcode Reading Methods, One of Which Must Be "Different" From the Other . . . . . . . . . . . . . 1

    B.    WSOU's Expert Distinguished Prior Art on the Ground that the "Different Barcode Reading Method" is not "Different" Enough . . . . . . . . . . . . . . . . . . 2

    C.    WSOU's Expert Accused Google's Functionality on the Ground that the "Different Barcode Reading Method" is "Different" Enough . . . . . . . . . . . . . . . . . . . . . .3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    To Avoid Indefiniteness, the Patent Must Allow a Person of Ordinary Skill to Understand How "Different" a "Different Barcode Reading Method" Must Be . . . . . . . . . . . . . . . . . . . .4

    II.    The Specification Sheds No Light on a "Different Barcode Reading Method" . . . . . . . . .5

    III.    Dr. Kozek's Testimony Confirms That the Patent Does Not Meet This Test . . . . . . . . . . .6

    IV.    A "Different Barcode Reading Method" is Indefinite; Summary Judgment is Proper . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

**TABLE OF AUTHORITIES**

*Cases* **Pages**

*Atlas Glob. Techs. LLC v. Zyxel Networks Corp.*,
  Nos. 22-355 & 22-520, 2023 WL 3361214 (W.D. Tex. May 9, 2023) . . . . . . . . . . . . . . . 5

*Blue Spike, LLC v. Verimatrix, Inc.*,
  No. 16-329, 2017 WL 4271123 (E.D. Tex. Jul. 6, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Constant v. Advanced Micro-Devices, Inc.*,
  848 F.2d 1560 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*ePlus, Inc. v. Lawson Software, Inc.*,
  700 F.3d 509 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ex Parte Lyell*,
  17 U.S.P.Q.2d 1548 (B.P.A.I. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Exeltis USA, Inc. v. Lupin Ltd.*,
  No. 22-434, 2023 WL 2306736 (D. Del. Mar. 1, 2023). . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Haddad v. United States*,
  164 Fed. Cl. 28 (2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
  607 F.3d 776 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Halliburton Energy Servs., Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9

*IBSA Institut Biochimique, S.A. v. Teva Pharms. USA, Inc.*,
  966 F.3d 1374 (Fed. Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*IBSA Institut Biochimique, S.A. v. Teva Pharms. USA, Inc.*,
  No. 18-555, Docket No. 107 (D. Del. Aug. 16, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Downing*,
  754 F. App'x 988 (Fed. Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

# **TABLE OF AUTHORITIES CONTINUED**

*Cases* **Pages**

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*,
    800 F.3d 1366 (Fed. Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 9

*Nike, Inc. v. Adidas Am. Inc.*,
    No. 06-43, 2006 WL 3751181 (E.D. Tex. Dec. 18, 2006) . . . . . . . . . . . . . . . . . . . . . . 8

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
    806 F.2d 1565 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Saso Golf, Inc. v. Nike, Inc.*,
    843 F. App'x 291 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Union Pac. Res. Co. v. Chesapeake Energy Corp.*,
    236 F.3d 684 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Versata Software, Inc. v. Zoho Corp.*,
    213 F.Supp.3d. 829 (W.D. Tex. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rules and Statutes* **Pages**

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**TABLE OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | U.S. Patent No. 7,946,491 to Burian et al., WSOU_580_7946491-0000326 to WSOU_580_7946491-0000346 |
| B | Excerpts from Volume I of the Deposition Transcript of Dr. Tibor Kozek (May 24, 2023) |
| C | U.S. Pat. Pub. No. 2005/0082370 to Frantz et al., GOOG-WSOU580-PA-00000627 to GOOG-WSOU580-PA-00000642 |
| D | Excerpts from the Expert Report of Dan Schonfeld, Ph.D. Regarding Invalidity of U.S. Patent No. 7,946,491 (Apr. 4, 2023) |
| SEALED E | Excerpts from the Rebuttal Expert Report of Dr. Tibor Kozek Concerning Validity of U.S. Patent No. 7,946,491 (Apr. 28, 2023) |
| SEALED F | Excerpts from the Expert Report of Dr. Tibor Kozek Regarding Infringement of U.S. Patent No. 7,946,491 by Google LLC (Apr. 4, 2023) |
| SEALED G | Excerpts from Volume II of the Deposition Transcript of Dr. Tibor Kozek (May 25, 2023) |

# INTRODUCTION

A claim is indefinite when a person of ordinary skill cannot define its scope. That is so here, and so the Court should grant summary judgment of indefiniteness of all claims including the term "different barcode reading method"—which is all claims in the patent-in-suit.

The '491 patent requires both a "current barcode reading method" and a "different barcode reading method." WSOU asserts that prior art cannot anticipate the claims because its "different barcode reading method" is *not* different enough, and simultaneously alleges infringement by the accused functionality because its "different barcode reading method" *is* different enough. To avoid indefiniteness, the patent must provide a reasonably certain answer to the question: How different is different enough? It does not, as shown by the testimony of Dr. Tibor Kozek, WSOU's testifying expert and a person of skill in the art, who could not define how different a "different barcode reading method" must be. Instead, Dr. Kozek contradicted himself several times; proposed new potential definitions that were no clearer than the word "different"; and eventually fell back on claiming that, even though he could not *define* how different is different enough, he would be able to opine whether a *particular implementation* was sufficiently different. But 'I know it when I see it' is not enough to avoid indefiniteness. This Court should thus grant summary judgment of indefiniteness.

# BACKGROUND

### A.   The Patent Claims a Mechanism for Switching Between Barcode Reading Methods, One of Which Must Be "Different" From the Other

The sole patent WSOU asserts in this action, U.S. Patent No. 7,946,491, claims a mechanism for switching between barcode reading methods. It acknowledges that barcode reading was known in general, and that in more recent years, barcode reading uses mobile device cameras, but does not claim to invent either any barcode format or any way of reading any

– 1 –

barcode format.  Ex. A 1:39-42; 1:50-56; 2:25-28.  (All exhibits are to the concurrently filed declaration of Virginia G. Kain.)  Instead, the patent claims a mechanism of switching between *any* two barcode reading methods, including in every claim the following limitations:

> A:  "processing an input image for an attempt to decode the input image using a **current barcode reading method**, the processing including performing a correction on the input image";
>
> B:  "determining whether the processing of the input image is successful based on a determination as to whether the correction is completed";
>
> C:  "switching to one of a **different barcode reading method** or processing a new frame of the input image using the **current barcode reading method** in response to the processing of the input image being unsuccessful";
>
> D:  "attempting a decode of the input image using the **current barcode reading method** in response to the processing of the input image being successful"; and
>
> E:  "performing a switch to the **different barcode reading method** in response to a failure of the attempt to decode the input image using the current barcode reading method."

Ex. A 20:18-36 (emphasis added); *see id.* 20:37 to 24:28; Ex. B 116:18 to 117:15 (testifying that all independent claims contain the same limitations).  Thus, all claims of the '491 patent require a "current barcode reading method" and a "different barcode reading method," begging the question:  how "different" from the "current barcode reading method" must the "different barcode reading method" be to be "different" enough to practice the patent?

**B.    WSOU's Expert Distinguished Prior Art on the Ground that the "Different Barcode Reading Method" Is *Not* "Different" Enough**

Prior art in this case includes U.S. Pat. Pub. No. 2005/0082370 to Frantz et al., which Google's technical expert, Dr. Dan Schonfeld, opined invalidated elements A-E above.  Among other things, Frantz described an "Adaptive Correction" approach, under which:

> In general, while decoding an image of barcode 103, a number of assumptions are made by decoding engine 303 about how characteristic features of barcode 103 are likely to appear in an image.  For example, the precise width and intensity of a minimal bar in an image and the threshold at which a data bit in a matrix code is counted as on or off are critical to decoding an image.  Initial default estimates of these parameters may be wrong, and only by adaptively correcting them can the image be decoded.  **Where appropriate,**

– 2 –

> **decoding engine 303 will re-examine an image that has failed to decode under one set of assumptions and introduce revised assumptions to improve the likelihood of correctly decoding barcode 103**.

Ex. C [0076]-[0077] (emphasis added).  Dr. Schonfeld opined that "Frantz discloses switching to a different barcode reading method by 'adjust[ing] the barcode image again using a new set of assumptions in step 413,' for example, 'introduc[ing] revised assumptions to improve the likelihood of correctly decoding barcode 103.'"  Ex. D at 105 (citations omitted) (alterations in original).  WSOU's expert Dr. Kozek disagreed.  He opined that Frantz does not practice "switching to one of a different barcode reading method."  Ex. E ¶ 165-67.  Dr. Kozek asserted that Frantz "instead purports to use the same barcode reading method . . . with 'new' or 'revised' 'assumptions.'"  *Id.* ¶ 166.  To Dr. Kozek, "[t]hese new or revised assumptions are new or revised values for the *same* barcode reading method."  *Id.* ¶ 167.

**C.    WSOU's Expert Accused Google's Functionality on the Ground that the "Different Barcode Reading Method" *is* "Different" Enough**

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████  Dr. Kozek explained the difference between ████████████████████████

    Q.    And what's the difference between █████████████████████ ████████

    A.    █████████████████████████████████████████████

    Q.    Are there any commonalities between █████████████████████ ████████

A. ████████████████████████████████████████

Q. Okay.  What is that special case?

A. You are limited to ████████████████████████████

Q. Got it.  So the ██████████████████████████████████
████████████

A. ████

Ex. B 65:22 to 66:10.  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

## ARGUMENT

I. **To Avoid Indefiniteness, the Patent Must Allow a Person of Ordinary Skill to Understand How "Different" a "Different Barcode Reading Method" Must Be**

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  If a claim is "not sufficiently precise to provide competitors with an accurate determination of the 'metes and bounds' of protection involved," it is "'properly rejected' under section 112, paragraph 2." *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005) (quoting *Ex Parte Lyell*, 17 U.S.P.Q.2d 1548, 1550-51 (B.P.A.I. 1990)).  And, "[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).

## II. The Specification Sheds No Light on a "Different Barcode Reading Method"

"The definiteness inquiry focuses on whether those skilled in the art would understand the scope of the claim when the claim is read in light of the rest of the specification." *Union Pac. Res. Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (Fed. Cir. 2001) (citing *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986)). Courts look to the patent specification to help "'interpret[] the meaning of disputed claim language.'" *Atlas Glob. Techs. LLC v. Zyxel Networks Corp.*, Nos. 22-355 & 22-520, 2023 WL 3361214, at *4 (W.D. Tex. May 9, 2023) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)). Here, the specification provides no definition of "different" separate from the claims.

The specification references a "different barcode reading method" nine times, but eight of those references occur while the specification is reciting elements of the four independent claims. *Compare* Ex. A 2:29-42 *with id*. 20:18-36; *id*. 2:43-64 *with id*. 21:7-30; *id*. 2:65 to 3:12 *with* 22:8-28; *id*. 3:13-27 *with* 24:10-28. The remaining reference only confuses the issue further:

> In other words, the first barcode reading method could simply be referred to as a current barcode reading method and **either the modified first barcode reading method or the second barcode reading method could be referred to as a new or different barcode reading method**.

*Id.* 18:5-10 (emphasis added). The specification not only fails to define how different the "different barcode reading method" must be, but also piles confusion on confusion by noting that the "different barcode reading method" can be a "modified first barcode reading method," but without defining how "modified" it must be or addressing how a "modified first barcode reading method" differs from a "second barcode reading method." *Id.* Where a term is "prone to multiple interpretations within the context of the patent," the "'bounds of the invention are [not] sufficiently demarcated.'" *Haddad v. United States*, 164 Fed. Cl. 28, 71 (2023) (alteration in original) (quoting *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 519 (Fed. Cir. 2012))

– 5 –

(finding claim indefinite); *see, e.g., In re Downing*, 754 F. App'x 988, 995 (Fed. Cir. 2018) (affirming claim as indefinite where specification and claims lacked "the requisite clarity"); *Exeltis USA, Inc. v. Lupin Ltd.*, No. 22-434, 2023 WL 2306736, at *6 (D. Del. Mar. 1, 2023).

**III.   Dr. Kozek's Testimony Confirms That the Patent Does Not Meet This Test**

By his own words, WSOU's technical expert Dr. Kozek is a "person of ordinary skill in the art" regarding the '491 patent.  Ex. E ¶¶ 23-24.  During his deposition, however, Dr. Kozek was unable to explain just how different the "different barcode reading method" must be to practice the patent.  Instead, he contradicted himself several times:

- Dr. Kozek testified that whether a barcode reading method is different "depends on the data" fed into it, because "[s]ome data may be differently processed by one sequence versus the other," Ex. B 174:17-22, but later said the opposite:  "You do not need data to determine if one barcoding method is distinct from another."  *Id.* 179:24 to 180:1.

- Dr. Kozek testified that "[c]hanging parametric values does not constitute, in the plain and ordinary sense, a different barcoding method," Ex. B 147:25 to 148:2; but later agreed with the opposite statement:  "calling the same source code with different parameters could or could not be a different barcode reading method."  *Id.* 153:20-25.

- Dr. Kozek testified that whether a method is different "depends on the specific implementation and the source code that it's referring to," because "[h]ow you implement, the type of algorithmic approach that is described in the disclosures," is a "matter of the software designer's choice.  Therefore, your statement cannot be evaluated in itself without context and reference to specific source code." Ex. B 148:9-12; 149:1-10.  Later, he said the opposite:  "The organization of the code is inconsequential as to whether that implements the same or a different barcode reading method."  *Id.* 155:13-15.

- Dr. Kozek testified that a "different method would apply different sequence of operations to the input data rather than the same sequence of operations with a different parametric value applied to them." Ex. B 156:23 to 157:1. But when given an example of a barcode reading method applying "a different sequence of operations"—specifically, "what if one of them binarizes and then scales to 512 x 512 and the other one scales to 512 x 512 and then binarizes?"—he could not answer: "As far as your specific example is considered, it may or may not be different." *Id.* 171:19-21; 172:10-12; 172:24-25.

Where an expert cannot articulate the boundaries of a patent claim, courts invalidate those claims as indefinite. For example, in *IBSA Institut Biochimique, S.A. v. Teva Pharms. USA, Inc.*, the Federal Circuit affirmed invalidity based on indefiniteness of the term 'half-liquid,' after the plaintiff's expert had "'difficulty articulating the boundaries of half-liquid' during his deposition." 966 F.3d 1374, 1378 (Fed. Cir. 2020). "When asked how a person could know that something is not a half-liquid inner phase, Plaintiff's expert didn't know. He also testified that some slurries and gels may be half-liquid but could not articulate a boundary." *IBSA Institut Biochimique, S.A. v. Teva Pharms. USA, Inc.*, No. 18-555, Docket No. 107, slip op. at 13 (D. Del. Aug. 16, 2019) (citations omitted); *see Saso Golf, Inc. v. Nike, Inc.*, 843 F. App'x 291, 293 (Fed. Cir. 2021) (affirming pretrial finding of invalidity based on indefiniteness where expert could not articulate terms).

When pressed to define how different is different enough, Dr. Kozek invariably ended up claiming that he could not articulate a standard, but he knew it when he saw it. For example:

> Q.    Okay. So I guess my question is, how do you know what's different and what's the same?
>
> MR. WELLS:  Objection; vague.
>
> A.    You know that by comparison.

Ex. B 152:14-18. And:

> Q. I want to go back to the different barcode reading method, because I don't think we've totally closed the loop on how different the different barcode reading method has to be. I've gotten several answers from you. You've talked about structurally different, we've given some examples, and then I keep asking, you know, how different does it have to be. Is there anything else you can give me on how different the different barcode reading method has to be in order to practice Claim 1c of the '491 patent?
>
> MR. WELLS: Objection; vague and ambiguous, incomplete hypothetical, asked and answered, and outside of scope.
>
> A. I think there's a plain and ordinary meaning to structurally different versus parametrically different. I don't think there's any more precise way of qualifying what "different" means.

Ex. B 164:15 to 165:8. And:

> Q. I'm trying to figure out where the line is. Is there any way to figure out where the line is beyond you know it when you see it?
>
> MR. WELLS: Objection; outside of scope, vague and ambiguous, mischaracterizes testimony.
>
> THE WITNESS: I believe that, given a specific instantiation, someone skilled in the art can very easily determine that dividing line.

Ex. B 156:12-19. But "'I know it when I see it' is not what Congress intended in enacting 35 U.S.C. § 112 ¶ 2." *Nike, Inc. v. Adidas Am. Inc.*, No. 06-43, 2006 WL 3751181, at *7 (E.D. Tex. Dec. 18, 2006). "Notably, a claim is indefinite if its language 'might mean several different things and no informed and confident choice is available among the contending definitions.'" *Media Rts. Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (quoting *Nautilus*, 572 U.S. at 911 n.8). "The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim." *Blue Spike, LLC v. Verimatrix, Inc.*, No. 16-329, 2017 WL 4271123, at *1 (E.D. Tex. Jul. 6, 2017) (citing *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010)). A patent is indefinite where "a skilled artisan could not discern the boundaries of the claim based on the claim language, the

– 8 –

specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy Servs., Inc.*, 514 F.3d at 1249-50. Dr. Kozek, a skilled artisan by his own testimony, could not and did not define with "reasonable certainty" how different is different enough. *Versata Software, Inc. v. Zoho Corp.*, 213 F. Supp. 3d 829, 835 (W.D. Tex. 2016) (quoting *Nautilus*, 572 U.S. at 901); *see, e.g.*, *Saso Golf, Inc.*, 843 F. App'x at 293 (plaintiff's expert testified "in a conclusory fashion that all terms at issue 'have a definite and readily ascertainable meaning to one of ordinary skill in the art.'"). The claims are therefore indefinite.

## IV. A "Different Barcode Reading Method" is Indefinite; Summary Judgment is Proper

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. This Court can and should grant summary judgment of indefiniteness of all claims including the term "a different barcode reading method," which the specification and claims do not define, and which WSOU's technical expert—a self-proclaimed person of ordinary skill in the art—could not define. *Versata Software, Inc.*, 213 F. Supp. 3d at 834 ("[I]t is both appropriate and necessary to address [Defendant's] indefiniteness argument on summary judgment.").

## CONCLUSION

In light of the foregoing, the Court should grant summary judgment of indefiniteness of all claims including the term "different barcode reading method."

Date: June 28, 2023                                Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　 /s/ Matthew S. Warren, with permission
　　　　　　　　　　　　　　　　　　　　 by Shaun W. Hassett
　　　　　　　　　　　　　　　　　　　　Michael E. Jones (State Bar No. 10929400)
　　　　　　　　　　　　　　　　　　　　mikejones@potterminton.com
　　　　　　　　　　　　　　　　　　　　Shaun W. Hassett (State Bar No. 24074372)
　　　　　　　　　　　　　　　　　　　　shaunhassett@potterminton.com
　　　　　　　　　　　　　　　　　　　　POTTER MINTON, P.C.
　　　　　　　　　　　　　　　　　　　　102 North College, Suite 900
　　　　　　　　　　　　　　　　　　　　Tyler, Texas, 75702

+1 (903) 597-8311
+1 (903) 593-0846 facsimile

Tharan Gregory Lanier
(California Bar No. 138784) (*pro hac vice*)
tglanier@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
Francesca Miki Shima Germinario
(California Bar No. 326208)
Virginia G. Kain (California Bar No. 344545)
Sachli Balazadeh-Nayeri
(California Bar No. 341885)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-580@cases.warrenlex.com

*Attorneys for Defendant Google LLC*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2023.

                                              _/s/ Shaun W. Hassett_