IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | **PUBLIC VERSION**<br><br>Case No. 6:20-cv-580-ADA<br><br>JURY TRIAL DEMANDED |

**MOTION FOR SUMMARY JUDGMENT OF
<u>PATENT INELIGIBILITY BY DEFENDANT GOOGLE LLC</u>**

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

      A.     The '491 Patent Claims Only Switching Between Methods for Reading Barcodes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.     WSOU Confirms the Patent Claims Only Switching Among Methods . . . . . . . . .  3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      I.     The '491 Patent Claims the Patent-Ineligible Abstract Idea of Switching Between Methods for Reading Barcodes—"Try, Try Again". . . . . . . . . . . . . . . . . . . . . . . . . 4

      II.    The '491 Patent Claims No Inventive Concept and Uses Only Generic Components . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      III.   All Claims Fail the Alice Test . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      IV.   The Court Should Grant Summary Judgment on the '491 Patent . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

## **TABLE OF AUTHORITIES**

*Cases* **Pages**

*Alice Corp. Pty. v. CLS Bank Int'l,*
   573 U.S. 208 (2014)................................................4, 7, 8, 9, 10

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC,*
   967 F.3d 1285 (Fed. Cir. 2020)........................................... 5, 8

*Bilski v. Kappos,*
   561 U.S. 593 (2010)..............................................................7, 12

*BSG Tech LLC v. Buyseasons, Inc.,*
   899 F.3d 1281 (Fed. Cir. 2018) ...............................4, 5, 7, 8, 10, 12

*ChargePoint, Inc. v. SemaConnect, Inc.,*
   920 F.3d 759 (Fed. Cir. 2019) ..............................................4, 7, 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
   776 F.3d 1343 (Fed. Cir. 2014) ............................................9, 12

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) ............................................6, 10

*Electric Power Grp., LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016)............................................... 7

*Internet Patents Corp. v. Active Network, Inc.,*
   790 F.3d 1343 (Fed. Cir. 2015)............................................... 4

*Health Discovery Corp. v. Intel Corp.,*
   577 F. Supp. 3d 570 (W.D. Tex. 2021) .................................. 6, 9

*RecogniCorp, LLC v. Nintendo Co.,*
   855 F.3d 1322 (Fed. Cir. 2017).............................................. 10

*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
   873 F.3d 905 (Fed. Cir. 2017)................................................ 5

*TecSec, Inc. v. Adobe Inc.,*
   978 F.3d 1278 (Fed. Cir. 2020)............................................... 4, 6

...

**TABLE OF AUTHORITIES CONTINUED**

*Cases*

**Pages**

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
    874 F.3d 1329 (Fed. Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Voter Verified, Inc. v. Election Sys. & Software LLC,*
    887 F.3d 1376 (Fed. Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Yu v. Apple Inc.,*
    1 F.4th 1040 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 9

*Rules and Statutes*

**Pages**

35 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Excerpts from Volume I of the Deposition Transcript of Dr. Tibor Kozek (May 24, 2023) |
| B | U.S. Patent No. 7,946,491 to Burian et al., WSOU_580_7946491-0000326 to WSOU_580_7946491-0000346 |
| SEALED C | Excerpts from Volume II of the Deposition Transcript of Dr. Tibor Kozek (May 25, 2023) |

## INTRODUCTION

The '491 patent mentions methods for scanning barcodes but does not claim any particular method; instead, it claims a mechanism for *selecting* methods for scanning barcodes—and this method of methods boils down to trying the same or another method if the first choice does not work.  In other words, the '491 claims no more than the well-known adage: 'If at first you don't succeed, try, try again.'  Each claim of the '491 patent "merely invokes well-understood, routine, conventional components to apply the abstract idea" of 'trying again,' rather than claiming "a specific means or method that improves the relevant technology."  *Yu v. Apple Inc.,* 1 F.4th 1040, 1043, 1045 (Fed. Cir. 2021).  The patent thus fails both prongs of the *Alice* test:  it claims only "patent-ineligible concepts," and does not include "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  The law does not allow such claims.  The Court should grant summary judgment on all claims of the '491 patent.

## BACKGROUND

**A.     The '491 Patent Claims Only Switching Between Methods for Reading Barcodes**

On May 24, 2011, the U.S. Patent & Trademark Office issued Patent No. 7,946,491.  The '491 patent claims "using a plurality of methods for performing the conversion of pixels into symbols," Ex. A 36:13-15, but does not claim any specific method of reading barcodes—or, indeed, anything else specific—as WSOU's expert noted, "[i]t simply says that you try one and then switch to a different kind."  *Id.* 157:19-20.  The claims and specification confirm that the invention is nothing more than 'try, try again.'  The specification addresses hardware that could run the invention and the networks that could include that hardware—all of which the inventors acknowledge as known, and none of which the claims include.  Ex. B, cols. 4-10, Figs. 1-3.  The

patent relies on generic components such as "any means for capturing an image, video and/or audio for storage, display or transmission" (*id.* 5:38-40), "a processor, a coprocessor, a controller or various other processing means or devices including integrated circuits such as, for example, an ASIC" (*id.* 9:30-35), and "an encoder and/or decoder" that "may encode and/or decode according to a JPEG standard format" (*id.* 5:55-56); on standard formats such as "an EXIF output, a color image from an imaging chain, a color image directly from a sensor, a saved image such as, for example, a JPEG image" (*id.* 9:60-63); and on known techniques for processing images, such as "the standard Prewitt operator" (*id.* 11:3-6) and determining a region of interest "based on known barcode characteristics for the identified barcode type." *Id.* 18:59-60. Using these generic components, the patent sets forth a brief description of how to 'try, try again.' *See id*. 17:50 to 18:10 & Fig. 6. That description does not describe what "barcode reading methods" to use, and does not describe anything more complicated than switching to a "different barcode reading method" if the first one does not succeed. *See id.*

Although the specification provides two "exemplary methods" for barcode reading (Ex. B 19:38-39; *see id.* 18:11 to 19:30), it does not claim that they improve the prior art and does not include them in the claims. *See id.* 20:17 to 24:28. To the contrary, the specification states that these "exemplary methods" are "interchangeable," *id.* 19:34, and further notes that "methods other than those exemplary methods" could be "utilized as the first and second barcode reading methods of Fig. 6." *Id.* 19:38-40. The patent thus confirms that *any* "barcode reading method" could be the "first" or "second" method described in Figure 6 and in the claims. *Id.* 19:31-40. Similarly, the patent confirms that the "barcode reading element"—which includes the "decoder element" that "is capable of decoding a barcode"—could also be anything, including "any device or means embodied in either hardware, software, or a combination of hardware and software that

is capable of detecting, classifying and decoding a barcode." *Id.* 8:53-57 & 9:18-22; *see also id.* at 8:49-52; 16:58; 19:59-60.  In short, the patent excludes from the claims and eschews in the specification any specifics about the "barcode reading methods" or the "barcode reading element."  Instead, the patent specifically states that it applies to any "barcode reading methods" performed by any "barcode reading element."  Thus the patent focuses entirely on the switch from any "barcode reading method" to another.  Claim 1 is representative:

> A method comprising:
>
> processing an input image for an attempt to decode the input image using a current barcode reading method, the processing including performing a correction on the input image;
>
> determining whether the processing of the input image is successful based on a determination as to whether the correction is completed;
>
> switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful;
>
> attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful; and
>
> performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method.

'491 patent, claim 1.

**B.    WSOU Confirms the Patent Claims Only Switching Among Methods**

WSOU and its expert Dr. Tibor Kozek agree that the claims address only switching from one method to another, not what those methods are or how they work.  Dr. Kozek testified that the patent does not claim to invent any barcode format, Ex. A 30:15-19, nor does it "claim to invent the camera" used for barcode reading.  *Id.* 16:4-5.  Instead, the patent claims "using a plurality of methods for performing the conversion of pixels into symbols," but not any particular method; it "simply says that you try one and then switch to a different kind." *Id.* 36:13-15, 157:19-20.  Similarly, Dr. Kozek noted that "correcting the input image" could be any image correction methods including for example "fourier transforms, wavelet transforms, of which

there are many kinds, [d]enoising of various algorithms.  Essentially there is a library full of algorithms that could be quoted here." *Id.* 67:5-14.  Finally, WSOU and its expert agree that switching from any "barcode reading method" to any other "barcode reading method" could meet the claims.  *See e.g.,* Ex. C 231:21-24.

## ARGUMENT

### I. The '491 Patent Claims the Patent-Ineligible Abstract Idea of Switching Between Methods for Reading Barcodes—"Try, Try Again"

Although "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" is patentable subject matter, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018) (citing 35 U.S.C. § 101).  Courts "determine whether a claim covers ineligible subject matter under § 101 through a two-step test," *id*. at 1285, dubbed the *Alice* test after *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  The first step of the *Alice* test asks whether the claims' "character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).  To answer this question, courts consider "what the patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc*., 978 F.3d 1278, 1292 (Fed. Cir. 2020) (citation and internal quotation marks omitted).  "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus," because "'the concern that drives' the judicial exceptions to patentability is 'one of preemption,' and the claim language defines the breadth of each claim." *ChargePoint, Inc. v. SemaConnect, Inc*., 920 F.3d 759, 766 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 216).  Under this test, claims "directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery" rather than "a specific

– 4 –

means or method that improves the relevant technology," *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 909 (Fed. Cir. 2017), claim only "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *BSG Tech*, 899 F.3d at 1287. "If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one." *BSG Tech*, 899 F.3d at 1287.

The '491 patent fails the *Alice* test. Trying something else when the first attempt fails is a fundamental human behavior, and a well-known proverb as far back as 1840, when Thomas Palmer published a book rallying children to their studies, including this song:

> 'Tis a lesson you should heed
> Try, try, try again
> If at first you don't succeed
> Try, try, try again.

Thomas H. Palmer, The Teacher's Manual 223 (1840). In May 1932, in a commencement address to Oglethorpe University, President Franklin D. Roosevelt echoed this concept for adults: "It is common sense to take a method and try it. If it fails, admit it frankly and try another." Franklin D. Roosevelt, Speech at Oglethorpe University, Atlanta, Georgia (May 22, 1932).

To avoid *Alice*, claims must do more than describe this idea "for which computers are invoked merely as a tool," *BSG Tech*, 899 F.3d at 1287, and "must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020). The '491 patent provides no such "level of concreteness"; to the contrary, it confirms that none exists. The "focus of the claimed advance over the prior art," *TecSec*, 978 F.3d at 1292, is "switching between multiple detection and decoding methods," Ex. B at 16:60-63; the claims do not specify any particular "barcode reading method" or even any particular way of switching between such

methods; instead, the patent confirms that *any* "barcode reading methods" and *any* method of switching between them will suffice. *Id.* at 8:52-57, 19:38-40; *supra* § A.  And the claims provide no guidance about what "barcode reading method" to use, how to decide when to "switch[] to one of a different barcode reading method or process[] a new frame of the input image using the current barcode reading method," or how to choose between those two.  *Id.* claim 1.  Similarly, the claims mention "processing an input image," including "performing a correction on the input image," and determining "whether the correction is completed," *id.*, but again provides no limitations on or guidance regarding these concepts, reducing the claimed subject matter to 'if at first you don't succeed, try, try again.'[1]

At most, the patent claims "merely produc[ing] data with improved quality relative to that produced by conventional mathematical methods," thus nothing more than an abstract idea. *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 584 (W.D. Tex. 2021).  Each claim is "so broadly worded that it encompasses literally *any* method" of performing a correction, "literally *any* method" of decoding a barcode, and "literally *any* method" of switching between decoding methods—even including *not* switching, which the patent also allows using "literally *any* method" of decision.  *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (finding patent-ineligible claim including steps including "even logical reasoning that can be performed entirely in the human mind").

As a result, the claims here fail for the same reason as those in *Yu v. Apple*, 1 F.4th 1040 (Fed. Cir. 2021).  In *Yu*, claim 1 recited "a digital image processor, coupled to said image

---

[1] The Court found "performing a correction on the input image" to have its plain and ordinary meaning, Docket No. 49 at 6, thus including within the claim scope human-performed corrections such as rotating an image and deciding whether it looks better, a "fundamental activity" going back "hundreds of years." *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018).

– 6 –

memory and receiving said first digital image and said second digital image, producing a resultant digital image from said first digital image enhanced with said second digital image." *Id.* at 1042. The district court held, and the Federal Circuit affirmed, that the patentee claimed only "the abstract idea of taking two pictures and using those pictures to enhance each other in some way." *Yu v. Apple Inc.*, 1 F.4th at 1042 (quoting *Yu v. Apple, Inc.,* 392 F. Supp. 3d 1096, 1105 (2019)). Just as in *Yu*, the '491 inventors claim each step solely in terms of the desired result—"processing," "determining," "switching"—without ever describing "*how* the desired result is achieved." *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355-56 (Fed. Cir. 2016) (emphasis in original). The "broad claim language would cover any mechanism for implementing" switching barcode reading methods, "thus preempting the entire industry's ability" to do so. *ChargePoint,* 920 F.3d at 759. The claims' focus is not "something other than the abstract idea itself," *BSG Tech*, 899 F.3d at 1287, but is limited to switching among "a plurality of methods." Ex. A 36:14. The '491 applies 'try, try again' to the "particular technological environment" of barcode reading—but "the prohibition against patenting abstract ideas cannot be circumvented" by doing so. *Alice*, 573 U.S. at 223 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-611 (2010)). The patent fails *Alice* step one.

**II.     The '491 Patent Claims No Inventive Concept and Uses Only Generic Components**

In the second step of the *Alice* test, the Court "must examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice,* 573 U.S. at 221 (internal quotation marks omitted). "These transformative elements must supply an 'inventive concept' that ensures the patent amounts to 'significantly more than a patent upon the ineligible concept itself,'" *id.*, and something more than "conventional, routine and well understood applications in the art." *BSG*

– 7 –

*Tech,* 899 F.3d at 1287.  Again, the '491 patent fails this step.  The specification itself admits that barcode scanners were known in the art.  *See supra* § A; Ex. B at 1:54-56.  The only improvement the inventors claim is that "current applications are often limited in flexibility and may be relevant only to particular barcode types, or particular conditions," while their invention operates "in a flexible manner which enables utilization of the application under a variety of conditions and for different types of barcodes." *Id.* at 2:12-21.  This claimed "flexibl[ity]," of course, comes entirely from "switching" between different "barcode reading methods"—the abstract idea of 'try, try again.' *Id.* at 2:19-21.

The Federal Circuit rejects claims of this type.  For example, in *American Axle*, 967 F.3d 1285, the Court rejected claims addressing a "method for manufacturing driveline propeller shafts" that did "not specify how target frequencies are determined" or how "such liners are tuned to dampen bending mode vibrations," but "simply instruct[ed] the reader to tune the liner to achieve a claimed result, without limitation to particular ways to do so." *Id.* at 1298.  The Court found that the "real inventive work lies in figuring out how to design a liner to damp two different vibration modes simultaneously, and no such inventive work is recited in claim 22." *Id.*  So too here:  the patent does not explain how to read a barcode or how to switch between reading methods; it claims the act of switching itself.  *See supra* § A.  "Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility." *Alice*, 573 U.S. at 223.  That is all the patent does.

The patent applies 'try, try again' through generic computing parts, and repeatedly confirms that "each block or step of the flowcharts, and combinations of blocks in the flowcharts, can be implemented by various means, such as hardware, firmware, and/or software including one or more computer program instructions." Ex. B at 17:10-14; *see also id.* at 8:46-52; *supra*

– 8 –

§ A.  "[T]here is no indication that the invention of the ['491] patent was intended to improve those particular components or that the inventors viewed the combination of those components as their invention," *ChargePoint*, 920 F.3d at 772, and "[i]t is of no moment that some asserted claims are limited to a particular field of invention or input data." *Health Discovery*, 577 F. Supp. 3d 586.  The claims, although directed to barcode reading, do "not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329, 1337 (Fed. Cir. 2017).  The '491 is quite similar to the patent in *Yu v. Apple*, where the Federal Circuit found that "[o]nly conventional camera components are recited to effectuate the resulting 'enhanced' image—two image sensors, two lenses, an analog-to-digital converting circuitry, an image memory, and a digital image processor." 1 F. 4th at 1043.  This claimed "configuration itself is not an advance" and "does not add sufficient substance to the underlying abstract idea." *Yu*, 1 F.4th at 1045.  The claims and specification describe only garden variety computing parts, confirming  They thus fail this step of the *Alice* test as well.

**III.     All Claims Fail the *Alice* Test**

Courts do not require a claim-by-claim analysis when multiple claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see Alice*, 573 U.S. at 225-227 (finding a single method claim "representative" of all claims across four patents).  Here, claim 1 is representative of the asserted method, system, and apparatus claims because they "are no different from the method claims in substance," *Alice,* 573 U.S. at 226.  "As the other claims of the patent are drawn to a similar process, they suffer from the same infirmity as claim 1 and need not be considered further." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 712 (Fed. Cir. 2014).

In any event, the additional limitations in the dependent claims do not redeem them.  If

– 9 –

the dependent claims add anything, it is more abstract ideas, but "[a]dding one abstract idea" in a claim "to another abstract idea," even in the same claim, "does not render the claim non-abstract." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Claims 2, 14 and 26 add "determining a region of interest (ROI) defining an area in which a barcode is expected." They do not specify how to "determin[e] a region of interest" that might include a barcode, *see id.*, and thus claim at most the abstract idea of 'find what you believe is important,' a process which "can be performed entirely in the human mind" and thus cannot provide patent eligibility to these claims. *CyberSource*, 654 F.3d at 1373.

Claims 3, 15 and 27 add "perform[ing] the correction by correcting the ROI." Again, these claims do not specify how to "perform[] the correction" and thus claim at most the abstract idea of 'work on what you believe is important,' which again "can be performed entirely in the human mind," *CyberSource*, 654 F.3d at 1373, and thus "qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *BSG Tech*, 899 F.3d at 1287.

Claims 4, 16 and 28 add "correct[ing] corner positions of the ROI based on a degree of overlap between the barcode and segments of a border of the ROI which are adjacent to each respective corner," which is another way of saying "decide how to crop an image," but do not specify any method for doing so, and thus describe a process that "can be performed entirely in the human mind," which photographers have done for centuries without computers, and for which "computers are invoked merely as a tool." *Supra*.

Claims 5, 17 and 29 add "performing re-sampling and geometric image correction"; the former is another way of saying 'look again' and the latter is another way of saying 'make a shape look like another shape'; the claims again describe a process that "can be performed entirely in the human mind," for which "computers are invoked merely as a tool." *Supra*.

Claims 6, 11, 18, 23, 30 and 37 add "binariz[e/ing] the ROI" or "binariz[e/ing] the input image," another way of saying 'make it black and white,' but do not specify or claim any method of doing so, and thus describe a process that "can be performed entirely in the human mind," for which "computers are invoked merely as a tool." *Supra.*

Claims 7, 12, 19, 24, 31 and 38 add "switching from a global binarization to an adaptive binarization," but do not specify any particular method of doing either, and are thus no more than a specific example of 'try, try again.' *See supra.*

Claims 32 and 39 add "wherein global binarization comprises binarizing an entirety of the input image based on a relationship between input image values and a threshold and wherein adaptive binarization comprises dividing the input image into regions and separately binarizing the regions of the input image based on a relationship between a moving sum of region values compared to an adaptive threshold," but do not specify any particular method of doing either, and thus merely restate the abstract ideas of 'use the same method throughout' or 'divide and conquer,' thus claiming a process that "can be performed entirely in the human mind," for which "computers are invoked merely as a tool." *Supra.*

Claims 9, 21 and 34 add "determin[e/ing] a type of barcode," and Claims 8, 20 & 33 add "perform[ing] a determination as to whether the input image includes one of a one dimensional (1D) barcode or a two dimensional (2D) barcode"; neither specifies or claims any method of doing so, and both of which are "can be performed entirely in the human mind," for which "computers are invoked merely as a tool." *Supra.*

Claims 10, 22 and 36 add "perform[ing] the determination based on a relationship between a first length of an object oriented in a first direction and a second length of the object oriented in a second direction that is substantially perpendicular to the first direction," another

– 11 –

way of saying 'see whether it is more like a rectangle or a square,' which "can be performed entirely in the human mind," for which "computers are invoked merely as a tool." *Supra*.

Claim 35 adds "determin[ing] the type of barcode based on a comparison of geometric patterns within the barcode to a known specification," another way of saying 'match shapes,' which "can be performed entirely in the human mind"—even by toddlers—for which "computers are invoked merely as a tool." *Supra*. Finally, claim 40 requires that "the apparatus is embodied as a mobile terminal," at most claiming "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *BSG Tech*, 899 F.3d at 1287.

Although some claims "have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application of the otherwise ineligible abstract idea." *Content Extraction*, 776 F.3d at 1349.

## IV. The Court Should Grant Summary Judgment on the '491 Patent

Courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is so here; the Court should decide this "threshold" issue. *Bilski,* 561 U.S. at 602.

## CONCLUSION

For the reasons stated above, the Court should grant summary judgment of patent ineligibility on all claims of the '491 patent.

Date:  June 28, 2023                                  Respectfully submitted,

 /s/Matthew S. Warren, with permission
 by Shaun W. Hassett
Michael E. Jones (State Bar No. 10929400)
mikejones@potterminton.com
Shaun W. Hassett  (State Bar No. 24074372)
shaunhassett@potterminton.com
POTTER MINTON, P.C.
102 North College, Suite 900
Tyler, Texas, 75702

– 12 –

+1 (903) 597-8311
+1 (903) 593-0846 facsimile

Tharan Gregory Lanier
(California Bar No. 138784) (*pro hac vice*)
tglanier@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
Francesca Miki Shima Germinario
(California Bar No. 326208)
Virginia G. Kain (California Bar No. 344545)
Sachli Balazadeh-Nayeri
(California Bar No. 341885)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-580@cases.warrenlex.com

*Attorneys for Defendant Google LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2023.

__/s/ Shaun W. Hassett_____