**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT, | § | **PUBLIC VERSION** |
| | § | |
| Plaintiff, | § | Case No. 6:20-cv-580-ADA |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |

**MOTION FOR PARTIAL SUMMARY JUDGMENT**
**OF NON-INFRINGEMENT BY DEFENDANT GOOGLE LLC**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    A.    The Patent Claims a Mechanism for Switching Between Barcode
           Reading Methods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    The Patent Requires Two Decision Points at Two Different Times,
           One Before Any Attempt to Read a Barcode, and One After . . . . . . . . . . . . . . . . . 2

           1.    The Claims Require Two Decision Points at Two Different Times. . . . . . .2

           2.    The Specification Details the Two Decision Points of the Claims . . . . . . . 3

           3.    The Prosecution History Requires Two Decisions at
                 Two Different Times . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           4.    The Experts Agree That the Patent Requires
                 Two Decisions at Two Times . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

           5.    WSOU Distinguished Prior Art as Lacking
                 Two Decisions at Two Times . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    The Accused Functionality Includes Only One Decision Point . . . . . . . . . . . . . . .7

           1.    Non-Infringing Barhopper v1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           2.    Allegedly Infringing Barhopper v2 and v3. . . . . . . . . . . . . . . . . . . . . . . . 8

           3.    WSOU's Allegations of Infringement by Barhopper v2. . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    I.    The Court Should Enter Summary Judgment for Google,
           Because the Undisputed Evidence Establishes That No Version of Barhopper
           Can Infringe the '491 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    II.    WSOU's Attempts to Overcome the Error in its Infringement Theory Only
           Confirm That the Accused Functionality Cannot Infringe the Patent . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

## **TABLE OF AUTHORITIES**

*Cases*                                                                                    **Pages**

*Cybor Corp. v. FAS Techs., Inc.,*
    138 F.3d 1448 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Daedalus Blue LLC v. SZ DJI Tech. Co.,*
    No. 20-73, 2022 WL 831619 (W.D. Tex. Feb. 24, 2022) . . . . . . . . . . . . . . . . . . . . . . 14, 15

*EMI Grp. N. Am. Inc. v. Intel Corp.,*
    157 F.3d 887 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Freshub, Inc. v. Amazon.com Inc.,*
    576 F. Supp. 3d 458 (W.D. Tex. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.,*
    93 F.3d 766 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Raine v. United States,*
    No. 19-231, 2021 WL 1318004 (W.D. Tex. April 8, 2021) . . . . . . . . . . . . . . . . . . . . . . . 13

*TechSearch, L.L.C. v. Intel Corp.,*
    286 F.3d 1360 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tomax AS v. Turbo Drill Indus., Inc.,*
    No. 21-260, 2023 WL 3171744 (W.D. Tex. Apr. 6, 2023) . . . . . . . . . . . . . . . . . . . . . 12, 13

## TABLE OF EXHIBITS

| EXHIBIT | DESCRIPTION |
|---|---|
| **A** | U.S. Patent No. 7,946,491 to Burian et al., WSOU_580_7946491-0000326 to WSOU_580_7946491-0000346 |
| **B** | Excerpts from Volume I of the Deposition Transcript of Dr. Tibor Kozek (May 24, 2023) |
| SEALED **C** | Excerpts from Volume II of the Deposition Transcript of Dr. Tibor Kozek (May 25, 2023) |
| **D** | Excerpt from file history of U.S. Patent No. 7,946,491, Pre-Appeal Brief, WSOU_580_7946491-0000037 (December 3, 2010) |
| **E** | Excerpt from file history of U.S. Patent No. 7,946,491, Notice of Allowance, WSOU_580_7946491-0000021 (January 28, 2011) |
| SEALED **F** | Expert Report of Dr. Tibor Kozek Regarding Infringement of U.S. Patent No. 7,946,491 by Google LLC (April 4, 2023) |
| SEALED **G** | Rebuttal Expert Report of Dan Schonfeld, Ph.D. Regarding Non-Infringement of U.S. Patent No. 7,946,491 (April 28, 2023) |
| **H** | Excerpts from Expert Report of Dan Schonfeld, Ph. D Regarding Invalidity of U.S. Patent No. 7,946,491 (April 4, 2023) |
| SEALED **I** | Excerpts from Rebuttal Expert Report of Dr. Tibor Kozek Concerning Validity of U.S. Patent No. 7,946,491 (April 28, 2023) |
| SEALED **J** | Excerpt from printed Google Source Code File, GOOG-580-SC000070 |
| SEALED **K** | Exhibit B excerpted from Rebuttal Expert Report of Dan Schonfeld, Ph.D. Regarding Non-Infringement of U.S. Patent No. 7,946,491 (April 28, 2023) |

███████████████████████████████████

## INTRODUCTION

WSOU's infringement analysis depends on an incorrect assertion of fact.  When it

learned of this error, WSOU should have dropped this case.  It did not, requiring this motion.

The patent at issue claims a mechanism for switching between "barcode reading

methods."  It does not claim or require any particular barcode reading method; to the contrary, it

claims to work with all barcode reading methods, and addresses only a mechanism for switching

between them.  WSOU admits that, to implement its mechanism for switching, the patent

requires a simple algorithm including two separate decision points—one of which must occur

before any reading of barcodes, and another which must occur after that.  WSOU's expert Dr.

Tibor Kozek tendered an infringement report asserting that Google's software implements the

claimed switching mechanism with two decision points.  Dr. Kozek alleged the first decision

point came with the ███████████████   The accused software would proceed down one

path if ██████████████████, he asserted, but down another path ████████████████

███, thus constituting one of the two decision points required by the claims.  As Dr. Kozek later

admitted at deposition, however, this was incorrect, because the accused ███████████████

████████████████   Without any possibility of a ██████████████████, WSOU cannot

point to a decision point before barcode reading, and thus cannot show infringement.

## BACKGROUND

### A.    The Patent Claims a Mechanism for Switching Between Barcode Reading Methods

U.S. Patent No. 7,946,491, claims a mechanism for switching between barcode reading

methods.  It acknowledges that barcode reading was known both generally and using mobile

device cameras (Ex. A at 1:54-56) and does not claim to invent any barcode format (Ex. B at

30:15-19) or any way of reading any barcode format. *See id.* at 28:20 to 29:10.[1]   Instead, the

patent claims a mechanism of switching between *any* two barcode reading methods, including

the following:

> A:   "processing an input image for an attempt to decode the input image using a current barcode reading method, the processing including performing a correction on the input image";
>
> B:   "determining whether the processing of the input image is successful based on a determination as to whether the correction is completed";
>
> C:   "switching to one of a different barcode reading method or processing a new frame of the input image using the current barcode reading method in response to the processing of the input image being unsuccessful";
>
> D:   "attempting a decode of the input image using the current barcode reading method in response to the processing of the input image being successful"; and
>
> E:   "performing a switch to the different barcode reading method in response to a failure of the attempt to decode the input image using the current barcode reading method."

Ex. A at 20:19-36; *see id.* at 20:37 to 24:28; Ex. B 116:18 to 117:15 (testifying that all

independent claims contain the same limitations).

**B.     The Patent Requires Two Decision Points at Two Different Times, One Before Any Attempt to Read a Barcode, and One After**

**1.     The Claims Require Two Decision Points at Two Different Times**

The claims require two decision points, one of which must occur before any attempt to

read a barcode.  Their plain language imposes an order for the claimed steps:

- Element A must come before element B, because A includes "processing an input

  image" and B requires "determining whether the processing of the input image is

  successful," which it cannot do until the processing is complete.

- Element B must come before elements C and D, because B includes "determining

  whether the processing of the input image is successful," and C and D operate "in

---

[1] All exhibits are to the concurrently filed declaration of Francesca Miki Shima Germinario.

response to the processing of the input image being" either "successful" (for D) or

"unsuccessful" (for C), and thus can occur only after "determining whether the

processing of the input image is successful" is complete.

- And element E must come after element D, since D includes "attempting a decode of

  the input image using the current barcode reading method" and E operates "in

  response to a failure of the attempt to decode the input image using the current

  barcode reading method.

Thus, according to the language of the claims themselves, element A must precede B, B must

precede C and D, and D must precede E.

Having required this order, the claims further require two decision points, one before the

attempt at barcode reading and one after.  The first decision point occurs in element B,

"determining whether the processing of the input image is successful," and splits between

element D (for success) and element C (for failure).  The decision in element B must occur

before element D, where the patent claims "attempting a decode of the input image using the

current barcode reading method"—the only attempt at barcode reading in the claims.  The

second decision point occurs in element E, which operates "in response to a failure of the attempt

to decode the input image" and thus must occur after that attempt, in element D.

 WSOU's expert Dr. Kozek confirmed the order required by the claims:  "The statements

a, b, c, d, and so on relate to different sections of this implementation, and as such, describe

temporal sequence of events."  Ex. C 329:1-4; Ex. B 88:2-7, 89:14-17, 99:8-11.  And Dr. Kozek

further confirmed that the two decision points must come at separate times, one before and one

after the attempt at barcode reading.  *See* Ex. B 106:10-13 ("Claims 1, 13, and 25 both

describe—all describe a decision point based on the success of the processing and another

decision point describing [sic] based on the success of decoding"); *see also, e.g., id.* 101:6-8.

### 2. The Specification Details the Two Decision Points of the Claims

The specification matches the claims' requirement of two decision points at two separate

times.  The only embodiment appears in Figure 6 and its accompanying text:



At operation 210, a determination is made as to
whether the processing of the input image is
successful.  If the processing is unsuccessful, a switch
is made to a second barcode reading method or a new
frame of the input image is processed at operation
260.  If the processing of operation 200 is successful,
the first barcode reading method is utilized for
attempting to decode the input image at operation
220.  A determination is made at operation 230 as to
whether the decode attempt of operation 220 is
successful.  If the decode attempt of operation 220 is
successful, then the user is notified at operation 240.
If the decode attempt is unsuccessful, then either the
user may be notified of the failure at operation 250,
the switch to the second barcode reading method may
be performed, or parameters of the first barcode
reading method may be modified and a reattempt at
decoding may be performed at operation 270.

FIG. 6.

Ex. A at 17:53 to 18:1; fig.6.  Boxes 210 and 230 show the

two decision points, the first occurring before the first attempt

to decode a barcode, and the second occurring after.  *Id.*

Figure 6 also matches the order of events required by the claims.  *Id.*  WSOU's expert agreed that

"box 210 corresponds to the language in Claim 1c," and that box 230 "depicts a decision point

based on the success of decoding [that] corresponds with Claim 1e."  Ex. B 101:23 to 102:2.

### 3. The Prosecution History Requires Two Decisions at Two Different Times

During prosecution, the examiner issued a final rejection of all 41 pending claims as

anticipated over a reference called Zhu.  Ex. D at 2.  In response, the applicants argued that Zhu

could not anticipate any claim of the application, because it did not disclose two decision points:

> [E]ach and every paragraph cited by the Office Action as relating to the claimed feature
> of <u>switching to one of a different barcode reading method or processing a new frame of
> the input image using the current barcode reading method in response to the processing of
> the input image being unsuccessful</u> (relating to the first claimed switch trigger) is also
> cited in connection with the claimed feature of <u>performing a switch to the different
> barcode reading method in response to a failure of the attempt to decode the input image
> using the current barcode reading method</u> (which relates to the second claimed switch
> trigger).  As such, it is clear that the Office Action incorrectly reads the single switch
> trigger scenario described in Zhu as corresponding to each of the two different switch
> triggers described in the claimed invention.

*Id*. at 3 (emphasis in original).  The applicants further confirmed that the two decision points

must occur at two different times—one "before any barcode reading is done," one after:

> While the claimed invention provides for robust image processing and flexibility for
> method switching or processing of a new image based on the successful completion of a
> correction operation before any barcode reading is done (as is clearly indicated by the
> fact that the first switching operation of the claimed invention is performed in response to
> the processing of the input image being unsuccessful prior to even attempting to decode
> the input image), Zhu requires the barcode to be read, or at least the performance of an
> attempt to read the barcode, before any mode changes are made.

*Id*.  In response, the examiner allowed the claims.  Ex. E.  WSOU's expert Dr. Kozek offered no

opinion on this or any other aspect of the prosecution history.  *See generally* Ex. F.

### 4.    The Experts Agree That the Patent Requires Two Decisions at Two Times

The parties' experts agree that the '491 patent requires two decision points, one before

barcode reading and one after.  WSOU's expert Dr. Kozek testified that the patent requires "a

decision point based on the success of the processing and another decision point describing based

on the success of decoding," Ex. B 106:11-13, and explained how the two decisions fit into the

overall algorithm of the claims, by checking the "the processing of the input image" before

trying to decode it.  *See, e.g., id.* 50:14-18 ("Within the logic of the '491 patent, the input of

decoding is the successful processed input image because it is done in response to the processing

of the input image being successful"); 53:15-17 ("1d states that decoding is attempted after

successful processing of the input image"); 101:22 to 102:2, 100:5 to 101:8 (comparison to Fig.

6); 105:23-25, 106:10-13 (all claims include these limitations).  A decision point, he testified, is "a branch point in the code," so "when it says 'determination,' that's an if/then in software, or it could be a single bit if it's implemented in hardware."  *Id.* 92:7-11.

Google's expert Dr. Schonfeld agrees that limitations A-E appear in every claim, and require two separate decisions at two separate times.  *See, e.g.,* Ex. G ¶¶ 208, 210, 217, 222.

### 5.     WSOU Distinguished Prior Art as Lacking Two Decisions at Two Times

Google's expert Dr. Schonfeld opined that "a POSITA would understand [the] Kotlarsky [prior art reference] to disclose or render obvious performing switching to a standard Image Preprocessing Module from an Image Preprocessing Plugin and/or switching to a standard Image Processing and Barcode Decoding Module from an Image Processing and Barcode Decoding Plugin ('switching to . . . a different barcode reading method') in response to a determination that the Image Preprocessing Plugin including the IMGPREPR Plug-In Function returns a negative value indicating that an error occurred during preprocessing ('the processing of the input image being unsuccessful')."  Ex. H at 89.  In response, WSOU's expert Dr. Kozek opined that Kotlarsky could not anticipate because it did not practice element C—specifically because it does not include the two decisions at two different times.  *See* Ex. I ¶¶ 73-76.  Instead, Dr. Kozek opined, "Kotlarsky Figure 32B confirms that this element is not disclosed, as Box F shows that the Image Preprocessing Plugin performs **both** processing and decoding **before** calling the 'standard Image Preprocessing Module.'"  *Id.* ¶ 76.  Dr. Kozek highlighted in blue a portion of "Kotlarsky Figure 32B," and underlined in red the words "processing" and "decoding," which, he stated, occurred before the single decision point.  *Id.*  At his deposition, Dr. Kozek

confirmed that his validity opinion regarding Kotlarsky depends solely on his view that it does not disclose element C (Ex. B 95:15-24) because, in his view, it lacks the required two decision points, one before decoding and one after:

> Q.    And [Kotlarsky] doesn't practice Claim 1c because there's no ability to switch in response to the processing of the input image being unsuccessful, correct?

> MR. WELLS: Objection; vague.

> A:    1c talks about the processing being unsuccessful. **That is a decision point prior to decoding as it's described in Patent '491. That decision point simply does not exist in the Kotlarsky reference.**

*Id.* 99:3-12 (emphasis added). Thus, Dr. Kozek concluded: "My opinion is that the decision point 1c is not reflected in the Kotlarsky reference, and therefore, it does not disclose the entirety of the '291 patent (sic)." *Id.* 108:4-7; *see id.* 115:21-25 (confirming he meant the '491 patent).

## C.    The Accused Functionality Includes Only One Decision Point

### 1.    Non-Infringing Barhopper v1

WSOU accuses products using three versions of Google's internal "Barhopper" barcode scanning library: v1, v2, and v3. Ex. G ¶ 81. As Dr. Schonfeld explained, Barhopper v1



*Id.* ¶ 141, fig.19

(inset). WSOU no longer accuses Barhopper v1, *see* Docket No. 164, and Dr. Kozek did not

████████████████████████████

analyze or even review source code for Barhopper v1.  *See* Ex. C 206:22 to 207:5; *see generally*

Ex. F.

### 2. Allegedly Infringing Barhopper v2 and v3

Barhopper v2 █████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████  Ex. G ¶ 142.  WSOU claims that infringement occurs within this code:



Ex. J.  As the parties agree, in this source code excerpt, if ██████████████████████████

███████████████████████  will execute; ████████████████████████████████████████

████████████████████████████  will not execute.  *See, e.g.*, Exs. F ¶¶ 169-170;  G ¶ 151**;** C

211:8 to 213:21.  ██████████████████████████████████████████████████████████

████████████████████████████████████████████  *See* Exs. F ¶¶ 161-168; G ¶¶

146-147.  ██████████████████████████████████████████████

██████████████████████████████████████████  *See* Exs. F ¶¶ 168-169; G ¶¶ 146-147.  If

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████.  *See* Exs. G ¶ 149;

F ¶¶ 241-243.  If they do not, ████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████  otherwise, ██████████████████████████████

███████████████████████████  *See* Exs. G ¶¶ 150-151; F ¶¶ 242-243.

██████████████████████████  performs the same steps, except with a ████████████

████████████████████████████████████  *See* Exs. G ¶¶ 152-153; F ¶¶ 244-247.  The

█████████████████████████████

█████████████████████████████████████████████ work like this:



Ex. G ¶ 143, fig.21.[2]

### 3.    WSOU's Allegations of Infringement by Barhopper v2

Dr. Kozek identifies two decision points.  Before barcode reading, he claims, ████████████

████████████ shows "whether the processing of the input image is successful":





Ex. F ¶¶ 140-142, 149 (emphasis in original).  Dr. Kozek further claims that ██████

determines how Barhopper v2 will proceed across the first, pre-barcode-scanning decision point:



Ex. F ¶¶ 169-170 (footnote omitted).  Dr. Kozek provided a chart (see above) showing ████████

███████████████████████ *Id.*, Ex. D. § I.B.1.

For the second decision point after barcode reading, Dr. Kozek accuses

████████████, which executes after decoding.  Ex. F ¶¶ 241-243.  Dr. Kozek thus accuses

Barhopper v2 of having two decision points—one *before* barcode reading in evaluation of

███████, and one after barcode reading is complete:





Exs. K; G ¶ 208, fig.24.  Critically, however, within ▮▮▮▮▮▮▮▮▮▮▮▮, *it is not possible for* ▮▮▮▮▮▮▮▮▮▮▮▮  *See* Exs. G ¶¶ 147, 205-208; C 237:14-23, 238:7-24, 240:11-14, 242:2-5, 244:21-25, 247:21 to 248:5.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it cannot "determin[e] whether the processing of the input image is successful" as Dr. Kozek claims in his report.  Ex. F ¶ 141.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ and thus cannot "switch[] to one of a different barcode reading method in response to the processing of the input image being unsuccessful," not only because there is no switch, but also because "the processing of the input image" will always be successful.  Ex. F ¶¶ 141-142, 149.  ▮▮▮▮▮▮▮▮▮▮▮▮ the dotted red line above does not exist, and Barhopper lacks the required "two separate decision points" in the accused functionality, one occurring "before any barcode reading is done" and the other occurring after. Ex. B 50:14-18, 53:15-17, 95:12-14, 99:3-12, 101:22-102:2, 106:10-13, 108:4-7.[3]

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮ does contain two decision points, *see supra*, but WSOU does not accuse those points because they do not connect to other elements of the claim.

██████████████████████████████████████████

Although Dr. Kozek's report repeatedly and incorrectly claimed that ████████████

████████████████████████████████████████ Ex. F ¶¶ 87, 140, 161, 187, 219,

321; *see also id.* ¶¶ 169, 170, 244, at his deposition Dr. Kozek admitted that this was not so:

> Q.    So we've established that █████████████████████████
>
>       ████
>
> A.    ██████████████████████████████████████

Ex. C 240:11-14; *see id.* 237:14-23, 238:7-24, 240:11-14, 242:2-5, 244:21-25, 247:21 to 248:5.

Dr. Kozek's report failed to address this point, as he admitted at his deposition, *id.* 276:5-9:

> Q.    Does your report state anywhere that ████████████████████████
>
>       █████████████
>
> A.    I don't believe that we make that point in the—in my report.

## ARGUMENT

## I.    The Court Should Enter Summary Judgment for Google, Because the Undisputed Evidence Establishes That No Version of Barhopper Can Infringe the '491 Patent

WSOU cannot show that Barhopper infringes elements B and C of the claims, and so the

Court should grant summary judgment of non-infringement.  "Determination of infringement

entails a two-step analysis," under which "the claims are first construed by the court as a matter

of law, following which the construed claims are applied to the accused device or method, a

question of fact." *Tomax AS v. Turbo Drill Indus., Inc.*, No. 21-260, 2023 WL 3171744, at *3

(W.D. Tex. Apr. 6, 2023) (citing *EMI Grp. N. Am. Inc. v. Intel Corp.,* 157 F.3d 887, 891 (Fed.

Cir. 1998)).  Summary judgment of noninfringement is "appropriate where the patent owner's

proof is deficient in meeting an essential part of the legal standard for infringement, because such

failure will render all other facts immaterial." *Tomax*, 2023 WL 3171744, at *3 (citing

*TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002)).  "Unsubstantiated

assertions, improbable inferences, and unsupported speculation" are "insufficient to defeat a

motion for summary judgment." *Raine v. United States*, No. 19-231, 2021 WL 1318004, at *2 (W.D. Tex. April 8, 2021). Here, the Court need not engage in further claim construction, as WSOU and Google agree that the claims require "two separate decision points" in elements C and E (Ex. B 101:6-8), and further agree that one must be "a decision point prior to decoding as it's described in Patent '491." *Id*. 99:8-11; *see supra* § B.

Thus, the Court can proceed to "the second step of the analysis, [where] the court must compare 'the properly construed claims . . . to the allegedly infringing device.'" *Tomax*, 2023 WL 3171744, at *3 (alterations in original) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998)). WSOU cannot show the required "two separate decision points": the decision point it alleged occurred "prior to decoding as it's described in Patent '491" depends on ████████████████████████, and WSOU's expert has now admitted that it does not. *See supra* § C. With ████████████████████████████ cannot "determin[e] whether the processing of the input image is successful"—because ██████ ████████ doesn't determine anything—and thus cannot practice element B. And ████████████████████ cannot practice element C, because it cannot do anything "in response to the processing of the input image being unsuccessful," because that will never happen. That ends the inquiry. "The absence of even a single limitation defeats a charge of infringement." *Freshub, Inc. v. Amazon.com Inc.*, 576 F. Supp. 3d 458, 462 (W.D. Tex. 2021) (citing *Gen. Am. Transp. Corp. v. Cryo-Trans, Inc.*, 93 F.3d 766, 771 (Fed. Cir. 1996)). WSOU cannot show at least two.

## II.    WSOU's Attempts to Overcome the Error in its Infringement Theory Only Confirm That the Accused Functionality Cannot Infringe the Patent

At his deposition, after admitting that he incorrectly claimed ████████████████ ████, Dr. Kozek nonetheless tried to claim that Barhopper could somehow still infringe. His

attempts to do so, however, served only to confirm that Barhopper cannot infringe the patent:

> Q.   And so you said that the Kotlarsky reference cannot practice Element c because it does both processing and decoding without a switch between them.  Do you recall that testimony?

> MR. WELLS: Objection; misstates testimony.

> A.   I recall we discussed this yesterday, and that we established that the Kotlarsky reference does not apply a different barcode reading method in response to the failure of processing.

> Q.   And neither does the accused functionality, correct?

> MR. WELLS: Objection; misstates testimony.

> A.   I don't think that is true.

> Q.   Why not?

> A.   Because the failure of ███████████████████ which constitutes a current barcode reading method, will trigger the application of another barcode reading method.

> Q.   Show me where that is in your expert report.

> (Pause.)  [The pause lasted for more than seven minutes, from 10:49:43 to 10:56:53.]

> A.   Okay.

> Q.   Okay?

> A.   In—I would direct you to Paragraph 127, 128 of the infringement report, which talks about ███████████████████████ which is in language of 1e—1c of '491.  And the further that—inasmuch as one is performing a ██████████████, whether that ████████████ was successful is typically—you can always—you can always do a ████████████.  Whether that results meaningful data—in meaningful data or not may depend on how your ████████████, et cetera, were established.  The failure, as we have pointed out, could and in this case does get established based on the fact that the data is not usable downstream.  The failure of processing the point—the decision point of failure of processing is therefore further down in the code than just simply the ██████████████.

Ex. C 250:9 to 252:4.  Dr. Kozek disclosed none of this in his expert report, nor could he now.

See Ex. F; *Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. 20-73, 2022 WL 831619, at *4 (W.D.

Tex. Feb. 24, 2022) ("Courts routinely reject untimely 'supplemental' expert testimony where the

opinions are based upon information available prior to the deadline for expert disclosures."). But it would not have mattered if Dr. Kozek had properly disclosed everything he said here. Paragraph 127 of his report, which discusses element A and is thus irrelevant here, claims that Barhopper ████████████████████████████████████████████████████ which ████████████████████████████████████████████████████████████████ Ex. F ¶ 127. Even assuming this paragraph otherwise alleges infringement (it does not), ████████████████████ can exist only *after* barcode reading, as Dr. Kozek's report acknowledges, and thus any decision based on ████████████████ cannot be the required "separate decision point[]" that occurs "prior to decoding as it's described in Patent '491." Ex. B 101:6-8, 99:9-11. Similarly, Paragraph 128 describes a series of actions that occur *after* decoding, not before. *See* Ex. F ¶ 128. So too does the rest of Dr. Kozek's testimony, which references a "decision point of failure of processing" purportedly "further down in the code than just simply ████████████████." Ex. C 252:1-4. Dr. Kozek cannot point to any functionality, let alone any decision point, that is both downstream of the evaluation of ████████████ and upstream from decoding. To the contrary, he admits that barcode reading occurs immediately after the evaluation of ████████████. *See, e.g.*, Ex. F ¶ 220; Ex. C 247:25 to 248:5. There is no room in the flow for "a decision point prior to decoding as it's described in Patent '491." Ex. B 99:9-11. Thus, Dr. Kozek's deposition testimony only serves to further confirm that there is no way for WSOU to show infringement.

## CONCLUSION

For the foregoing reasons, the Court should grant Google partial summary judgment of non-infringement of the '491 patent by Barhopper v2 and Barhopper v3.

Date:  June 28, 2023                              Respectfully submitted,

                                                   */s/ Matthew S. Warren, with permision*
                                                   *by Shaun W. Hassett*

– 15 –

Michael E. Jones (State Bar No. 10929400)
mikejones@potterminton.com
Shaun W. Hassett  (State Bar No. 24074372)
shaunhassett@potterminton.com
POTTER MINTON, P.C.
102 North College, Suite 900
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile

Tharan Gregory Lanier
(California Bar No. 138784) (*pro hac vice*)
tglanier@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
Francesca Miki Shima Germinario
(California Bar No. 326208)
Virginia G. Kain (California Bar No. 344545)
Sachli Balazadeh-Nayeri
(California Bar No. 341885)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-580@cases.warrenlex.com

*Attorneys for Defendant Google LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2023.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2023.

_____/s/ Shaun W. Hassett_____