# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | ▮▮▮▮▮▮▮▮ |
| Plaintiff, | § § | Case No. 6:20-cv-580-ADA |
| v. | § § | JURY TRIAL DEMANDED |
| GOOGLE LLC, | § § | |
| Defendant. | § § | |

## GOOGLE'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS

**INTRODUCTION**

WSOU's opposition does not answer the only question that matters:  for a barcode reading method to be a "different barcode reading method," how different is different enough? Instead, WSOU claims that Google's motion came too late, although Google filed its motion a month after obtaining the admissions from WSOU's expert on which Google's argument depends.  WSOU misrepresents the opinions of both its own expert and Google's expert.  WSOU incorrectly claims that the word "different" has a single common-English meaning and further incorrectly claims that this common-English meaning prevents Google from disputing the meaning of "different barcode reading method" within the '491 patent.  Finally, although WSOU agrees with Google that the law does not allow interpretation of patent claims under the rule of 'I know it when I see it,' WSOU ultimately rests its case on precisely that improper standard.  The Court should grant Google's motion for summary judgment.

**ARGUMENT**

**I.      WSOU Cannot Avoid the Merits of Google's Motion by Falsely Claiming Delay**

Google filed its motion only 35 days after WSOU's technical expert admitted, during his deposition, that he could not answer the question of "how different is different enough?"  Despite this dispatch, WSOU argues largely that Google's motion came too late, because "[c]laim construction was Google's opportunity to raise any argument that the term 'different barcode reading method' is indefinite."  Opp. at 1.  WSOU is wrong.

WSOU claims that once "[a] patentee such as Brazos puts an accused infringer such as Google on notice of its infringement theories via its detailed infringement contentions," this "Court rightly requires that at this point the accused infringer must then raise during claim

– 1 –

construction proceedings whether it believes that any asserted claim terms—as used in the

context of the patentee's infringement theories—are indefinite." Opp. at 1.  But WSOU

overlooks the chronology of this case:  the parties completed their claim construction briefing on

March 12, 2021, a year and a half *before* the Court granted WSOU's motion for leave to amend

its infringement contentions, substituting a wholly new theory of infringement.  Docket No. 42;

Docket No. 103, Ex. 4.[1]  Nor did WSOU's much-later infringement contentions provide Google

with a basis to make its indefiniteness argument; that did not arrive until WSOU's technical

expert used incompatible definitions of "different" to reject the prior art while endorsing

infringement, and then failed to reconcile those positions or provide a coherent standard at his

deposition.  Mot. at 6-9.  Dr. Kozek's deposition occurred on May 24 and May 25, 2023; Google

filed its motion promptly thereafter.

Finally, and most importantly, "[w]hen the parties present a fundamental dispute

regarding the scope of a claim term, it is the court's duty to resolve it," *O2 Micro Int'l. Ltd. v.*

*Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), because "the ultimate

question of construction [is] a legal question." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S.

318, 333 (2015) (alteration in original)).  The "parties present" just such "a fundamental dispute"

here:  Google states that "different barcode reading method" is indefinite, while WSOU claims it

---

[1] WSOU claims that "at no point between October 12, 2022, and the filing of this motion on June 28, 2023, did Google ever flag that it believed the term 'different' to be indefinite."  But by then Google had *already* notified WSOU of this argument.  On September 28, 2022, in its invalidity contentions responding to WSOU's new infringement contentions, Google noted in the first sentence of its invalidity discussion that "the different barcode reading method" could be indefinite.  Ex. H § IV.A at 16-17.  (All exhibits are to the concurrently filed Declaration of Virginia G. Kain unless otherwise noted.)  Google thus acted exactly as it should:  disclosing the argument when it saw its possibility, and filing the motion when it had a Rule 11 basis to do so.

is not, and should have its plain and ordinary meaning.[2]  Under these circumstances, this Court's

"obligation is to ensure that questions of the scope of the patent claims are not left to the jury."

*Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) (citing *O2*

*Micro*, 521 F.3d at 1361-62); *see, e.g., NobelBiz, Inc. v. Global Connect, L.L.C.,* 701 F. App'x

994, 997-98 (Fed. Cir. 2017) (vacating post-trial judgment and remanding after district court

allowed jury to resolve construction dispute); *O2 Micro*, 521 F.3d at 1365 (same).[3]

## II.      WSOU Cannot Avoid Indefiniteness of the Claims

When WSOU finally turns to the merits, it fails to provide anything close to a definition

of "different barcode reading method" that would "inform, with reasonable certainty, those

skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572

---

[2] WSOU claims that "there is no dispute that the word 'different' does in fact have a generally accepted definition."  Opp. at 4.  This is incorrect; Google disputes whether "different" has a single definition in all contexts, *see infra* § I.A, and WSOU's own expert gave shifting and conflicting definitions of "different."  *See* Mot. §§ B, C, III.  But even if 'different' had a single "well-understood definition," the Court must still resolve the dispute over "the *scope* that should be encompassed by this claim language," *O2 Micro*, 521 F.3d at 1361 (emphasis in original), so the "'ordinary' meaning [of a term] does not resolve the parties' dispute," and "claim construction requires the court to determine what claim scope is appropriate in the context of the patents-in-suit."  *Id.*; *see, e.g.*, *Nystrom v. TREX Co.,* 424 F.3d 1136, 1143 (Fed. Cir. 2005) (construing "board"); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1350 (Fed. Cir. 2004), *rev'd on other grounds*, 546 U.S. 394 (2006) (construing "golden brown" even though colors "are commonly used terms with well-accepted plain definitions that rarely need construction").

[3] Nor can WSOU rely on this Court's requirement that claim construction briefing must include "any arguments that any claim terms are indefinite."  Opp. at 1-2.  WSOU admits that Google generally followed this rule both in early 2021, when the parties first briefed claim construction, and in late 2022, when the parties redid claim construction in light of WSOU's new infringement allegations.  Opp. at 1-2 & n.1.  WSOU claims that because Google followed this rule to raise indefiniteness with claim construction when it could do so, the Court should punish Google for not raising indefiniteness with claim construction when it could *not* do so—which it could not here, because its motion depends on Dr. Kozek's admissions at deposition.  The Court's Order Governing Proceedings does not intend to override either the requirements of Fed. R. Civ. P. 11 (which barred Google from bringing this motion earlier) or *O2 Micro* (which requires its resolution now).

U.S. 898, 901 (2014).  WSOU does not even posit such a definition, claiming instead that it need

not define it at all, because persons of skill will know it when they see it.  WSOU is wrong.

### A.    WSOU Cannot Avoid Indefiniteness By Falsely Claiming Clarity

WSOU first claims "[t]here is no ambiguity" because "[t]he word 'different' is used

according to its plain meaning in the English language."  Opp. at 4-5.  But any English speaker

knows that the word 'different' means different things in different situations.  No one would

question, for example, the meaning of 'different' in the phrase 'the foul ball hit three different

people,' even if two of them were identical twins.  But attorneys can and do dispute whether an

argument is 'different' from one a court has already resolved.  And a teenager can complain that

'we never eat anything different' when her parents think their menu has plenty of variety.

WSOU's argument rests on the unsupported assertion that "different" has a single, immutable

"plain meaning in the English language"; that assertion is wrong, and WSOU's argument cannot

survive without it.  To the contrary, Dr. Kozek's conflicting opinions and inconsistent testimony

showed that "different barcode reading method" is hopelessly malleable.  *See* Mot. § III.[4]

WSOU cannot avoid that testimony by intoning the words 'plain and ordinary meaning.'[5]

---

[4] WSOU claims that Dr. Kozek's "contradictions are the result of selective quoting on Google's part."  Opp. at 7.  Google submits to the Court the full colloquy with Dr. Kozek on this issue, Ex. I 144:12 to 180:5, which shows the shifting sands of Dr. Kozek's testimony, and confirms that Google's analysis of it neither requires nor includes any selective quotation.

[5] Briefly and without citation, WSOU accuses Google of claiming "different barcode reading method" is a "term of degree"—words that appear nowhere in Google's motion.  Opp. at 1, 4-5.  Courts apply the "term of degree" analysis to terms that provide a scale, such as "unobtrusive manner," and analyze whether the specification provides sufficient guidance to divide the spectrum, running from more less unobtrusive, into a clear line showing what infringes the patent.  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364 (Fed. Cir. 2014).  Here, no spectrum exists, because a barcode reading method cannot be more or less different; it is either "different" or it is not.  But "different barcode reading method," like every claim of every patent, must still "inform, with reasonable certainty" what "the scope of the invention" is.  *Nautilus*, 572 U.S. at 901.  And to do that, it must answer the question:  how different is different enough?

– 4 –

**B.      WSOU Cannot Avoid Indefiniteness By Falsely Claiming Consistency**

WSOU next claims that its expert Dr. Kozek's opinions were not inconsistent—but misstates his opinions in doing so.  WSOU claims that "Dr. Kozek details two different barcode reading methods—███████████████████████—used by Google," and that ██████████ ████████████████ different algorithms—i.e. different methods—for reading a barcode." Opp. at 5.  But these statements are false; neither the ███████████████████████ meet Dr. Kozek's own definition of a "barcode reading method" as functionality that "converts pixels into symbolic data."  Ex. I 47:9-15.  Instead, as Dr. Kozek acknowledged, the ███████████ ████████████████████████████████████████████████ ████████████████████████████ but does not actually read the barcode.  Docket No. 173, Ex. B 65:5-10.  And the ████████████ is the same, only with eight variables instead of six.  Mot. at 3-4; Docket No. 173, Ex. B 65:17 to 66:17.  As Dr. Kozek and Dr. Schonfeld agree, within the accused functionality, the call to ██████████████████████████████ ████████████████ before attempting barcode reading, while the call to █████████████ ██████████████████████████████████ before attempting barcode reading—but both calls to ██████████████ attempt to read barcodes in the same way, using the same code; they diverge only in the transform operation they perform *before* barcode reading.

---

Should the Court conclude that "different barcode reading method" is a term of degree, it would still be indefinite.  When faced with a "purely subjective" phrase such as "different barcode reading method," the Court "must look to the written description for guidance." *Interval Licensing*, 766 F.3d at 1371 (citing *Datamize, LLC v. Pluntree Software, Inc.*, 417 F.3d 1342, 1345 (Fed. Cir. 2005), *abrogated on different grounds by Nautilus, Inc*, 572 U.S. 898 (2014)).  As Google explained in its motion, the written description here provides no guidance whatsoever.  Mot. § II.  The term thus depends "on the unpredictable vagaries of any one person's opinion," rendering it indefinite.  *Id.*; *see id.* at 1371-74.

Mot at 2, 4; *see* Docket No. 172, Ex. F ¶ 173, 195, 247.[6]  Still, Dr. Kozek opined that the first call

to ▮▮▮▮▮▮▮▮▮▮ is a "current barcode reading method," and the second call is a "different

barcode reading method."  Docket No. 172, Ex. G 224:21-22; 225:2-4; 268:16-19; *see* Mot. § C.

WSOU then claims that "Dr. Kozek applied the same meaning of 'different barcode

reading method' in his validity report," because "the Frantz reference uses the *same* algorithm

with different input data."  Opp. at 6 (emphasis in original).  But Frantz does not teach using "the

*same* algorithm with different input data," and Dr. Kozek never said it did; he opined only that

"new or revised assumptions are new or revised values for the ***same*** barcode reading method."

Docket No. 172, Ex. E ¶ 167.  And for good reason:  Frantz teaches a flexible "[d]ecoding engine

303" that is "designed to accommodate variations in brightness and contrast in the scanned

image"; it never claims to use only one algorithm in doing so, and there is no reason to think it

does.  Docket No. 173, Ex. C [0066]; *see id.* [0067] to [0077].[7]  Dr. Kozek simply posited that

Frantz taught "the same barcode reading method," just as he posited that the accused

functionality practiced a "different barcode reading method.  *Compare* Docket No. 172, Ex. E

¶ 167 with *id.* ¶ 165.  And at his deposition, he failed to provide a coherent line between his

---

[6] WSOU also uses Dr. Schonfeld's report and his diagram to claim that Dr. Schonfeld "illustrated that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ are different methods."  Opp. at 5; *see id.* at 5-6.  This too is false; Dr. Schonfeld said the exact opposite.  Dr. Schonfeld's non-infringement report accurately explained that the two calls to ▮▮▮▮▮▮▮ diverge only in their application ▮▮▮▮▮ — ▮▮▮▮▮▮▮▮▮▮▮ —and "the actual barcode reading in both cases is done by the same Barhopper v1 decoding functions."  Docket No. 180, Ex. G ¶ 209.  Having accurately described the operation of the code, Dr. Schonfeld concluded that "Barhopper does not perform 'switching to . . . a different barcode reading method' because it only uses one barcode reading method," the Barhopper v1 code shown as an inset box in his figure.  *Id.* ¶ 209, Fig. 21.  Dr. Schonfeld's conclusion was thus the opposite of WSOU's description of it.

[7] Nor could this line hold had Dr. Kozek actually drawn it, since the Barhopper v1 code in the accused functionality, which reads the barcodes at issue, does use "the *same* algorithm with different input data."  *See* Mot. § III; Docket No. 180, Ex. G ¶ 209, Fig. 21; *supra*.

opinions, let alone a mechanism by which a person of skill could know whether a particular

barcode reading method is the same or different.  Mot. § III; Ex. I 144:12 to 180:5.[8]

     **C.**       **WSOU Cannot Avoid Indefiniteness By Claiming 'I Know It When I See It'**

"'I know it when I see it' is not what Congress intended in enacting 35 U.S.C. § 112 ¶ 2."

*Nike, Inc. v. Adidas Am. Inc.*, No. 06-43, 2006 WL 3751181, at \*7 (E.D. Tex. Dec. 18, 2006).

Google explained this in its motion.  Mot. at 1, 7-9.  Yet the last point of WSOU's brief relies

exactly on this improper standard:  "It is axiomatic that you know that two things are different

when you compare them."  Opp. at 7.  And it cites five lines of Dr. Kozek's deposition:

> Q.      Okay.  So I guess my question is, how do you know what's different and what's
>         the same?
>
> A.      You know that by comparison.

Docket No. 173, Ex. B 152:14-18 (objection omitted).  WSOU thus ends its brief by claiming

that it and its expert subjectively know when a barcode reading method is "different," with no

objective rubric against which the jury or the Court can evaluate those claims.  The law of

indefiniteness allows no such thing.

**CONCLUSION**

For all the foregoing reasons as well as those set forth in Google's opening brief, the

Court should grant summary judgment of indefiniteness of "different barcode reading method."

Date:  August 11, 2023               Respectfully submitted,

                                                */s/ Matthew S. Warren, with permission by*
                                                *Shaun W. Hassett*
                                                Michael E. Jones (State Bar No. 10929400)
                                                mikejones@potterminton.com

---

[8] WSOU claims Dr. Kozek found "a clear difference between applying a different method and using different inputs to the same method."  Opp. at 7.  But that "difference" was not "clear" to Dr. Kozek, who agreed that "calling the same source code with different parameters could or could not be a different barcode reading method."  Docket No. 173, Ex. B 153:20-25.

– 7 –

Shaun W. Hassett  (State Bar No. 24074372)
shaunhassett@potterminton.com
POTTER MINTON, P.C.
102 North College, Suite 900
Tyler, Texas, 75702
+1 (903) 597-8311
+1 (903) 593-0846 facsimile

Tharan Gregory Lanier
(California Bar No. 138784) (*pro hac vice*)
tglanier@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, California, 94303
+1 (650) 739-3939
+1 (650) 739-3900 facsimile

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
Francesca Miki Shima Germinario
(California Bar No. 326208)
Virginia G. Kain (California Bar No. 344545)
Sachli Balazadeh-Nayeri
(California Bar No. 341885)
WARREN LEX LLP
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-580@cases.warrenlex.com

*Attorneys for Defendant Google LLC*

– 8 –

– 9 –

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on August 11, 2023.  I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on August 11, 2023.

*/s/ Shaun W. Hassett*
Shaun W. Hassett